```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                          15 Cr. 867 (RMB)

 5   REZA ZARRAB,

 6              Defendant.

 7   ------------------------------x

 8                                        New York, N.Y.
                                          November 14, 2016
 9                                        11:00 a.m.

10
     Before:
11
                     HON. RICHARD M. BERMAN,
12
                                          District Judge
13

14                      APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     SIDHARDHA KAMARAJU
17   MICHAEL LOCKARD
     DAVID DENTON
18   DEAN SOVOLOS
          Assistant United States Attorneys
19
     BRAFMAN & ASSOCIATES
20        Attorneys for Defendant
     BENJAMIN BRAFMAN
21   JOSHUA D. KIRSHNER
          -and-
22   QUINN EMANUEL URQUHART & SULLIVAN LLP
     CHRISTINE H. CHUNG
23        -and-
     LEWIS BAACH KAUFMANN PLLC
24   AARON T. WOLFSON

25   ALSO PRESENT:  ASIYE YUCEL KAY, Interpreter (Turkish)
```

1          THE COURT:  The first thing we ought to do is, the

2     business of this conference today is first briefly hear from

3     the government about the superseding indictment that's been

4     filed.  Briefly tell us how it's different than the preceding

5     indictment.  And then we will have the arraignment process.

6     There is some other issues that I would like to discuss with

7     all of you.

8          Before we do that, we should note that there is an

9     interpreter, Turkish language interpreter, and ask Mr. Zarrab

10    if he's able to understand these proceedings with the help of

11    the interpreter.

12          DEFENDANT ZARRAB:  Yes, your Honor.

13          THE COURT:  Just briefly, because the superseding

14    indictment has been filed publicly and it speaks for itself,

15    you don't have to go through the whole thing.  Just give us a

16    heads-up very briefly how it differs from the prior indictment.

17          MR. KAMARAJU:  Certainly, your Honor the principal two

18    differences between the superseding indictment and the prior

19    indictment is, one, this indictment adds a defendant, Mohammed

20    Zarrab, and then adds a number of overt acts which begin at

21    page 14 of the superseding indictment relating to the same

22    conspiracy.  There are no new charges in this indictment

23    against Mr. Zarrab.

24          THE COURT:  Mr. Brafman, I think I'll turn to you and

25    ask you whether you have received and reviewed the superseding

1    indictment S2 15 Cr. 867 with Mr. Zarrab?

2              MR. BRAFMAN:  Yes, your Honor.  We have received it.

3    We have reviewed it with Mr. Zarrab.  He is prepared to be

4    arraigned on the indictment and enter a plea of not guilty.

5    But I would like to be heard because I think this superseding

6    indictment in many ways dramatically changes the tenor of this

7    prosecution.

8              THE COURT:  You want to be heard now before we do the

9    formal arraignment?

10             MR. BRAFMAN:  I think regardless of my argument today,

11   I think the defendant will still have to be arraigned.  If the

12   Court takes action against the indictment at a later time,

13   subject to our application, I think still think he probably

14   needs to be arraigned.  We may as well just do that, if your

15   Honor approves.

16             THE COURT:  You said that you have received it and

17   reviewed it with Mr. Zarrab.

18             MR. BRAFMAN:  Yes, sir.

19             THE COURT:  Mr. Zarrab, you reviewed this superseding

20   indictment with Mr. Brafman?

21             DEFENDANT ZARRAB:  Yes, your Honor.

22             THE COURT:  I forget.  Did you want me to read it

23   publicly or are you waiving its public reading?

24             MR. BRAFMAN:  We are waiving its public reading, your

25   Honor.

```
 1              THE COURT:  Mr. Zarrab is entering a plea of not
 2    guilty, is that correct?
 3              MR. BRAFMAN:  Yes, sir.
 4              DEFENDANT ZARRAB:  Yes, your Honor.
 5              THE COURT:  Anything else that you think needs to
 6    happen in connection with just the arraignment?
 7              MR. BRAFMAN:  No, sir.
 8              THE COURT:  You have the floor.
 9              MR. BRAFMAN:  Your Honor, I have had this happen on
10    occasion before, so I'm not trying to understand how it works
11    and certainly not privy to the inner workings of the U.S.
12    Attorney's Office or its grand jury proceedings.
13              But we were on a conference call with the Court
14    shortly before we received this indictment.  The Court, in good
15    faith with counsel, was scheduling motions that we had to file
16    by certain dates and also scheduling hearings.  And I don't
17    think there was any word said by the government to alert either
18    counsel or the Court to the fact that as we were probably
19    speaking, the plan was to file a superseding indictment because
20    we got it a couple of days later.  I'm not suggesting bad
21    faith.  I just think it doesn't make any sense to me that
22    what's happened now changes the whole tenor of this prosecution
23    in many ways.
24              First of all, they have added a defendant, Mohammed
25    Zarrab, who is the brother of the defendant at trial.  And I
```

1    believe, and I think I'm right and I'll ask the government to

2    confirm, I don't believe they have any intention of arresting

3    Mr. Zarrab or extraditing him so he would be here to defend

4    himself against these serious charges prior to the date that's

5    set for trial.  What they have accomplished is they had added a

6    defendant who will not be at trial to defend himself, and he

7    comes to the table with substantial baggage which is highly

8    prejudicial that's charged to him, and he is not in any way by

9    the indictment or by any other evidence, I suggest, tied to my

10   client other than the fact they happen to be brothers.

11          As far as I know, that's not a sufficient basis to

12   charge someone as a codefendant in a criminal case simply

13   because they share the same last name.

14          THE COURT:  My understanding is that he is Turkish and

15   lives in Turkey?

