GBN6ZARC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                              15 CR 867(RMB)

5   REZA ZARRAB,

6               Defendant.

7   ------------------------------x

                                         New York, N.Y.
8                                        November 23, 2016
9                                        9:45 a.m.

10
    Before:
11
                      HON. RICHARD M. BERMAN,
12
                                         District Judge
13

14                      APPEARANCES
    PREET BHARARA
15       United States Attorney for the
         Southern District of New York
16  MICHAEL D. LOCKARD
         Assistant United States Attorney
17
    BRAFMAN & ASSOCIATES, PC
18       Attorneys for Defendant
    JOSHUA KIRSHNER
19
    LEWIS BAACH KAUFMANN MIDDLEMISS
20       Attorneys for Defendant
    AARON T. WOLFSON
21
    QUINN EMMANUEL URQUHART & SULLIVAN, LLP
22       Attorneys for Defendant
    ADAM ABENSOHN
23

24

25

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

GBN6ZARC

(Appearances cont'd)


SULLIVAN & WORCESTER
     Attorneys for Defendant
ANDREW SOLOMON

KIRKLAND & ELLIS
     Attorneys for Defendant
EDMUND G. LACOUR

Also present:  George Esayan, Turkish language interpreter

GBN6ZARC

1          (In open court)

2          THE COURT:  Please be seated.

3          Counsel for Quinn Emanuel, if you could, come up and

4    join us.

5          First I should note that we have a Turkish language

6    interpreter, and ask Mr. Zarrab if he is able to understand

7    these proceedings with the help of the interpreter?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Good.

10          Also, preliminary thank you all for being here on

11   relatively short notice before a holiday tomorrow.  Some of the

12   principal attorneys who most often come to court in this case

13   are not present today and are represented by colleagues of

14   theirs, members of their firms, etc., and I have asked them to

15   make sure that their representatives were familiar with these

16   proceedings and I am sure that has happened.

17          Perhaps we should with the government in hearing who

18   is here and whom they represent today.

19          MR. LOCKARD:  Good morning, your Honor.  Michael

20   Lockard for the government.

21          MR. KIRSHNER:  Good morning, your Honor, Josh Kirshner

22   from Brafman & Associates representing Mr. Zarrab.  I have been

23   at every court appearance.  I am familiar with the proceedings

24   in this matter.

25          THE COURT:  Great.

GBN6ZARC

1          MR. LACOUR:  Good morning, your Honor Edmund Lacour on

2     behalf of Kirkland & Ellis.  I have been involved in the case

3     as well.

4          MR. WOLFSON:  Good morning.  Your Honor.  Aaron

5     Wolfson, Lewis Baach Kaufmann Middlemiss.  I have been on the

6     matter for several months now.

7          MR. SOLOMON:  Good morning, your Honor.  Andrew

8     Solomon.  I am Harry Rimm's partner from Sullivan & Worcester.

9     I am here and Mr. Rimm is here for purposes of a Curcio

10    hearing.

11         MR. ABENSOHN:  Good morning, your Honor.  Adam

12    Abensohn from Quinn Emmanuel for Mr. Zarrab.

13         THE COURT:  I appreciate your all being here.

14         I just want to make some remarks preliminary and then

15    I want to hear from the government and any of you who wish to

16    be heard.

17         The first comment I would like to make is that it is

18    the fundamental objective of this Court, myself, and virtually

19    all courts, to ensure that the defendant in a criminal case, in

20    this case Mr. Zarrab, gets fairly treated throughout the case

21    and also receives a fair trial.  That is the overwhelming

22    objective as I see my role.  One element is that he be

23    represented by conflict-free counsel, and in this regard I just

24    want to cite or quote from a few decisions that help frame our

25    discussion here today.

GBN6ZARC

1          One is this:  "When a District Court is sufficiently

2     apprised of even the possibility of a conflict of interest, the

3     Court first has an inquiry obligation.  Whenever the Court's

4     inquiry reveals that a criminal defendant's attorney in fact

5     suffers from an actual or potential conflict, the Court has a

6     subsequent disqualification/waiver obligation.  If the Court

7     discoverers that the attorney suffers from a severe conflict

8     such that no rational defendant would knowingly and

9     intelligently desire the conflicted lawyer's representation,

10    the Court is obliged to disqualify the attorney.  If the Court

11    discovers that the attorney suffers from a lesser or only a

12    potential conflict of interest such that a rational defendant

13    could knowingly and intelligently desire the conflicted

14    lawyer's representation, the Court should follow the procedures

15    set out in *United States v. Curcio* (2d Cir. 1982) in order to

16    obtain directly from the defendant a valid waiver of his right

17    to a nonconflicted lawyer."