16          MR. BRAFMAN:  Yes, sir.  That's my understanding.

17   Unless they surprise me that they have no intention of trying

18   to get him to this courtroom prior to trial.  So what we will

19   have is a trial that involves a defendant who they have

20   injected into this case, and they have injected companies and

21   organizations, some of them highly prejudicial, which lends

22   itself to I think substantial prejudice to my client in

23   particular.

24          And we have a defendant who I believe is going to be

25   not at the table to defend himself, and we are left trying to

1    distance ourself from someone who shares the last name of my

2    client but without the ability to have that person actually

3    defend himself.

4         And what they have done in terms of changing the tenor

5    of the indictment, respectfully, your Honor, they have added by

6    reference companies that we have had, I believe, nothing to do

7    with and also have not tried to investigate or research.

8         Mahan Air, for example, was never a term that we used

9    when our expert searched hundreds of thousands of e-mails to

10   see if there was any relevance to our client.

11        In addition, Judge, there is also a reference to a

12   terrorist organization that we have nothing to do with, that if

13   his brother has something to do with I will also be shocked.

14   But nevertheless, that is now in the case and a money transfer

15   case, which we were and are prepared to defend, and I think we

16   have very strong defenses to it, we are now burdened with the

17   fact that maybe jury selection will be overwhelmed by this

18   issue as an issue which has nothing to do with my client, which

19   even if it has something to do with his brother, and we dispute

20   that as well, will nevertheless cloud these proceedings unless

21   the Court takes the action we will respectfully suggest in

22   writing.

23        We think this is a duplicitous indictment.  We think

24   the conspiracy that they allege with Mr. Mohammed Zarrab is

25   completely separate and apart from the conspiracy charged in

1    this case against my client.  And if I can respectfully refer

2    your Honor to paragraph 9 of the indictment, which appears --

3            THE COURT:  What page?

4            MR. BRAFMAN:  Page 5, I believe, your Honor.  In the

5    lower right-hand corner of the last paragraph before the words

6    the defendants, you will see that they are now suggesting that

7    Mahan Air, we have nothing to do with, I submit, and were never

8    charged being a participant with, is alleged to have handled

9    goods for, among other organizations, Hezbollah, which is a

10   well-known terrorist organization that I think would be well

11   known to prospective jurors.  It will, in my opinion,

12   dramatically change the tenor of these proceedings.

13           And by injecting it into the indictment with a

14   defendant principally tied to it, who they have no intention of

15   arresting and producing prior to the trial date, suggests to me

16   that this is totally unfair and inappropriate and something

17   that the Court should hold them to task on because a case that

18   all of us believe we would be trying in January has now been

19   dramatically changed.

20           I don't want to overstate that, but as a trial lawyer

21   I, and I think your Honor well knows, there are cases where a

22   reference to a terrorist organization that we submit has

23   nothing to do with the defendant will nevertheless be so

24   prejudicial under 403, that evidence, even if probative against

25   Mr. Mohammed Zarrab, would not be admitted against Mr. Reza

1    Zarrab.

2         And just to do it this way suggests to me somewhat of

3    a reckless approach of trying to prejudice these proceedings.

4    At the very least, we are going to need to schedule new

5    motions, which we did not need to address or the Court didn't

6    need to rule on, and they are separate and apart from the

7    sanction motions.  However much I hate to burden the Court in

8    delaying the scheduling, it's a burden on us as well because to

9    be candid with you, your Honor, Mr. Zarrab has spent enormous

10   resources and personnel power to investigate the entities that

11   were listed in the original indictment.

12        THE COURT:  Against him?

13        MR. BRAFMAN:  Against him.  And against the

14   codefendants who, I might also add, they are not coming to

15   trial either.  And we are prepared to address the suggestion

16   that Mr. Zarrab has ties to Al Nafees Exchange, which is really

17   operated by his father, and I think we can show that the

18   government is simply wrong on that.

19        I don't even know how we begin to address this new

20   allegation.  And to suggest that the new indictment is ok

21   because it doesn't add charges against Mr. Zarrab I think is

22   somewhat disingenuous because it changes the entire tenor of

23   this case.

24        THE COURT:  Just procedurally, you think this is not

25   something that we could deal with in the motions in limine

 1   stage that you want to drop references, etc.?  Just something

 2   to think about, whether it's a separate motion to dismiss or

 3   whatever.

 4         MR. BRAFMAN:  It's my understanding that if a

 5   defendant does not file a motion to dismiss based on duplicity

 6   that you may be held to have waived that issue in the event of

 7   a conviction.  And it's my understanding from the little time

 8   we have had to look at the law that that has to be done

 9   pretrial, and we are prepared to try and brief that

10   expeditiously.

11         In addition, your Honor, for the first time there is a

12   real issue for severance.  And I think if you sever the case

13   against Mohammed Zarrab, I'm not certain that's appropriate to

14   address in a motion in limine.  But if we can't do it any other

15   way, yes, it will be a motion in limine.

16         I must suggest, your Honor, that merely taking out

17   that reference, even if you do, the prejudicial reference,

18   which will be good by itself, doesn't solve the preparation

19   problem.  This indictment for the first time appears that the

20   defendant being involved, at least through a brother, in an

21   organization called Mahan Air.  He has no ownership interest in

22   Mahan Air, he has nothing to do with Mahan Air, and I don't

23   think there is any documentation that we have certainly seen --

24   and while we have not searched for it, we have not seen it --

25   that ties Mr. Zarrab to Mahan Air, this Mr. Zarrab, the one

1   that we are representing.  I'm not certain you can do that.

2       You can just inject a defendant who you have no

3   intention of bringing to the bar of justice because he is

4   beyond the jurisdiction, and yet then burden the defendant on

5   trial with having to defend that case and do it essentially on

6   the eve of trial which is something we will need to address

7   later in this proceeding.  I'm not certain, Judge, it can be

8   done on a motion in limine.