18         "Federal courts have an independent interest in

19    ensuring that criminal trials are conducted within the ethical

20    standards of the profession and that legal proceedings appear

21    fair to all who observe them."  That is a quote from *Wheat v.*

22    *United States*, 486 U.S. 153, a 1988 case.

23         Of course the backdrop here also is that the

24    defendant, every defendant, has a right to select the counsel

25    of his choosing.  The second backdrop is I want to make clear

GBN6ZARC

1    that there has been no finding of any actual conflict or even

2    potential conflict.  The issue has been put on the table,

3    however, as a result of a submission from the government.

4          So the reason for getting together today is somewhat

5    to discuss the calendar, the time frame, which we'll have

6    proceedings to review and resolve any actual or potential

7    conflicts of interest or determine that there are none as were

8    alleged by the government on November 18, 2016, with respect to

9    defense counsel Kirkland & Ellis.  The government asserts

10   generally -- I don't want to put words in their mouth.  They

11   will speak for themselves -- that the conflict stems from the

12   fact that Kirkland & Ellis, which recently merged -- I guess

13   that is the right word or perhaps there is a better word --

14   with the Bancroft Firm of defense counsel Mr. Clement, Mr.

15   Lacour and Viet Dinh who have been active in this case who also

16   represents Deutsche Bank and Bank of America and that these two

17   banks, Deutsche Bank and Bank of America, are two of the banks

18   which Mr. Zarrab allegedly used to effect allegedly illegal

19   transactions which are the subject of the criminal proceeding.

20         If I might turn to government counsel for the moment

21   just to see if that is a fair statement of your allegation.

22         MR. LOCKARD:  It is, your Honor.  Just to supplement

23   that a little bit, while our trial witness list has not yet

24   been finalized, there are a number of banks, including Bank of

25   America and Deutsche Bank, who are potential live trial

GBN6ZARC

1    witnesses, which is another reason why we thought it prudent to

2    draw this issues to the Court's and counsel's attention.

3          THE COURT:  Mr. Lockard, maybe you can go up to the

4    podium so that people can better hear.

5          MR. LOCKARD:  Yes, your Honor.

6          In addition to the potential trial limits issue, just

7    to further supplement the record a little bit, in the

8    government's discussions with defense counsel about this

9    potential conflict issue on I believe Tuesday of last week, we

10   also provided to Kirkland & Ellis a list of all the banks that

11   we believe to be potential victims of the conduct that is

12   alleged in the second superseding indictment, numbering

13   approximately 11 banks so that they can further vet that issue

14   with respect to any banks that we had not already identified in

15   our Curcio letter.

16         THE COURT:  Did you have conversations before you sent

17   the Curcio letter; did I get that right?

18         MR. LOCKARD:  Yes, your Honor.  We spoke with defense

19   counsel I believe Tuesday of last week a day or two prior to

20   submitting our letter to the Court.

21         THE COURT:  Kirkland & Ellis in response to the

22   government's letter contend and assert that there is no

23   conflict.  They also have willingly joined in the Court's

24   determination that there should be a so-called Curcio hearing

25   and they also propose -- they will flesh this out better than I

GBN6ZARC

1    -- to establish what they referred to as an "ethical wall"

2    within the firm that would resolve any conflict or potential

3    conflict.  I think it probably best to hear from them.

4          Before I do so, as I mentioned before, the issue in

5    this kind of situation is determining or balancing the right of

6    the accused to select counsel of his choosing against his

7    constitutional right to ensure that we have the highest ethical

8    standards of professional responsibility.

9          Perhaps, Mr. Lacour, you can tell us if I correctly

10   summarized your position or if you would add to what I have

11   said in any way.

12         MR. LACOUR:  Yes, your Honor.  Your Honor has

13   correctly stated our position, which we have put forth in our

14   response letter we filed I believe on Monday.  We have as we

15   described put in place an ethical wall which only allows

16   attorneys who have been precleared by our general counsel to

17   work on his matter to access his data and to discuss the

18   matter, which we believe while we have taken the position we

19   don't think that there is a conflict or potential conflict, we

20   have explained to Mr. Zarrab the government's view of where

21   there could be a potential conflict.  We have done that also in

22   the presence of other counsel that he has in this case who are

23   not members of Kirkland & Ellis in the event that he had

24   questions and he did not want to ask us or thought it was

25   inappropriate to ask us.  We also stand ready to further

GBN6ZARC

1      explain the wall of defense counsel to the Court as well.