9       THE COURT:  I'll leave that to you.  But you are

10  saying also at the least you need more discovery or more

11  investigation.

12      MR. BRAFMAN:  Yes.  On the issue of discovery, your

13  Honor, several weeks ago we had gotten the last tranche, which

14  was approximately 60,000 e-mails or records, to my

15  recollection.  Your Honor, we filed a motion or a letter of

16  bill of particulars several months ago, and the response from

17  the government has not been helpful at all, because somewhere

18  in the middle of these millions of documents there are certain

19  documents which I think the government will respond to.  We

20  have not been provided with the name of any human being who

21  will perhaps be a live witness who we will have to

22  cross-examine.

23      If they are going to do this on the basis of

24  documents, then I think, because we are rapidly approaching a

25  trial, even if the Court grants an adjournment, we should have

1    the documents they intend to rely on at trial.  I see no

2    prejudice to the government if they do that.

3           In addition, your Honor, to the extent that they are

4    going to rely on a summary chart prepared by an FBI agent,

5    which tends to tie certain e-mails to certain issues, then I

6    think the sooner we have that, the easier it will be to prepare

7    this case for trial.  And there are a number of people at

8    counsel table who are experienced criminal defense lawyers in

9    addition to me, and we have never been in the case where, quite

10   frankly, we are in the dark in some respects as to how the

11   government intends to prove the theory of its case because from

12   the documents we looked at originally, we don't see that proof

13   with respect to the original charges.  And with respect to the

14   new charges, it's impossible, physically impossible for us to

15   go back and review another million, the same millions of

16   records, and add new search terms.  It took months of 30 people

17   working around the clock basically to search the terms that

18   were available from the first indictment.  This is a real

19   undertaking.

20          THE COURT:  I will hear from the government at this

21   point in response to Mr. Brafman, but preliminarily ask, in

22   light of S2, are you claiming additional discovery to the

23   defense.  Is there more that's going to be submitted to the

24   defense?

25          MR. KAMARAJU:  Your Honor, we have turned over all

1   discovery with respect to the conduct alleged in the S2

2   indictment weeks ago.

3         THE COURT:  From your point of view, there is no more

4   discovery.

5         MR. KAMARAJU:  The e-mails that Mr. Brafman were

6   referring to are the e-mails upon which the S2 indictment is

7   based.  They have had those for a period of time.  The

8   government has continuously offered to discuss the evidence and

9   has identified particular e-mail accounts, for example, that we

10  believe to have been used by representatives of designated

11  parties.  Those are obviously material documents to the

12  prosecution and we will continue to discuss the evidence with

13  defense counsel.

14        There are still several months before trial begins.

15  We are not in a position to offer any sort of exhibit list or

16  propose summary charts or witness lists because the government

17  is still preparing its case.  But we are certainly willing to

18  discuss the evidence and we do not anticipate any further

19  e-mail productions with respect to the S2 indictment.  To the

20  extent the government receives any new discovery, we will

21  promptly turn it over to defense counsel and the same offer

22  will stand.  That's where discovery is with respect to the

23  indictment, your Honor.

24        MR. BRAFMAN:  Your Honor, if I may, I think if we went

25  back and checked the proceedings, we would see that at the bail

1     hearing or shortly after bail was denied, the government

2     suggested that they would be able to turn over discovery within

3     a month.  We got the last tranche just several weeks ago.  It's

4     been four or five months of this coming out.  It's also

5     overwhelming.

6              And it's inconceivable to me that, as we speak, the

7     government does not know what specific documents they had to

8     rely on in order to secure this indictment.  There has to be a

9     basket of e-mails or wire transfers or documents that are

10    specifically earmarked by the government as potential exhibits

11    for the trial of this case.  And rather than saying to us that

12    we have everything, can go find it, I think they should be

13    required to at least give us the materials -- I'm not asking

14    for witness lists.  At least the materials that they relied on

15    in bringing these charges.  And I can't imagine any prejudice

16    to the government.  It's not going to be exclusive of any

17    additional exhibits that they want to offer at trial.  And if

18    they are not prepared to give me a summary chart, we will

19    accept their representation on that.  But certainly they must

20    know what exhibits in this trove of exhibits that were in

21    discovery were relied on in order to suggest a link by this

22    defendant to Mahan Air.  And I think we should be given a

23    roadmap rather than saying to us, go look at everything we have

24    given you, again, because I submit to you, Judge, I can't do

25    that again.

 1          THE COURT:  I hear you.  Is that what you were

 2    suggesting, that you would be willing to discuss with

 3    Mr. Brafman?

 4          MR. KAMARAJU:  Two points with respect to that, your

 5    Honor.

 6          First of all, the overt acts section with respect to

 7    each of the designated -- these lay out in detail the documents

 8    that support the charges.  For example, there are specific

 9    e-mails with dates which reference the companies involved,

10    which reference the subject matter, including with respect to

11    the Mahan Airlines.  I think the suggestion that sort of

12    defense counsel was at sea in the face --

13          THE COURT:  You think what?

14          MR. KAMARAJU:  The suggestion that defense counsel was

15    at sea without any guidance in the face of an indictment that

16    is well over 20 pages and lists multiple overt acts is a little

17    bit incredible.

18          THE COURT:  Forgetting the incredible part, you are

19    the one that made the suggestion that you would be happy to

20    talk to defense counsel.  What would you be happy to talk to

21    him about?

22          MR. KAMARAJU:  What we have done in the past, your

23    Honor is we have, for example, identified specific e-mail

24    accounts and said, these are the e-mail accounts that we

25    believe have been used by employees or representatives of

1    Mellat Exchange.  These e-mail accounts we believe have been

2    used by those individuals.