2              THE COURT:  From what I understand I hear you have had

3      a discussion about the situation with Mr. Zarrab, number one;

4      right.

5              MR. LACOUR:  Yes, your Honor.

6              THE COURT:  You have explained I am sure about the

7      whole nature of a Curcio proceeding and how this has come about

8      with the government's letter, etc.?

9              MR. LACOUR:  Yes, your Honor.  We reviewed the Curcio

10     letter that the government' filed.  We have reviewed the

11     government's postscript for the hearing.  We have talk through

12     the issues there and any questions that he had, again, in the

13     presence of co-counsel who are not members of Kirkland & Ellis

14     in the event he had questions for them that he didn't want to

15     ask us.

16             THE COURT:  That's the team that is already in place?

17             MR. LACOUR:  Correct, your Honor.  We have not yet met

18     with court-appointed counsel.

19             THE COURT:  Could you just briefly for my benefit

20     describe the ethical wall and how that works?  You and

21     Mr. Clement and Mr. Dinh arrived at Kirkland with this case?

22             MR. LACOUR:  Yes, your Honor.

23             THE COURT:  When in relation to that was the ethical

24     wall set up?

25             MR. LACOUR:  We did not perceive there was an ethical

GBN6ZARC

1    issue at the time when we came over.

2              THE COURT:  Did not?

3              MR. LACOUR:  Did not, your Honor.

4              THE COURT:  Okay.

5              MR. LACOUR:  The wall was not instituted until after

6    we had heard from the government and they had raised this

7    proposed issue.

8              THE COURT:  Is that a matter of weeks or months from

9    when you got there?

10             MR. LACOUR:  Yes.  We formerly joined the firm -- my

11   dates are a little -- this is our fourth week at the firm.

12             THE COURT:  I see.

13             You heard from the government last week I take it

14   before they sent the letter?

15             MR. LACOUR:  Yes.  I looked back and the e-mail

16   traffic is suggesting that the call was actually on Wednesday

17   as opposed to Tuesday; but in all events, we heard shortly

18   before they filed the letter, which was filed with the Court on

19   Friday, November 18th.

20             THE COURT:  Preliminarily are you saying that the

21   ethical wall solves the problem or there is no problem?

22             MR. LACOUR:  The wall was put in place out of an

23   abundance of caution to further assure to Mr. Zarrab that there

24   would not be potential issues beyond ones that we've already

25   described to him, but we have made him aware of what could be

GBN6ZARC

1   potential issues in this case.  We're ready for the Curcio

2   hearing, which he will be able to after consulting with his

3   court-appointed counsel discuss with the Court his position on

4   everything.

5           THE COURT:  You then I take it discussed with

6   Mr. Zarrab the process of the Court having an independent

7   counsel who would confer with him?

8           MR. LACOUR:  Yes, your Honor.

9           THE COURT:  That is Mr. Rimm --

10          MR. LACOUR:  Correct.

11          THE COURT:  -- who is represented here today by his

12  partner.

13          Chambers gave him the complaint and the two letters

14  back and forth between you and the government on the issue.  So

15  he is familiar with the issue.  Also, and I understand that

16  this tentatively is arranged, he knows that a Turkish language

17  interpreter is -- that we always have one at least on standby

18  if not simultaneous translation.  Mr. Rimm would know to

19  contact the interpreter before arranging the conversation --

20          MR. LACOUR:  Thank you, your Honor.

21          THE COURT:  -- with Mr. Zarrab.

22          Did you have more that you wanted to add?

23          MR. LACOUR:  One question for the Court.  In you order

24  you asked for a further supplement as to when we learned about

25  this potential conflict.  We're happy to provide that later

GBN6ZARC

1   today in writing if you would prefer.

2           THE COURT:  I understand from what you said that you

3   learned about it last Wednesday?

4           MR. LACOUR:  Yes, your Honor.  We'll submit that in

5   writing.

6           THE COURT:  A short note to that effect would be fine.

7           The other question that I have for you relates to Bank

8   of America and Deutsche Bank.  It seems to me, and as I

9   indicated in an order that I put out yesterday dated

10  November 22, 2016, I would be interested in hearing from them

11  in a way that is comfortable.  If they wish to testify at the

12  Curcio hearing, they are welcome to do that.  That is their

13  call.  I would like to know, and I don't know if you know now,

14  and have the assurance that they were consulted and that they

15  are okay with whatever procedures you all have put in place.