3         MR. BRAFMAN:  Judge, e-mail accounts.  If I identified

4    an e-mail account that was US.Government, it could involve

5    hundreds of thousands of e-mails that have nothing to do with

6    this case.  They have identified e-mail accounts, but the

7    e-mails accounts have literally hundreds of thousands of

8    entries and missives during the relevant time period.

9         THE COURT:  There are two things that come out of

10   this.  One, if in fact you need more time, you'll get it from

11   me for your own preparation.  Two, you ought to take him up on

12   his offer to have conversations with you and see if that

13   advances things for you in any respect or if you are still -- I

14   won't say at sea, but if you are still unclear what it is that

15   they are intending to rely upon.  I think both things should

16   happen.

17        MR. BRAFMAN:  Yes, your Honor.

18        THE COURT:  His bigger point about prejudice, we are

19   not arguing the motion at the moment.  But he raised it, so

20   let's hear what you anticipate you would say in response to

21   such a motion.

22        MR. KAMARAJU:  Certainly, your Honor.  And the

23   government will be happy to respond, obviously, if and when a

24   motion is filed.

25        THE COURT:  Of course there are already two other

1    defendants in this case, codefendants, and he has raised a

2    point now there is three.  And what role, if any, they are

3    going to play at the trial of this case, in person or not in

4    person, seems unlikely.  I don't know if it's unlikely or not.

5    I defer to you.

6         MR. KAMARAJU:  Initially with respect to the point

7    that the government has no intention of attempting to arrest or

8    detain these individuals, the government certainly intends to

9    seek the arrest of all of the defendants listed in the

10   indictment.  There is obviously a procedure that's involved

11   there and it is not a matter of simply finding somebody in the

12   U.S.  But the government's intent and its actions will be to

13   attempt to arrest these individuals, regardless of whether any

14   of these individuals are ever brought before the Court for

15   purposes of trial.  All of them are coconspirators of the

16   defendants.  So evidence with respect to those coconspirators,

17   whether it's statements or actions, would all be admissible

18   against Mr. Zarrab.

19        They have that discovery.  We have had the discussion

20   as to further communications, but they have that discovery and

21   all of that evidence would be subject for trial.

22        Now, as to the broader point, from the very beginning

23   the indictment, the superseding indictment, charged Reza Zarrab

24   with violating U.S. sanctions by enabling Iranian designated

25   entities to access the U.S. financial system when they should

1    not have otherwise been able to do so.  As made clear in the

2    original indictments, the basis for those sanctions, among

3    other things, were sanctions related to weapons of mass

4    destruction proliferation, activity on behalf of the IRGC.

5          For example, NIOC and NICO are entities that are

6    identified in the original superseding indictment as being

7    related to the IRGC.  At no point in the indictment or during

8    the proceedings does the government suggest that those were the

9    only designated entities that Mr. Zarrab's business was

10   involved with.

11         What in fact the second superseding indictment does is

12   provides the specificity that defense counsel has been

13   complaining about.  It identifies more clearly other designated

14   entities that the defendant's business was involved in.

15         I understand Mr. Brafman is taking the position now

16   that his client has nothing to do with Mahan Air.  That's an

17   issue for trial.  And at trial the government is very confident

18   that they will be able to prove Reza Zarrab's connection to

19   acts taken both by himself and the coconspirators to help a

20   number of designated entities, be they Bank Mellat, Mellat

21   Exchange, or Mahan Air.

22         Your Honor, the idea that this somehow fundamentally

23   changes the tenor of the prosecution, the case is what it's

24   always been about, Mr. Zarrab's participation in

25   sanctions-violating activities.  We have simply identified

1  another especially designated entity that he aided.

2       I don't believe that there is any merit to the

3  suggestion that the case has been drastically changed or a

4  terrorist organization has been injected into the case

5  improperly.  The reason why Mahan Air was designated by OFAC

6  is, among other reasons, their facilitation of activities by

7  both IRGC Qods Force, and other terrorist organizations.

8  That's the reason for the designation.  That's why it's

9  identified.  It has nothing to do with an attempt to interject

10  any improper consideration into the --

11       MR. BRAFMAN:  Your Honor, if I may, and I don't think

12  we should beat this issue to death, but the record that was

13  just made by the government is in some degrees I think

14  disingenuous.  There has been no attempt, to our knowledge, in

15  the four or five months since the defendant has been arrested

16  and remanded to arrest the original two codefendants who are in

17  the case.

18       To be perfectly candid, I could care less than them

19  because they were ministerial employees in many ways.  And to

20  our belief, if they were produced and brought here, they would

21  provide exculpatory evidence against Mr. Zarrab in many, many

22  important regards.  To suggest that the Court, with a straight

23  face, that by first injecting NIOC and IRGC, not terrorist

24  organizations that are household names, certainly not to the

25  American public and certainly not to jurors in the Southern

District, is the same as now adding Hezbollah, which is known

by many to be a terrorist organization that targets Americans

targets, Israeli citizens, and to suggest that doesn't change

the playing field, I think is just plain wrong.

In addition to which, they are not tying it to the

defendant.  They are tying it to his brother, who they will

have no ability, in my opinion, to bring here by the time this

case comes to trial or even if the trial was adjourned for a

year.  And I think they understand that and they understand

that perfectly well.

And to the extent that you suddenly pick someone and

suggest that because we now label him a coconspirator,

everything that person has done with respect to Mahan Air is

now something that this jury and this Court and the public

should consider in this case is just something that I don't

think your Honor can allow to stand.

We will address the discovery issues with the

government and we will take you up, sir, respectfully, on your

offer to give us more time if we feel that we need it.  But

initially what we would like to discuss with the Court is

obviously the hearings that are now scheduled for the 30th,

confirm certain scheduling, and also confirm certain

ministerial issues that we have with the production to date,

the preparation for the hearings, and we also want to then have

the ability on the 30th to bring to the Court's attention the

1    requests we will need for an adjournment, if you will, of the

2    scheduled trial date by virtue of the new indictment.  And in

3    the interim, we will also try and prepare and file as soon as

4    possible a motion addressing the duplicity issue and also the

5    addition of the defendant Mohammed Zarrab.