16          MR. LACOUR:  Your Honor, we have reached out to the

17  them as of yesterday upon receiving your order about the Curcio

18  hearing, and I do not believe we have heard back from either

19  bank yet.  We are actively trying to secure something in

20  writing from them and also let them know that they have every

21  right to come testify if they would like.  We will certainly

22  endeavor to have something from both clients by the time of the

23  hearing.

24          THE COURT:  Thank you.

25          MR. LACOUR:  We cannot guarantee that, but we're

1    certainly pushing hard for it.

2            THE COURT:   Thank you.

3            Now let's talk about the hearing.  I am scheduling the

4    Curcio hearing for Monday the 28th at 9:30 a.m.  The reason

5    that I picked that relatively quick scheduling has to do with

6    the fact that as you are all aware there are two suppression

7    hearings which were initiated by the defense, including one

8    which was initiated by Kirkland & Ellis, and those hearings are

9    scheduled for Wednesday, November 30, also next week at

10   9:15 a.m.  My perspective on this is that there cannot be any

11   action or proceeding, including these suppression hearings,

12   much less a trial of this case, unless and until we resolve the

13   alleged conflict of interest issues.  I do note that counsel

14   have already postponed the suppression hearings once from

15   November 22 to November 30.  I think that was done to

16   accommodate the Kirkland application for suppression, which was

17   somewhat different than the defense counsel's application.  So

18   I would prefer that there not be any further delay.

19           In preparation for the Curcio hearing, which both

20   sides, government and defense, have agreed is appropriate and

21   as I have also set forth in the order dated November 22, 2016,

22   several steps are required.  As you've heard I have taken the

23   first step by appointing CJA counsel, Harry Rimm, who was the

24   CJA counsel on duty yesterday when I issued my order to assist

25   the Court by serving as independent counsel in this matter for

GBN6ZARC

1    purposes of the Curcio hearings.  His responsibility is to meet

2    and confer with Mr. Zarrab with an interpreter if that is

3    required and to ensure that Mr. Zarrab fully understands the

4    Curcio issues and his rights with respect to the Curcio

5    proceeding and the line of questions which I will pose to him

6    during the Curcio proceeding.  Mr. Lacour indicated that that

7    has happened already as described and we need to have it happen

8    one more time with independent counsel.

9            As I mentioned before Mr. Rimm is with Sullivan &

10   Worcester and is represented here today by Mr. Soloway.

11           MR. SOLOMON:  That's correct, your Honor.

12           THE COURT:  Defense counsel also have responsibilities

13   in preparation for the Curcio hearing of course and it sounds

14   like they are well on their way to meeting these

15   responsibilities.  The first of course is to confer with

16   Mr. Zarrab, which appears has already happened.  Next is to

17   confer with Deutsche Bank and Bank of America to obtain their

18   statements vis-a-vis the Curcio issues, which seems to have

19   been initiated but certainly not completed.  As counsel is

20   aware they are invited to testify at the Curcio hearing.  If

21   they wish, it would be satisfactory if they submit a written

22   statement as well.  Also, everyone knows the need to review the

23   Rules of Professional Conduct, New York rules, and will

24   ultimately need to advise me their view as to whether or not

25   everybody is in "compliance" with those rules.

GBN6ZARC

1          That is what is on my mind and my agenda for today.  I

2     am happy to hear from anybody if they wish to be heard.

3          MR. SOLOMON:  May I address the Court, your Honor?

4          THE COURT:  Sure.

5          MR. SOLOMON:  Mr. Rimm because of the holidays has

6     asked --

7          THE COURT:  You are Mr. Soloway?

8          MR. SOLOMON:  Andrew Solomon from Solomon & Worcester

9     where Mr. Rimm is a partner.

10         Mr. Rimm said that he is traveling on the holidays and

11    he is concerned that he won't be able to have an opportunity to

12    meet with the defendant before 9:30 in the morning on Monday,

13    particularly with the added complication of retaining an

14    interpreter.  So he has asked at a minimum that the Court move

15    that 9:30 time at least a couple hours later in the day so that

16    he has an opportunity to meet with the defendant.