6            THE COURT:  Do you think these steps that we are about

7    to talk about the schedule of are interrelated or can they

8    proceed independently as they have been, so to speak?  You know

9    what I mean?

10            MR. BRAFMAN:  I think we can proceed on the 30th with

11    the hearing or hearings that the Court has scheduled; and that

12    is, you already scheduled a hearing on the iPhone warrant.  We

13    believe that even after the government's response, the Court

14    will believe that a brief hearing at which Agent McReynolds

15    will be required to testify will be required in response to the

16    *Franks* motion because I think whatever the government says on

17    paper I think we have opened an issue that I think requires

18    evidentiary testimony or sworn testimony before the Court.

19            But, Judge, I think we should stick to the schedule

20    for the hearings or we will never make any progress.  I think

21    those issues may impact on how the rest of the case proceeds,

22    depending on what your Honor does.

23            THE COURT:  Sure.  A few things technically.  One is,

24    we discussed this -- I forget if we discussed it in court or on

25    the phone.  Especially as we get closer to these proceedings,

GREMZARC

21

1    we really need to have one defense counsel as the liaison

2    counsel to the Court, which is I'm understanding is you, Mr.

3    Brafman.

4         MR. BRAFMAN:  Yes, sir.

5         THE COURT:  Very hard for me to get letters from or

6    much less phone calls to chambers, what's the status of my

7    letter, that kind of thing.  I really would like all defense

8    letters to come from you, even if somebody else understandably

9    helped prepare it or primarily was involved in the preparation.

10        MR. BRAFMAN:  I will alert counsel to that issue, and

11   I understand your Honor's concern.  Certainly with respect to

12   the severance issues, with respect to the issues we raised

13   concerning duplicity, our office will submit the letters or the

14   motions, and we will try and prevail on the cocounsel to let us

15   handle the other issues that are now addressed to the Court.

16        THE COURT:  I'm not suggesting you can't get that

17   help, but it's how they come to the Court.

18        MR. BRAFMAN:  I understand.

19        THE COURT:  Second, on Thursday, I think it was, the

20   government submitted some of the affidavits of the witnesses

21   for the first portions, so to speak, of the hearing.

22        MR. BRAFMAN:  Yes.

23        THE COURT:  The government did that by, as far as the

24   Court is concerned, by e-mail to Ms. Murray.  That doesn't

25   work.  It's got to come to chambers.  Were these things filed

 1   on the docket?  That's the best.

 2          MR. BRAFMAN:  I think they were filed under seal.

 3          THE COURT:  Is that right?  The transmittal letter

 4   doesn't mention seal.  It just says by e-mail.

 5          MR. KAMARAJU:  No, your Honor.  We intended to simply

 6   provide them to chambers in advance of the hearing.  We can

 7   submit hard copies directly to chambers.  We did not file them

 8   electronically.

 9          THE COURT:  Are they sealed or not sealed?

10          MR. KAMARAJU:  No, they are not sealed.

11          THE COURT:  They could be filed on the docket, right?

12          MR. KAMARAJU:  They could be, your Honor.

13          THE COURT:  And should be, right.  From my point of

14   view, the issue I'm raising is the e-mail to Ms. Murray is too

15   specific.  If it's on the docket, anybody in chambers can get

16   it.

17          MR. KAMARAJU:  We understand.

18          THE COURT:  Everything should be filed.  There are

19   rare instances where something is under seal, in which case we

20   have a process for dealing with that, but everything else

21   should be filed and should be simultaneously delivered hard

22   copy, if you would, to chambers.

23          MR. KAMARAJU:  Absolutely, your Honor.

24          THE COURT:  Perfect.  That applies to the defense as

25   well.  But I'm speaking specifically about this e-mail that

1   came on Thursday, I think.  The bottom line is, nobody got to

2   see it until today because it wasn't noticed.

3         MR. BRAFMAN:  Your Honor, I also want to address the

4   issue of the hearings.

5         THE COURT:  Before we get to that, let me just see if,

6   process wise, what was filed by e-mail are direct affidavit

7   exhibits relating to let's say so-called first portion of the

8   hearings or first hearing, not the *Franks* hearing, right?

9         MR. KAMARAJU:  That's correct, your Honor.

10        MR. BRAFMAN:  Well, to some extent.  But what they

11  have avoided doing, and I can understand it, is that there is

12  no affidavit from the key agent, in our judgment, who handled

13  the whole proceeding in Florida.

14        THE COURT:  As discussed in their transmittal letter.

15  Is that what you are saying?

16        MR. BRAFMAN:  No.  In the transmittal letter I think

17  all they say is these are the affidavits we are filing, and

18  they didn't file any affidavit from an agent who I think is the

19  case agent, or one of them, Special Agent Geissler, who is

20  present in the courtroom.  If they don't want to file an

21  affidavit from him, they can have him available to testify,

22  which is perfectly acceptable, but I thought the Court's order

23  required that to provide an affidavit from all of the agents

24  who were going to be relevant on the suppression issue.

25        THE COURT:  Who they are going to call.

1          MR. BRAFMAN:  Then I would like him available as a

2     witness to the extent --

3          THE COURT:  We will get to that in a minute.  As to

4     your letter, that's my question as well.  You think you prevail

5     at the hearing, so to speak, based on the affidavits of these

6     four people, is that right?

7          MR. KAMARAJU:  Yes, your Honor.  The government's

8     original position is we think we prevail as a matter of law.