17         THE COURT:  Let me take that under advisement.

18         You should know in my personal career, the first month

19    I was an associate at a well-known New York law firm, on

20    Thanksgiving Day the firm sent me by plane -- this was before

21    fax and courier and FedEx -- to San Francisco on Thanksgiving

22    Day to obtain the signature of one of our clients on an

23    agreement.  So I flew into San Francisco and I took a $100 cab

24    ride to this fellow's house and got his signature and got back

25    on the plane and flew to Los Angeles where I obtained the

GBN6ZARC

1    signature of another senior executive.  That is all on

2    Thanksgiving Day.  Once I had done that, I got on the plane at

3    the end of the day and flew back to New York.  So times may

4    have changed, but I just want you to know what my perspective

5    is about Thanksgiving.  It is a wonderful holiday but this is a

6    serious matter that we have going here. someone's liberty is at

7    issue and at stake.  I will try to be accommodating, but I

8    don't have a lot of sympathy.  Today is Wednesday and we're

9    talking about Monday and that's a long time in my view.

10            I will take your request under advisement.

11            MR. SOLOMON:  Thank you, your Honor.

12            MR. KIRSHNER:  Your Honor, Josh Kirshner.  After

13   hearing the Court's comments on keeping the schedule intact for

14   both the Curcio hearing and the suppression hearings that were

15   scheduled currently for the 30th, I still have to make this

16   request to have a slight adjournment of both of those hearings.

17   The Monday morning Curcio hearing not only is complicated a

18   little bit because of Mr. Rimm's schedule and his need to meet

19   with the defendant in a meaningful way to discuss the Curcio

20   issues but also as Mr. Lacour mentioned the Kirkland & Ellis

21   firm is having a little bit of difficulty contacting banks at

22   issue.

23            THE COURT:  I would bet the ranch as they say they

24   will overcome that difficulty.

25            MR. KIRSHNER:  It would be our request nonetheless

GBN6ZARC

1    understanding the Court's position on this to have the Curcio

2    hearing on -- and we understand that the Curcio issues have to

3    be resolved before we can have the proceedings of the

4    suppression issue.  So we would ask that the Curcio hearing be

5    moved to Wednesday the 30th and then for a slight adjournment

6    of the suppression hearing or hearings depending on your

7    Honor's decision on that.

8              THE COURT:  Right.  I get it.

9              MR. KIRSHNER:  We consulted with the government and

10   they agree.

11             THE COURT:  I will take it under advisement as well.

12             MR. LOCKARD:  Your Honor, the government doesn't

13   really take a position on the scheduling issues.

14             I will take the podium.

15             The government doesn't necessarily take a substantive

16   position on the scheduling issues, though, we have been

17   preparing to have a suppression hearing on the 30th and we'll

18   still be prepared to do so if that date sticks.  We have no

19   objection to adjournment if that assists defense counsel and

20   conflict counsel in having meaningful conversations with the

21   defendant and accomplishing further tasks.  We have no

22   objection to that.

23             The issue that is important to us to from a scheduling

24   perspective is just a clarity of finality because we'll have

25   witnesses travel into the city for the hearing.  They are

GBN6ZARC

1   scheduled to fly in on Monday.

2              THE COURT:  For the suppression hearings?

3              MR. KIRSHNER:  For the suppression hearings.

4              If that date is going to move, then that is something

5   that we would like to know sooner rather than later so we can

6   make adjustments as necessary.

7              THE COURT:  My tentative thinking is I am going to try

8   to keep that November 30th date for the suppression hearings.

9   There may be some flexibility in the start of the Curcio

10  hearing.  Even if we do of course you appreciate who knows what

11  is going to come out of the Curcio hearing so that obviously

12  would impact Wednesday the 30th, but it is my intention to try

13  to hold onto that date.

14             MR. LOCKARD:  We understand and we'll make adjudgments

15  as necessary and we understand that the Court will take those

16  concerns subject to having to be sort of fluid in responding to

17  how things develop at hearings where you don't know the outcome

18  in advance.

19             The other issue I would like to address briefly -- we

20  can either address this this morning on the record or we can

21  put it in a letter later today which we had anticipated doing

22  prior to this conference being scheduled so now seems to be a

23  convenient opportunity to raise it -- is that there has been a

24  reference to whether there is going to be the one set of

25  motions addressed at the hearing or both sets of motions

GBN6ZARC

1    addressed at the hearing.  I know that the Court has the papers

2    on the *Franks* motion in front of it.  As set forth in the

3    government's opposition, we don't think that the defense has

4    satisfied its burdens showing entitlement to a *Franks* hearing.