9     Even though the affidavit was submitted, we believe we would

10    prevail --

11         THE COURT:  To the extent that there is some gap,

12    according to the defense counsel, that goes to whether you

13    prevail or not prevail, do you intend to adduce any further

14    evidence than these four affidavits?

15         MR. KAMARAJU:  No, your Honor.  That's what the

16    defendant and the government intends to provide.

17         THE COURT:  You will do that with that what you will,

18    but they are not calling anybody else and they nevertheless

19    think that they will meet the burden of proof, I guess is what

20    they are saying, based on these four affidavits for the first

21    portion of the hearing.

22         MR. BRAFMAN:  Will I have the ability to call

23    witnesses at the hearing?

24         THE COURT:  Yes.

25         MR. BRAFMAN:  I would like them to be advised of the

1   fact that I think Agent Geissler is an essential witness to

2   this witness and that she should make him available on the date

3   of the hearing and provide me with what ordinarily be 3500

4   material for that agent were they to call him.

5        And he was the case agent.  And based on my careful

6   reading of the affidavits that have been produced, he was

7   conspicuously kept out of the information I've been given and

8   yet all of the other agents and customs agents, to my

9   understanding of what happened, were essentially taking

10  direction from him throughout this ordeal.  I think not having

11  him produce an affidavit is something that may be their

12  strategy.  But if we are going to have a hearing, so that the

13  Court can understand that all of the customs agents were

14  essentially taking their marching orders from the FBI agents,

15  that's the entire issue that we are discussing.

16       THE COURT:  On cross-examination you would ask those

17  four that very question, right, as one way of adducing or

18  supporting the point you are making.

19       MR. BRAFMAN:  Yes.  I think if Agent Geissler were

20  called, it would save the Court a tremendous amount of time.

21  But whether you would agree with me or not, I think it would

22  quickly establish that everything that was happening at Miami

23  Airport that day was carefully orchestrated by the FBI.  The

24  customs people were just following orders.

25       MR. KAMARAJU:  I would just note that one of the

 1   affidavits that the government provided was from a CBP officer

 2   who could testify as to the communications and in fact, I

 3   believe, in the affidavit itself describe the communications

 4   that occurred between CBP and the FBI on cross-examination.

 5   Mr. Brafman could ask him all of the questions that he wanted.

 6           In addition, the government has put forth other FBI

 7   agents who are involved in the arrest.  Mr. Brafman has more

 8   than enough witnesses to establish whatever point he thinks he

 9   can make with that information, especially with Geissler's

10   role, and it is not going to add to that in any way.

11           THE COURT:  He thinks it's dispositive.

12           MR. KAMARAJU:  If the issue is, as Mr. Brafman has

13   framed it, is the coordination between CBP and FBI, that issue

14   has been spoken to both from the CBP perspective and the FBI

15   perspective in the affidavits already submitted to the Court.

16           THE COURT:  The agent will be here at the trial, I

17   take it.

18           MR. BRAFMAN:  At the hearing.

19           THE COURT:  At the hearing.

20           MR. KAMARAJU:  Yes, your Honor.

21           THE COURT:  And Mr. Brafman would be able to call him

22   as his witness, it seems to me.  I think we would go through

23   the direct and cross and redirect of the first four witnesses,

24   and then are you planning to call other witnesses?

25           MR. BRAFMAN:  No your Honor.  I think we have an

 1  affidavit from Mr. Zarrab and I think based on our

 2  understanding from the government, they cannot call him because

 3  he is the defendant, but his affidavit is part of the record

 4  that your Honor in fact has relied on in ordering a hearing.

 5          THE COURT:  And you would want to examine the agent at

 6  the hearing.

 7          MR. BRAFMAN:  I think I will have no choice, but I can

 8  make that decision after we have heard the testimony from the

 9  other people who the government intends to call, but I think

10  the need for him to specifically testify might become apparent

11  from that testimony.

12          THE COURT:  Or not.

13          MR. BRAFMAN:  Or not.  I just want to make sure he is

14  available.

15          THE COURT:  I think he should be available, right?

16          MR. KAMARAJU:  Yes, your Honor.

17          THE COURT:  Now, on November 11, I endorsed your

18  letter which talks about the scheduling and made some

19  relatively minor changes.  That works for all of you, I hope.

20          MR. BRAFMAN:  I believe so, yes, your Honor.

21          THE COURT:  One was just to shorten up the reply

22  brief.  Another was the direct testimony affidavits for the

23  *Franks* part of the proceeding, if there is a hearing, right.

24  That's the 24th now.  And also to give the Court more time

25  between the motion and the hearing to make a determination for

1      you.  And then minor, on November 30 to start at 9:15.

2                MR. BRAFMAN:  Yes, sir.

3                THE COURT:  We do have, if I remember correctly a

4      schedule for submissions with respect to the *Franks* portion

5      already agreed to, right?

6                MR. BRAFMAN:  Yes, sir.

7                THE COURT:  That's it for me, I think, in terms of

8      scheduling.  Did you have some more questions?

9                MR. BRAFMAN:  The government has filed a letter

10     November 10 with the Court.  Without referring to the substance

11     of the letter, because they have asked the Court to keep it

12     under seal, we would just note our objection --

13               THE COURT:  I didn't think they had.  Is that under

14     seal?  It's not marked --

15               MR. BRAFMAN:  It's marked, submitted by hand and under

16     seal.

17               MR. KAMARAJU:  Yes, your Honor.  With respect to the

18     defense's request to provide the affidavit to certain

19     individuals, that was filed under seal by the government.

20               MR. BRAFMAN:  We would object to it being filed under

21     seal, your Honor.  In the letter itself they talk about how the

22     people in Turkey understand the nature of these proceedings.