5    That is the issue I wanted to address briefly because we also

6    have a deadline tomorrow to submit an affidavit, which we are

7    prepared to do tomorrow by noon if it is necessary.

8            THE COURT:  I would appreciate it if you could put

9    that on the record your rationale, and also if Mr. Kirshner or

10   anyone wants to address the issue.

11           MR. LOCKARD:  Certainly.  So the Court already has our

12   briefing.  I just wanted to raise it again because a *Franks*

13   hearing is a different animal both legally and pragmatically

14   from a typical suppression hearing so we wanted to address that

15   fact.  It is a different animal legally because there are two

16   burdens that the defense has to meet before showing their

17   entitlement to an evidentiary hearing.

18           Under *Franks* and its progeny here in the Second

19   Circuit, the first one being a legal issue, which is strictly

20   for the Court to determine, and that is whether the allegedly

21   omitted facts, since this is an omission *Franks* argument, not a

22   falsity *Franks* argument, that the allegedly omitted facts are

23   necessary to the probable cause determination.  In other words,

24   that the magistrate judge could not have issued the warrant if

25   the alleged omitted material had been included and that is a

GBN6ZARC

strictly legal question that there is no factual development
appropriate or warranted for it.  That is the first burden they
have to show.  We have explained why we don't think they can
meet that burden and why they haven't identified a sufficient
basis for the Court to make that determination.

The second burden the defense has to meet is to make a
substantial preliminary showing that the allegedly omitted
information was omitted intentionally or recklessly.  That is
where they intend to lead the Court.  For the same reason we
don't think they have made that substantial preliminary factual
showing.  It is consequential in that context because of the
nature and the factual inquiry, which makes it a slightly more
significant type of evidentiary hearing than an ordinary
suppression hearing because the issue of a *Franks* hearing is
did the affiant know about the information that was omitting,
did the affiant believe it was material and--

THE COURT:  You are saying affiant, a-f-f-i-a-n-t.

MR. LOCKARD:  -- and that the affidavit omitted that
information with the intent to mislead the magistrate, which
leaves you a pretty significant scope of the issue with respect
to the hearing.  The government if there were a hearing would
contend that the scope should be fairly limited; but when you
are talking about an agent's intent in understanding the
materiality and in a multi-year counterintelligence
investigation, there is a potential for significant

1    disagreement about the scope of that issue, which leads to

2    potential significant disagreement about the scope of things

3    like 3500 obligations, which would raise significant and

4    consequential issues that would have to be addressed probably

5    by way of prehearing motion practice.

6            So it is a significant step to have a hearing and that

7    is why we think in this case it is appropriate that the defense

8    be held to their dual burden before the hearing is ordered,

9    which is also why in the interest of disclosure and candor with

10   both the Court and defense counsel, it is the government's

11   expectation that even if there were a hearing on the matter, we

12   think it is unlikely that the affiant would offer testimony and

13   in fact we think that the factual issue that the government

14   would seek to put on in a *Franks* hearing would go to inevitable

15   discovery because we think that the materiality and the intent

16   to mislead elements are so lacking in the defense motion that

17   we're comfortable with the record as it is and instead offer an

18   alternative ground for the Court to uphold the warrant based on

19   the level of discovery.

20           We wanted to take the opportunity this morning to

21   again highlight those two issues, which are a consequence to

22   the government.

23           THE COURT:  Did you say at the outset that I had

24   scheduled you to make a filing tomorrow on Thanksgiving Day?

25           MR. LOCKARD:  That's correct, your Honor.

GBN6ZARC

1          THE COURT:  Well, even with my severe Thanksgiving

2     history as I described it before, that is an oversight.  If you

3     need to the next day, Friday, that will be a more appropriate

4     day for filing.

5          MR. LOCKARD:  We'll be prepared whatever date the

6     Court sets, whether it is tomorrow or Friday.  In light of that

7     deadline, we thought it important to revisit that issue, that

8     preliminary question and whether they have made their showing

9     of entitlement.

10          THE COURT:  Okay.

11          MR. LACOUR:  Thank you, your Honor.

12          I would like to address two points.  I will start with

13     the *Franks* hearing issue.  I think we did set forth

14     sufficiently in our opening motion and in reply as to why the

15     omitted facts were necessary for the establishment of probable

16     cause for the government.  This was a multi-year

17     counterintelligence investigation.  This warrant looking for

18     the right to access Mr. Zarrab's e-mails still relied if not

19     exclusively very heavily on this Turkish investigative report.