23     In fact, they reference a suggestion that they have attempted

24     to meet with Justice Department officials on this issue.  And I

25     don't understand the reason for it to be sealed.

```
 1              THE COURT:  Hold on a second.  Maybe I'm not

 2    understanding --

 3              MR. BRAFMAN:  I can hand up the letter.

 4              THE COURT:  -- if we are talking about the same letter

 5    or not.  This is a letter dated November 10?

 6              MR. BRAFMAN:  Yes, sir.  It's addressed to you and we

 7    were copied.

 8              THE COURT:  You are not talking about the letter that

 9    encloses the four affidavits?

10              MR. BRAFMAN:  No, sir.  It's a letter.  I think your

11    deputy has it.

12              THE COURT:  I'm sorry.  You were saying, Mr. Brafman?

13    I am familiar with this letter.

14              MR. BRAFMAN:  I don't believe this should be filed

15    under seal and I believe that we should have the right to try

16    and obtain the document in there or verify the document in

17    there that this discussion can't be sealed because it really

18    prevents us from doing our job if we can't obviously try and

19    have these discussions with people both in this administration

20    and in the Turkish government.

21              The whole purpose of the document relates obviously to

22    the point we intend to make at the *Franks* hearing, and that

23    affidavit that the Court relied on in issuing the warrant left

24    out, on purpose, certain very, very important materials that

25    they had available, which questioned the integrity of the very
```

 1   document the agent primarily relied on in her affidavit to the

 2   magistrate.

 3          THE COURT:  I get it.  Did you want to comment?  Just

 4   so that everybody understands what we are talking about, this

 5   is in relation to expanding or not the protective order.  Is

 6   that fair enough, making an exception to the protective order?

 7          MR. BRAFMAN:  I think making an exception with this

 8   document -- because the whole purpose of the *Franks* hearing is

 9   to be able to use the report in Turkey, which I think the

10   government there would confirm is not a valid report, which was

11   widely publicized but conspicuously left out of the affidavit

12   to the magistrate judge, who then issued the search warrant.

13   Had it been referenced in those materials, made known to the

14   magistrate, the magistrate might have understood why relying on

15   a report that has already been declared by the government in

16   that country to be noncredible is an important consideration.

17          THE COURT:  Maybe we could explain a little bit better

18   so everybody understands what the issue is.  I do and you do.

19          MR. KAMARAJU:  Certainly, your Honor.  With respect to

20   the request that we understand --

21          THE COURT:  There is currently existing a protective

22   order, right?

23          MR. KAMARAJU:  Yes.

24          THE COURT:  That has been agreed to by the defense and

25   by the government and ultimately submitted to me after you had

 1    agreed and that protective order says what information is

 2    disseminated to whom.

 3         MR. KAMARAJU:  That's right.  And there is --

 4         THE COURT:  Now there was some disagreement between

 5    the government and the defense as to how you could, in a

 6    particular instance, make an exception to the protective order.

 7    I asked you to meet and confer and see if you could resolve

 8    that.  You met and conferred.  There was some movement, let's

 9    say.  But there was not agreement to the liking of defense

10    counsel.  And in particular there is a document.  And if you

11    could explain your respective positions with respect to that

12    document.

13         MR. KAMARAJU:  Certainly.  With respect to the

14    protective order there are two separate requests pending, as

15    far as we understand.

16         THE COURT:  This is one of them.

17         MR. KAMARAJU:  This is one.  The request your Honor

18    was just referring to was to modify the protective order with

19    respect to everybody.  The way the government understands the

20    second request, the request we are discussing, is a motion

21    under the current protective order as it stands for

22    authorization to provide a Turkish police report.

23         THE COURT:  A Turkish police report.

24         MR. KAMARAJU:  Sorry.  My apology.  Actually, to

25    release a search warrant affidavit that discusses, among other

1    things, a Turkish police report.

2            THE COURT:  A search warrant affidavit prepared by --

3            MR. KAMARAJU:  By an FBI agent and submitted in

4    connection with the search of Mr. Zarrab --

5            THE COURT:  Submitted to a magistrate judge and

6    obtained a warrant as a result from the magistrate judge which

7    resulted in the production of a lot of materials that Mr.

8    Brafman is raising a concern about.

9            MR. KAMARAJU:  That's right.  Mr. Brafman and the

10   defense has filed a motion to suppress the results of that

11   search, which was done pursuant to the warrant obtained from

12   that search warrant affidavit.

13           What defense counsel now has requested is that they be

14   able to provide that affidavit to the Turkish Ministry of

15   Justice.

16           THE COURT:  The Turkish Ministry of Justice, right,

17   which they couldn't do under the protective order as it's

18   currently written.

19           MR. KAMARAJU:  That's right.  But I want to make this

20   clear for the Court, the reason why they want to provide the

21   affidavit, as the government understands it, is the affidavit

22   discusses a police report prepared as part of a Turkish

23   investigation of Mr. Zarrab.  That report is publicly

24   available.  It was leaked onto the Internet.  So that report is

25   obtainable outside of discovery and, as the government has made

1   clear in its submissions, if obtained outside of the discovery

2   process, it's not subject to the protective order.

3             THE COURT:  It can't be.

4             MR. KAMARAJU:  So they are able to provide the actual

5   report to whoever they want, whether it's the Turkish Ministry

6   of Justice or not.

7             What they have suggested is that they wish to also

8   provide the affidavit because the affidavit in their mind

9   specifies particular parts of the police report that were

10  relied upon as part of the warrant, the affidavit.

11            THE COURT:  No.  It was relied upon in obtaining --

12            MR. KAMARAJU:  In obtaining the warrant.  So the

13  government filed a letter under seal objecting to that for

14  numerous reasons, including the fact that, in our view, the

15  Turkish Minister of Justice current view as to the validity of

16  the report is irrelevant.  The defense has the ability to

17  provide the actual report to the Turkish Minister of Justice,

18  even if it is relevant.