20     As we explained from multiple public sources, because we don't

21     know exactly what that agent had available to her but we can

22     presume that she at least was available -- or at least knew

23     what was being widely reported in the press, for example, The

24     New York time, The Economist.  We can presume she at least knew

25     about those facts.

GBN6ZARC

1          I think we have shown that there is very good reason

2     to doubt the veracity of that report, the motives behind it,

3     its authenticity.  It came out amidst of a very heated struggle

4     in Turkey and we would detail the political context there

5     repeatedly.  None of this was mentioned to magistrate judge.  I

6     think we would have seen more if they actually had more.

7          Moreover, had the magistrate judge been aware of the

8     very questionable providence of the centerpiece of the warrant

9     application, he would not have granted -- executed this

10    warrant.  Inevitable discovery we can discuss later.  It has

11    not been briefed up.  But as the government pointed out in

12    their response, there were many, many key e-mails in the

13    government's mind that were there that I don't think the

14    government would have otherwise had access to.  So we think we

15    more than established that legal point.

16         Second, we don't need to establish a substantial

17    showing that there was reckless behavior or intentional

18    omission on behalf of the agent.  We don't have to definitively

19    prove that in the papers for obvious reasons.  We cannot know

20    what was in her mind at the time, but we think based on the

21    publically available information mentioned it could not have

22    been an accidental omission on her part.

23         With regard to scheduling of the Curcio hearing, I

24    know that my partner Mr. Dinh could be available Monday morning

25    if we maintain the time we currently have, but later in the day

GBN6ZARC

```
 1    would be difficult.  Also, if we move the Curcio to Wednesday
 2    in place of the motion to suppress, then we would also be able
 3    to be available for that and that would also have the advantage
 4    of giving us an extra couple days to get in touch with
 5    pertinent contacts at the banks pertinent and get a written
 6    submission from them.  As stated earlier while we have reached
 7    out, a lot of people are gone for the holidays and we have not
 8    yet heard back from either of them.
 9            THE COURT:  Hold on one second.
10            (Pause)
11            THE COURT:  Just for my planning purposes everybody is
12    talking about Monday and Wednesday, what about Tuesday?  Are
13    you all available on Tuesday?
14            MR. LACOUR:  I know that Mr. Dinh will not be
15    available on Tuesday.  I believe he has a board meeting outside
16    of the D.C. area.
17            THE COURT:  Mr. Kirshner.
18            MR. KIRSHNER:  Your Honor, if it helps the Court for
19    scheduling purposes, I don't know if the motivation is to keep
20    the hearing date on the 30th because --
21            THE COURT:  Well, I want to be reasonable as well.  I
22    am trying to hear what the concerns are.
23            MR. KIRSHNER:  This is not a concern.  The hearing
24    date would potentially be a concern to the Court.  We have a
25    tight schedule between the hearing and the January 23rd trial
```

GBN6ZARC

```
 1   date.  We discussed the issue of adjournment of the trial date
 2   with the government.  They have consented to a reasonable
 3   adjournment.  We have not confirmed amongst counsel involved in
 4   the case whether we will be seeking an adjournment.  I can say
 5   we most likely will be.
 6                THE COURT:  Yes.
 7                MR. KIRSHNER:  We don't have a date yet that we will
 8   be asking the Court, but if that helps the Court's scheduling.
 9                THE COURT:  Thinking.
10                MR. KIRSHNER:  I can represent that we most likely
11   will be seeking an adjournment of the trial date.
12                THE COURT:  I gathered that from our last conference
13   and I tried to indicate that I would accommodate you.  Usually
14   it is the defense who wants to go sooner rather than later; but
15   when the defense wants to go later, I think that is their
16   prerogative certainly within reason.  I would accommodate a
17   reasonable adjournment of the trial date.  I will think about
18   these other dates also.
19                MR. LACOUR:  Thank you.
20                THE COURT:  Anybody else?
21                Yes, sir.
22                MR. LOCKARD:  Your Honor, just one final thing.  I
23   will just note for the record that we do intend to put in an
24   additional letter.  This is again connected with the currently
25   scheduled suppression hearing on the search of the defendant's
```

GBN6ZARC

1   phone and a portion of the postarrest questioning.  At the

2   discussion following the defendant's arraignment on the second

3   superseding indictment last week, there was some discussion

4   about defense's desire to call one of the two case agents who

5   was present during the arrest and we had a little bit of a

6   discussion about that potential request.  As we said at the

7   arraignment and as we repeat again today if the Court directs

8   that that agent testify, of course he will be available and

9   will testify.  We do intend to put in a short prehearing letter

10  just to clarify the government's position and the legal issues

11  with respect to the appropriateness of his testimony in light

12  of the affidavits of other witnesses.