19            And then we identified for the Court, and this is the

20  portion of the letter that's sealed, so I'm not going to

21  discuss it with too many specifics, some of the things that Mr.

22  Brafman referenced, which are communications had between the

23  defense counsel or other individuals acting on behalf of the

24  defendant, and members of the Turkish government and the U.S.

25  Government.  And those matters, as far as we know, are not

1    public.  Some aspects of them are, but we are not aware that

2    all of those are public, which is why we filed the letter under

3    seal for the Court to be aware of.

4          THE COURT:  It's your position, however, that apart

5    from those matters, you should prevail on the dispute with Mr.

6    Brafman anyway?

7          MR. KAMARAJU:  Yes.  Because for the reasons set forth

8    in the letter, we simply don't think that this would lead to

9    any admissible evidence whatsoever.

10         MR. BRAFMAN:  Judge, I really don't understand the

11   government's concern.  We have a hearing scheduled on the 30th.

12   Now, at the hearing we intend to use the affidavit in support

13   of the search warrant to cross-examine Agent McReynolds and it

14   will be a matter of public record.

15         In addition, in the materials filed in support of the

16   *Franks* hearing, we have already referenced sections of the

17   affidavit and a suggestion that by releasing the underlying

18   affidavit somehow prejudices the United States Government or

19   its prosecution of this case is kind of a specious argument.

20         In addition, the reason we need it is we understand

21   that the police report in Turkey was posted online.  That's

22   really the point that we are trying to make in that our

23   government used a police report filed online by someone who we

24   believe had their own political agenda and used it as the

25   gospel to demonstrate the veracity of a Turkish criminal

1    investigation against our client.

2              And what I think we can establish, and we have a right

3    to try and get the help of the Turkish government entirely

4    properly, because he's a Turkish citizen, Mr. Zarrab is a

5    Turkish citizen, and not a citizen of the United States, we

6    have a right to try and get a formal statement from their

7    ministry of justice to the effect that the police report, A, is

8    not a police report, that it has been discredited and, third --

9    and that's why we may need to see the affidavit -- third, the

10   manner in which the affidavit discusses the integrity of the

11   police report does not meet standards in Turkey for reliable

12   criminal evidence and it's not irrelevant to your Honor's

13   finding because at the end of the day, Judge, if we were in

14   Turkey arguing that someone should be going to prison for the

15   rest of his life based on an investigation done by the FBI and

16   the Department of Justice were to conclude that the FBI

17   investigation was flawed, then dismiss the charges and conclude

18   that this was part of a political dispute and it has no merit

19   and can't be relied on, I think you would rule that the

20   defendant in Turkey would have a right to that evidence in an

21   attempt to defend himself.

22             I'm not suggesting your Honor is going to be bound by

23   the decision we get from the ministry of justice in Turkey on

24   this issue.  But they should certainly be allowed to make an

25   informed decision so that they are not relying on what's

1    available on the Internet.  And I think we are asking this,

2    quite frankly, because he has taken from Miami and been locked

3    up for six months for a crime that is very esoteric in nature,

4    and this political dispute that is now embroiling the entire

5    country of Turkey to some degree impacts on this trial, whether

6    the government wants it or not.  Not necessarily for the trier

7    of fact, but certainly with respect to issues that your Honor

8    must decide on prior to trial.  Keeping this under seal does

9    not make any sense to me.

10              THE COURT:  I got it.

11              MR. BRAFMAN:  Thank you.

12              THE COURT:  Anything else we need to discuss today?

13              MR. BRAFMAN:  No, sir.

14              THE COURT:  I am going to try and get you a ruling on

15   this application ASAP.

16              MR. KAMARAJU:  Your Honor, just as a housekeeping

17   matter, the government would ask to exclude time on the second

18   superseding indictment through the date of the trial, which is

19   January --

20              THE COURT:  Haven't we already done that?

21              MR. KAMARAJU:  We did it with respect to the first

22   superseding indictment, just as a housekeeping matter.  And the

23   basis for that would obviously be to give defense counsel time

24   to review discovery and for us to have ongoing discussions and

25   in light of the pending motions and motions that are

1    anticipated.

2            MR. BRAFMAN:  There is a good-faith basis to exclude

3    that time.  We are in the process of continuing to file motions

4    and reviewing discovery.

5            THE COURT:  I agree with that and I also find, under

6    18, United States Code, Section 3161, that the request for

7    adjournment joined in by both sides to and including the trial

8    date of, I think it's January 22 --

9            MR. KAMARAJU:  23rd, your Honor.

10           THE COURT:  -- is appropriate and warrants exclusion

11   of the adjourned time from speedy trial calculations with

12   respect to the S2 indictment.  I further find that the

13   exclusion is designed to prevent any possible miscarriage of

14   justice, to facilitate these proceedings and to guarantee

15   effective representation by and preparation by counsel for both

16   parties.  Thus the need for exclusion and the ends of justice

17   outweigh the interests of the public and the defendant in a

18   speedy trial pursuant to 18 U.S.C. Section 3161 (h)(7)(A) and

19   (b).  Of course, we have already excluded time until the trial

20   date with respect to the prior indictment.

21           MR. BRAFMAN:  Just so I'm clear, your Honor, we will

22   try and confirm with the government to see that there is a need

23   for an adjournment of the trial date and see if we can come to

24   a consent on that.  I just want to respectfully again alert the

25   Court to the concern we have about the approaching trial date.

1    And certainly by the 30th, when we are before your Honor for

2    the hearing, we will have our issues in a row on that.  And if

3    there is no consent, we will explain perhaps the need for the

4    adjournment at that time.

5              THE COURT:  I appreciate that and I will be likely to

6    go along with good-faith presentation in that regard.

7              MR. BRAFMAN:  Thank you, sir.

8                              o0o

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25