13            THE COURT:  Can you do that today?

14            MR. LOCKARD:  We can do that today.

15            THE COURT:  Good.

16            Obviously defense will have the opportunity to respond

17  to that.

18            MR. LOCKARD:  We thought it worth writing up in

19  advance to the extent that it is helpful to the Court's

20  determination of the hearing.

21            THE COURT:  Yes.

22            MR. KIRSHNER:  May I have a moment to confer with

23  Mr. Zarrab?

24            THE COURT:  Sure.

25            (Pause)

GBN6ZARC

1          MR. KIRSHNER:  Your Honor, just to add a couple

2     things.  Regarding the Curcio hearing, Mr. Zarrab asked that

3     we --although, he has spoken to Mr. Lacour, myself and other

4     counsel, he has not consulted with Mr. Brafman or Mr. Dinh, who

5     are lead counsel on this case and obviously very essential to

6     the issue.  So that is another reason we would ask that the

7     Curcio be moved from Monday to a later date.

8          THE COURT:  To Wednesday is what you asked?

9          MR. KIRSHNER:  Well, yes, for scheduling purposes

10    everyone was planning on being here on Wednesday for one of the

11    suppression hearings anyway.

12          THE COURT:  I am trying and have tried throughout to

13    be accommodating, but at some point I can't fix a date for 14

14    lawyers.  Defense has got the biggest stake in this proceeding.

15    Having 14, somebody is going to be going to a board meeting or

16    here, at some point that is going to be very difficult to

17    accommodate all of those concerns.  I do respect Mr. Zarrab's

18    concern that he wants to talk to Mr. Brafman and Mr. Dinh.

19          MR. KIRSHNER:  Thank you, your Honor.  We appreciate

20    that you have been nothing but accommodating.  We really are

21    appreciative of that.

22          There is one more wrinkle in this.

23          THE COURT:  Yes.

24          MR. KIRSHNER:  If your Honor intends to proceed with

25    the suppression hearings on the 30th, we would ask that the

GBN6ZARC

1   phone suppression hearings go forward, but that if your Honor

2   grants a *Franks* hearing that that at least that one be pushed

3   back because there is a fair amount of complications going on.

4   We haven't received the affidavit.  We don't know if the

5   hearing is going forth.  If you want to proceed on the 30, we

6   ask it only be on the iPhone and we do a *Franks* hearing if it

7   is granted at a later date.

8          THE COURT:  That sounds reasonable.  Certainly the

9   Curcio will be moved to the Wednesday just hypothetically and I

10  don't know if it will be possible but to do some suppression

11  that same day or whatever.  It is inconceivable that you can

12  ever get to a *Franks* hearing in one day.  You have Curcio,

13  suppression and then *Franks*, that would be impossible.

14         MR. KIRSHNER:  Thank you, your Honor.

15         THE COURT:  Anybody else?

16         We'll try to set the dates, either confirm or

17  establish new dates in a little while.  We'll put out an order

18  today.

19         There is one other question I have.  Inevitable

20  discovery did you say was not fully briefed, Mr. Lockard?

21         MR. LOCKARD:  That is correct, your Honor.  So we

22  addressed the merits of the *Franks* motion in our opposition.

23  We noted in the brief that we would expect to prove inevitable

24  discovery if there were a hearing.

25         THE COURT:  You didn't make the case for it as you

GBN6ZARC

```
 1   would request to do if it came up?
 2           MR. LOCKARD:  That's correct.  We don't have the
 3   affidavit and the factual basis in front of the Court.  I can
 4   outline it very briefly.
 5           THE COURT:  No.  No. I am trying to figure out the
 6   mechanics if there were such a submission.
 7           MR. LOCKARD:  There had been suggestions of
 8   posthearing briefing, which we thought also might be an
 9   appropriate time to address the issue.  So we wanted to
10   highlight it and then address it appropriately if the hearing
11   were ordered.
12           THE COURT:  Does anybody else want to be heard?
13           Thank you very much.  Have a happy Thanksgiving.
14                              o0o
15
16
17
18
19
20
21
22
23
24
25
```