# BRAFMAN & ASSOCIATES, P.C.

### ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

———

ANDREA ZELLAN

JOSHUA D. KIRSHNER

JACOB KAPLAN

ALEX SPIRO

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

April 14, 2017

**VIA EMAIL: [RICHARD_BERMAN@NYSD.USCOURTS.GOV]**
**TO BE FILED UNDER SEAL**
***IN CAMERA***

Honorable Richard M. Berman
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

RE: <u>UNITED STATES V. REZA ZARRAB, *ET AL.*,</u>
**S3 15 Cr. 867 (RMB)**

Dear Judge Berman:

In response to your Honor's Order of April 5, 2017, we respectfully submit my Affidavit as well as Affidavits from Messrs. Giuliani and Mukasey. All materials being submitted **UNDER SEAL** and for ***IN CAMERA*** review.

Respectfully,

Benjamin Brafman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA       :

          :

          :              **AFFIDAVIT**

      -against-          :

          :

          :           Ind. No. S3 15 Cr. 867 (RMB)

REZA ZARRAB, *et al.*,       :

          :           **TO BE FILED UNDER SEAL**
          :              *IN CAMERA*

                Defendant.   :
-------------------------------------------------------------X

STATE OF NEW YORK   )
                    )   ss:
COUNTY OF NEW YORK )

     **BENJAMIN BRAFMAN** affirms the following under penalties of perjury:

     1.  I am an attorney duly admitted to the practice of law in the State of New York and to the United States District Court for the Southern District of New York.

     2.  I am the principal of Brafman & Associates, P.C. located in New York City. I represent the Defendant REZA ZARRAB in the above-captioned indictment and am fully familiar with the facts of this case.

     3.  This Affidavit is provided *ex parte* and under seal, in response to an Order of this Court dated, April 5, 2017, in which your Honor has requested that counsel provide certain information that relates to the representation of the defendant by Messrs. Rudolph Giuliani and Michael B. Mukasey and their respective law firms (Greenberg Traurig, LLP) and (Debevoise & Plimpton, LLP).

4. After conferring with Messrs. Giuliani and Mukasey pursuant to the Court's direction, I am authorized to provide the following information under seal and on an *ex parte* basis. For the convenience of your Honor, the information is being provided in response to Paragraph 3 (a) (b) (c) and (d) as set out on page 11 of the Court's Order and will be provided separately as to Mr. Giuliani and Mr. Mukasey, in their own Affidavits attached hereto as exhibits A and B that are also submitted under seal and on an *ex parte* basis.

5. A description of the "nature of the work and roles of Messrs. Giuliani and Mukasey" (3) (a) is provided to your Honor in their personal Affidavits, as are the answers to the Court's questions raised in paragraphs (3) (b) (c) and (d).

6. As Mr. Zarrab's principal attorney of record in this case, I represent to your Honor, as an Officer of the Court that both Messrs. Giuliani and Mukasey have kept me closely informed about their efforts on Mr. Zarrab's behalf and I have carefully and thoroughly advised Mr. Zarrab of the potential conflicts that may arise as a result of the issues raised by the Government when asking for a <u>Curcio</u> hearing on these matters.

7. I further represent to your Honor that Mr. Zarrab has assured me that he understands the nature of the potential conflicts raised by the Government and is prepared to formally waive those potential or actual conflicts when and if questioned by your Honor on April 24, 2017, the date set for the <u>Curcio</u> hearing.

8. Finally, I am advised by Mr. Zarrab that his legal fees are being paid by him personally, or at his direction, by members of his family.

WHEREFORE, the defendant Reza Zarrab respectfully requests that, after conducting a Curcio inquiry that he has consented to, the Court deny the Government's efforts to disqualify Messrs. Giuliani and Mukasey from further participation in this matter.

Dated: New York, New York
     April 13, 2017

Respectfully submitted,

**BRAFMAN & ASSOCIATES, PC**
*Attorneys for the Defendant Reza Zarrab*
767 3rd Avenue, 26th Fl.
New York, NY 10017
Tel: 212-750-7800
Fax: 212-750-3906
Bbrafman@braflaw.com

By: _____
    BENJAMIN BRAFMAN, Esq.
    BB2285

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                              Government,

                                                      §3 15 Cr. 867(RMB)

                         -v-

REZA ZARRAB, *et al.*,

                              Defendants.
------------------------------------------------------------x

## <u>AFFIDAVIT OF RUDOLPH W. GIULIANI</u>

Rudolph W. Giuliani being duly sworn, says:

On information and belief, including a review of law firm records, I do affirm:

1. I am a lawyer admitted to practice in the courts of the State of New York and several federal courts, including the U.S. District Court for the Southern District of New York, and am a Shareholder with Greenberg Traurig, LLP in that firm's New York office.

2. I make this affidavit in response to the Court's Decision & Order of April 5, 2017 (the "Decision"), directing Benjamin Brafman, Esq., defense counsel for Reza Zarrab in the captioned case, to provide inter alia four categories of information said to relate to Mr. Zarrab's engagement of me and my firm in this case. As reflected in the Decision, this information is sought in aid of a Curcio hearing to determine whether there is any conflict between the representation of Mr. Zarrab for which I have been engaged and past or current representation of any of eight banks or Turkey by my firm, Greenberg Traurig, LLP and if so whether any such conflict is waivable.

3. As is apparent from the information set forth in paragraph 4 below, there is no conflict of interest whatever between me or Greenberg Traurig, on the one hand, and Mr. Zarrab on the other, growing out of representation by Greenberg Traurig of one or more of the subject banks, or Turkey.

4. The four categories, as set forth in the Decision, and the corresponding facts, insofar as they relate to me and to Greenberg Traurig, are as follows:

   a. *Description of the nature of the work and roles Messrs. Giuliani & Mukasey have been retained to perform and have performed for Mr. Zarrab, including copies of the retainer agreements.*

Greenberg Traurig and I have been retained to provide advice and to consult, although not to appear in court, with respect to Mr. Zarrab's defense of the charges in this case. Those services have focused principally although not exclusively on an effort to determine whether this case can be resolved as part of some agreement between the United States and Turkey that will promote the national security interests of the United States and redound to the benefit of Mr. Zarrab. Attached as Exhibit A to Mr. Levy's affidavit is a copy of the retainer agreement between Greenberg Traurig and Mr. Zarrab. Those services have included and are anticipated to include further meetings or conversations ·with senior officials of the governments of the United States and Turkey. The meetings and conversations with Turkish officials have included a meeting with the President of Turkey. Both the Attorney General of the United States and the United States Attorney for the Southern District of New York were apprised on a confidential basis and in general terms of those meetings in advance. Prior to the meeting with the President of Turkey, we (Michael Mukasey, Larry Levy and me) discussed our role as attorneys in the case with, and were briefed by a representative of the United States Department of State in Turkey. Although that confidentiality has been breached, senior U.S. officials have remained receptive to pursuing the possibility of an agreement as set forth herein.

> b. *Description of the representations of "victim banks" by Greenberg Traurig (including by whom) and measures taken by these law firms to separate those representations from the representation of Mr. Zarrab.*

Based on a review of firm computer records, and conversations with Mr. Levy, I have determined that Greenberg Traurig has represented each of the named banks at various times in the past, and at present does work for all of them. See the affidavit of Laurence Levy for more detail regarding Greenberg Traurig's work with the subject banks. Of all these numerous and varied matters, none involves any issue in this case, nor can the outcome of this case have any impact on any interest of any client of Greenberg Traurig. Of the eight banks, I have not performed work for any of them in 2017. Laurence Levy and I are the only partners at Greenberg Traurig who have done work on the representation of Mr. Zarrab, neither of us is doing any work for any of the subject banks. Although it is obvious that there is no conflict, actual or potential, between Mr. Zarrab and any of these bank clients, neither Mr. Levy or I will do any work for any of the subject banks while we continue to represent Mr. Zarrab.

> c. *The identity of any persons or parties paying Mr. Zarrab's legal fees and expenses, if other than Mr. Zarrab (citation omitted).*

Mr. Zarrab paid his legal fees to date. I have been advised by co-counsel that Mr. Zarrab's accountant wired the funds on behalf of Mr. Zarrab.

5. As noted in the response set forth at paragraph 4(a) above, senior officials in both the U.S. government and the Turkish government remain receptive to pursuing

the possibility of an agreement that could promote the security of the United States and resolve the issues in this case. Indeed, one of those officials stated that out of necessity he has grown used to functioning in an atmosphere that includes inaccurate and ill-intentioned leaks. That receptiveness is hardly surprising when one considers that none of the transactions in which Mr. Zarrab is alleged to have participated involved weapons or nuclear technology, or any other contraband, but rather involved consumer goods, and that Turkey is situated in a part of the world strategically critical to the United States. However, even the best-intentioned officials can find their efforts compromised by leaked information and misinformation. The Court should treat most seriously any apparent effort to subvert an entirely lawful and not at all unprecedented attempt by Mr. Zarrab's lawyers to pursue possible assistance that may benefit the national interests of the United States, on a state-to-state basis, that can be achieved in this case.

Rudolph W. Giuliani

Sworn to before me this 14th day of April, 2017

Notary Public

NOTARY PUBLIC, STATE OF NEW YORK
EVAN J. PREMINGER
NO. 02PR6335025
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES 12/28/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                    Government,

                        -v-                          §3 15 Cr. 867(RMB)

REZA ZARRAB, *et al.*,

                                    Defendants.
------------------------------------------------------------x

## AFFIDAVIT OF LAURENCE LEVY

LAURENCE LEVY, being duly sworn, says:

On information and belief, including a review of law firm records, I do affirm:

1. I am a lawyer admitted to practice in the courts of the State of New York and several federal courts, including the U.S. District Court for the Southern District of New York, and am a Shareholder with Greenberg Truarig, LLP in that firm's New York office.

2. I make this affidavit in response to the Court's Decision & Order of April 5, 2017 (the "Decision"), directing Benjamin Brafman, Esq., defense counsel for Reza Zarrab in the captioned case, to provide inter alia four categories of information said to relate to Mr. Zarrab's engagement of Rudolph Giuliani and our and firm in this case. As reflected in the Decision, this information is sought in aid of a Curcio hearing to determine whether there is any conflict between the representation of Mr. Zarrab for which I have been engaged and past or current representation of any of eight banks and the Republic of Turkey by my firm, Greenberg Traurig, LLP and if so whether any such conflict is waivable.

3. I drafted the engagement letter to Mr. Zarrab on February 23rd (Annexed as Exhibit A) at which time I was under the impression that Marc Mukasey would work on the matter once the firm was engaged. On February 24th prior to initiating our representation and after I had sent the engagement to Mr. Zarrab for signature, Mr. Mukasey informed me that he would not be working on this matter. In fact, Marc Mukasey has never performed any legal work on this matter or discussed this matter with the assigned attorneys rather he has maintained a complete recusal from the matter.

4. Greenberg Traurig, LLP ("GT") is the attorney firm of record for JP Morgan Chase bank in a broad array of legal service. In particular GT represents JP Morgan Chase in litigation matters in both state and federal court, financial transactions, including lending, and general corporate matters. The lead relationship manager for the engagements is ▮▮▮▮▮▮ of GT's ▮▮▮▮▮▮▮▮

5. GT is the attorney of record for Deutsche Bank in a variety of litigation, corporate and compliance matters, in the United States and abroad. The lead relationship managers for the engagements are ▮▮▮▮▮▮ of the ▮▮▮▮▮▮ and ▮▮▮▮▮▮ of the ▮▮▮▮▮▮

6. GT is the attorney of record for UBS in a variety of litigation and regulatory matters. ██████████ of the ██████████████ is the lead relationship manager for the UBS engagement.

7. GT is the attorney of record for the Bank of America in a wide variety of litigation matters, regulatory matters and corporate matters in the United States and abroad. ███ ██████████ of the ██████████ is the lead relationship manager for the Bank of America engagement.

8. GT is the attorney of record for Standard Chartered Bank primarily for litigation matters and some corporate work. ██████████ of the ██████████ is the lead relationship manager for the Standard Chartered Bank engagement.

9. GT is the attorney of record for HSBC primarily in litigation matters and in some corporate transactional matters in the United States and abroad. In the United States ██████████ of the ██████████████ is the lead relationship manager and in ██████ the lead relationship manager is ██████████.

10. GT is the attorney of record for Wells Fargo in a wide variety of litigation matters, capital finance matters, corporate work and transactions. ██████████ of the ██████ ████ is the lead relationship manager for the Wells Fargo engagement.

11. GT is the attorney of record for Citibank in a variety of litigation matters and some corporate transactional work. ██████████ of the ██████████████ is the lead relationship manager for the Citibank engagement.

12. Mr. Zarrab paid his legal fees to date. I have been advised by co-counsel that Mr. Zarrab's accountant wired the funds on behalf of Mr. Zarrab.

13. Mr. Giuliani and I worked through Counsel's office in Greenberg Traurig to prevent us from reviewing information about any work any lawyers or staff in Greenberg Traurig performed for any of the subject banks or on behalf of Turkey. We subsequently created an ethical wall to ensure complete separation of the representation of Mr. Zarrab from the representation of the subject banks and the representation of Turkey. Neither Mr. Giuliani, nor I have been provided any non-public information regarding any of the subject banks or regarding Turkey from anyone at Greenberg Traurig relating to Mr. Zarrab's pending case.

Laurence Levy

Sworn to before me this 14th day of April, 2017

Notary Public

NOTARY PUBLIC, STATE OF NEW YORK
EVAN J. PREMINGER
NO. 02PR6335025
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES 12/28/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

UNITED STATES OF AMERICA,

               Government,

                               §3 15 Cr. 867(RMB)

               -v-

REZA ZARRAB, *et al.*,

               Defendants.

-------------------------------------------------------x

## **AFFIDAVIT OF ROBERT J. MANGAS**

ROBERT J. MANGAS, being duly sworn, deposes and says:

1. I am a lawyer admitted to practice in the District of Columbia and the State of Virginia, and am a Shareholder with Greenberg Truarig, LLP in that firm's Washington, D.C. office.

2. I make this affidavit in response to the Court's Decision & Order of April 5, 2017 (the "Decision"), directing Benjamin Brafman, Esq., defense counsel for Reza Zarrab in the captioned case, to provide *inter alia* four categories of information said to relate to Mr. Zarrab's engagement of my firm in this case. As reflected in the Decision, this information is sought in aid of a Curcio hearing to determine whether there is any conflict between the representation of Mr. Zarrab for which Mr. Giuliani has been engaged, and past or current representation of Turkey by my firm, Greenberg Traurig, LLP and if so whether any such conflict is waivable.

3. On July 11, 2014, Tim Hutchinson, Albert Wynn, Laurie McKay, Allison Schwartz, Killoran Long and I began working at Greenberg Traurig.

4. On August 12, 2014, I filed a Registration Statement (Annexed as Exhibit A) with the Department of Justice disclosing the representation of the Republic of Turkey by Greenberg Traurig. Also on August 12, 2014, Mr. Hutchinson, Mr. Wynn, Ms. McKay, Ms. Schwartz, and I filed short form registration statements with the Department of Justice (as required for individuals under the Foreign Agents Registration Act). A short form registration statement was filed for Ms. Long on October 12, 2015 when she was added to the representation. Greenberg Traurig also files a Supplemental Statement on a biannual basis with the Department of Justice in accordance with the Foreign Agents Registration Act, detailing all contacts with federal officials on behalf of any of its foreign clients.

5. Prior to joining Greenberg Traurig, each of the individuals named above and I were employed by Dickstein Shapiro LLP, where all but Ms. Long also served as Registered Foreign Agents representing the Republic of Turkey.

6. The representation of the Republic of Turkey referenced above involves interacting with Members of Congress and federal Executive Branch officials on issues of importance to U.S.-Turkish relations, arranging and attending meetings and other events involving federal officials on behalf of representatives of the Turkish government who travel to Washington, D.C., and monitoring and preparing brief analyses of developments in Congress and the Executive Branch on particular issues of interest to the Republic of Turkey, among other things.

7. At no time have Rudolph W. Giuliani, Laurence Levy, or any other Greenberg Traurig employees, except the aforementioned individuals been involved in the representation of the Republic of Turkey described above.

Robert J. Mangas

Sworn to before me this 14th day of April, 2017

Notary Public

JEAN JACKSON
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires May 31, 2019



OMB No. 1124-0006; Expires April 30, 2017

**U.S. Department of Justice**

Washington, DC 20530

## Exhibit A to Registration Statement
## Pursuant to the Foreign Agents Registration Act of 1938, as amended

INSTRUCTIONS. Furnish this exhibit for EACH foreign principal listed in an initial statement and for EACH additional foreign principal acquired subsequently. The filing of this document requires the payment of a filing fee as set forth in Rule (d)(1), 28 C.F.R. § 5.5(d)(1). Compliance is accomplished by filing an electronic Exhibit A form at http://www.fara.gov.

Privacy Act Statement. The filing of this document is required by the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 et seq., for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide this information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: http://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public in print and online at: http://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .49 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterespionage Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

| 1. Name and Address of Registrant | 2. Registration No. |
|---|---|
| Greenberg Traurig, LLP<br>2101 L Street, NW<br>Washington, DC 20037 | 5712 |

| 3. Name of Foreign Principal | 4. Principal Address of Foreign Principal |
|---|---|
| Republic of Turkey (through the Gephardt Group) | Embassy of the Republic of Turkey<br>2525 Massachusetts Ave, NW<br>Washington, DC 20008 |

5. Indicate whether your foreign principal is one of the following:

☒ Government of a foreign country[1]

☐ Foreign political party

☐ Foreign or domestic organization: If either, check one of the following:

  ☐ Partnership   ☐ Committee

  ☐ Corporation   ☐ Voluntary group

  ☐ Association   ☐ Other (specify) _____

☐ Individual-State nationality _____

6. If the foreign principal is a foreign government, state:
  a) Branch or agency represented by the registrant

  Ministry of Foreign Affairs, Republic of Turkey

  b) Name and title of official with whom registrant deals

  Serdar Kilic, The Ambassador of Turkey to the United States

7. If the foreign principal is a foreign political party, state:
  a) Principal address

  b) Name and title of official with whom registrant deals

  c) Principal aim

1 "Government of a foreign country," as defined in Section 1(e) of the Act, includes any person or group of persons exercising sovereign de facto or de jure political jurisdiction over any country, other than the United States, or over any part of such country, and includes any subdivision of any such group and any group or agency to which such sovereign de facto or de jure authority or functions are directly or indirectly delegated. Such term shall include any faction or body or insurgents within a country assuming to exercise governmental authority whether such faction or body of insurgents has or has not been recognized by the United States.

FORM NSD-3
Revised 03/14

8. If the foreign principal is not a foreign government or a foreign political party:

    a) State the nature of the business or activity of this foreign principal.

    b) Is this foreign principal:

| | |
|---|---|
| Supervised by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
| Owned by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
| Directed by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
| Controlled by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
| Financed by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
| Subsidized in part by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |

9. Explain fully all items answered "Yes" in Item 8(b). *(If additional space is needed, a full insert page must be used.)*

10. If the foreign principal is an organization and is not owned or controlled by a foreign government, foreign political party or other foreign principal, state who owns and controls it.

## EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this Exhibit A to the registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

| Date of Exhibit A | Name and Title | Signature | |
|---|---|---|---|
| August 12, 2014 | Robert Mangas, Shareholder | /s/ Robert Mangas | eSigned |

OMB No. 1124-0004; Expires April 30, 2017

| | |
|---|---|
| **U.S. Department of Justice** | **Exhibit B to Registration Statement** |
| Washington, DC 20530 | **Pursuant to the Foreign Agents Registration Act of 1938, as amended** |

INSTRUCTIONS. A registrant must furnish as an Exhibit B copies of each written agreement and the terms and conditions of each oral agreement with his foreign principal, including all modifications of such agreements, or, where no contract exists, a full statement of all the circumstances by reason of which the registrant is acting as an agent of a foreign principal. Compliance is accomplished by filing an electronic Exhibit B form at http://www.fara.gov.

Privacy Act Statement. The filing of this document is required for the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 et seq., for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide the information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: http://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public in print and online at: http://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .33 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterespionage Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

| 1. Name of Registrant | 2. Registration No. |
|---|---|
| Greenberg Traurig, LLP | 5712 |

3. Name of Foreign Principal

Republic of Turkey (through the Gephardt Group)

Check Appropriate Box:

4. ☒ The agreement between the registrant and the above-named foreign principal is a formal written contract. If this box is checked, attach a copy of the contract to this exhibit.

5. ☐ There is no formal written contract between the registrant and the foreign principal. The agreement with the above-named foreign principal has resulted from an exchange of correspondence. If this box is checked, attach a copy of all pertinent correspondence, including a copy of any initial proposal which has been adopted by reference in such correspondence.

6. ☐ The agreement or understanding between the registrant and the foreign principal is the result of neither a formal written contract nor an exchange of correspondence between the parties. If this box is checked, give a complete description below of the terms and conditions of the oral agreement or understanding, its duration, the fees and expenses, if any, to be received.

7. Describe fully the nature and method of performance of the above indicated agreement or understanding.

Registrant is a subcontractor of the Gephardt Group to perform services for the Republic of Turkey. There is no formal written contract between Registrant and the foreign principal. See attached engagement letter, which describes representation.

FORM NSD-4
Revised 03/14

8. Describe fully the activities the registrant engages in or proposes to engage in on behalf of the above foreign principal.

See attached engagement letter, which describes representation.

9. Will the activities on behalf of the above foreign principal include political activities as defined in Section 1(o) of the Act and in the footnote below? Yes ☒    No ☐

If yes, describe all such political activities indicating, among other things, the relations, interests or policies to be influenced together with the means to be employed to achieve this purpose.

See attached engagement letter, which describes representation.

## EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this Exhibit B to the registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

| Date of Exhibit B | Name and Title | Signature | |
|---|---|---|---|
| August 12, 2014 | Robert Mangas, Shareholder | /s/ Robert Mangas | eSigned |

Footnote: "Political activity," as defined in Section 1(o) of the Act, means any activity which the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party.



July 28, 2014

Robert Mangas, Esquire
Greenberg Traurig, LLP
2101 L Street, N.W.
Suite 1000
Washington, DC 20037

Dear Rob:

Gephardt Group Government Affairs, LLC ("Gephardt Government Affairs") has been engaged by the Government of the Republic of Turkey ("Turkey") to provide, as an independent contractor, lobbying and government relations services to Turkey, in accordance with the provisions of an agreement between Turkey and Gephardt Government Affairs ("Services Agreement."). An unexecuted copy of the Services Agreement, from which certain provisions relating to payments have been deleted, is attached as Appendix 1. The provisions of the Services Agreement are incorporated herein and made a part hereof.

With this agreement Gephardt Government Affairs is engaging Greenberg Traurig, LLP ("Greenberg") to provide, as a subcontractor to Gephardt Government Affairs, certain of the services that are to be provided by Gephardt Government Affairs to Turkey in accordance with the provisions of the Services Agreement. The services to be provided by Greenberg consist of the services identified and described in Appendix 2 and such other services as Gephardt Government Affairs and you may agree from time to time.

The term of Greenberg's engagement as a subcontractor is August 1, 2014 until December 31, 2014. The engagement may be terminated by Gephardt Government Affairs or by you at any time by notice delivered to the other 14 days in advance of the effective date of termination.

As compensation for the services rendered by Greenberg each month in the period of your engagement, Gephardt Government Affairs will pay you a monthly fee in the amount of $ 26,194.00. The amount of the monthly fee payable to you in or for the month in which the termination of the engagement occurs will be prorated on the basis of the number of days in that month prior to the effective date of termination.

Gephardt Government Affairs and Turkey, in accordance with the provisions of the Services Agreement, have agreed the amounts due as fees for services performed by Gephardt Government Affairs and by you as a subcontractor to Gephardt Government Affairs will be paid to Gephardt Government Affairs by Turkey in quarterly installments. The monthly fees due Greenberg as compensation for the services rendered in each month or portion thereof in each quarter in the period of your engagement will be paid to you by Gephardt Government Affairs not more than ten days after the receipt by Gephardt Government Affairs from Turkey of the

quarterly installment of the amount due as fees for services rendered by Gephardt Government Affairs and by you in that quarter.

Unless and except as Gephardt Government Affairs and Greenberg otherwise agree, all costs and expenses incurred by you in the performance of the services to be provided by you in the period of your engagement will be borne and paid by you.

The relationship between Gephardt Government Affairs and you will be that of independent contractor and not that of partners, joint venturers, principal and agent or otherwise. Without the prior consent of the other, neither will be authorized to bind or obligate the other or, except as provided herein and in the Services Agreement, to act for or on behalf of the other.

Greenberg has represented to Gephardt Government Affairs that Greenberg's engagement by Gephardt Government Affairs, and the performance of the services to be rendered by Greenberg as a subcontractor, do not and will not constitute a default or breach of the provisions of any agreement or contract between Greenberg and any other person or a violation of any fiduciary or other obligation or duty of Greenberg to any other person.

Greenberg agrees to comply with and to be bound by all of the provisions of the Services Agreement that are applicable to Greenberg as a subcontractor to Gephardt Government Affairs.

All notices, consents, and other communications by, to and between Gephardt Government Affairs and Greenberg hereunder will be in writing and will be deemed to have been given or delivered and received when personally delivered, or when delivered, and receipt confirmed, by a nationally recognized overnight courier service, when mailed by certified mail, postage prepaid and return receipt requested, or when transmitted, and receipt confirmed, by facsimile or electronic mail to Gephardt Government Affairs at 1101 K Street, N.W., Suite 310, Washington, D.C. 20005, Facsimile Number (202) 403-2048 or Email Address: tomodonnell@gephardtdc. com, Attention: Thomas J. O'Donnell, Managing Partner and to Greenberg c/o Robert Mangas, Esquire, Greenberg Traurig, LLP, 2101 L Street, Suite 1000, Washington DC 20037, or Email Address: MangasR@gtlaw.com or to either at such other address, facsimile number or email address as may be specified by notice to the other.

Neither Gephardt Government Affairs nor Greenberg may assign the agreements contained herein or any interest therein without the consent of the other.

This letter contains all of the agreements between Gephardt Government Affairs and Greenberg with respect to Greenberg's engagement as a subcontractor to Gephardt Government Affairs.

The invalidity or unenforceability of any provision of any of the agreements contained herein will not affect the validity or enforceability of any other provision.

These agreements will be performed in the District of Columbia and will be construed and enforced in accordance with the laws thereof than its rules with respect to conflicts of law.

The foregoing agreements and the rights and obligations of each of Gephardt Government Affairs and Greenberg thereunder will survive the termination of Greenberg's engagement as a

2

subcontractor to the Gephardt Group and will be binding upon and inure to the benefit of each of Gephardt Government Affairs and Greenberg and its respective affiliates, successors and assigns.

Please acknowledge your approval and acceptance of the foregoing agreements by executing and returning to me one of the enclosed copies of this letter. This letter, when executed by you and returned to me, will constitute a binding agreement between Gephardt Government Affairs and Greenberg that will be enforceable in accordance with its terms and that cannot be modified or amended or terminated except by written instrument executed by Gephardt Government Affairs and Greenberg.

Very truly yours,

Thomas J. O'Donnell
Managing Partner
Gephardt Group Government Affairs, LLC

Robert Mangas hereby acknowledges his approval and acceptance of the foregoing agreements between Greenberg Traurig, LLP and Gephardt Group Government Affairs, LLC.

Date: 7/28/14

By: _____
Robert Mangas

_____SHAREHOLDER_____ *Title*

3

Appendix 1

## SERVICES AGREEMENT

THIS AGREEMENT is made between the Government of the Republic of Turkey ("Turkey"), a foreign sovereign, and the Gephardt Group Government Affairs LLC, a Delaware Limited Liability Company ("Gephardt Group").

1.    Term:    This Agreement shall be for one year, commencing January 1, 2014 and expiring December 31, 2014. Its terms may be renewed for additional successive one-year periods upon the explicit written assent of both parties.

2.    Services:    The Gephardt Group agrees to provide lobbying and government relations services to Turkey, which shall consist of those services ordinarily and customarily provided in representing a foreign sovereign before the United States Congress and Executive Branch. These services shall include, but not be limited to:

   (a)    Proposing and pursuing passage of legislation and other U.S. government action that promotes Turkey's interests and provides a positive image of Turks, Turkey and the United States-Turkey relationship,

   (b)    Preserving and enlarging the Congressional Caucus on Turkey and Turkish Americans,

   (c)    Educating members of Congress and the Administration on issues of importance to Turkey,

   (d)    Promptly notifying Turkey of any action in Congress or the Executive Branch on issues of importance to Turkey,

   (e)    Preparing brief analyses of developments in Congress and the Executive Branch on particular issues of concern to Turkey,

   (f)    Identifying official gatherings and social events to which Embassy personnel ought, in the Gephardt Group's opinion, attend, including to the extent possible, obtaining the necessary invitations,

   (g)    Identifying and/or arranging speaking engagements locally and nationally for Embassy personnel or their appointed or suggested proxies in fora that will improve Turkey's image and advance its causes on Capitol Hill. Such would be, if so directed by Turkey, coordinated with Turkey's existing public relations service provider[s], and

   (h)    Maintaining and forging alliances with other interest groups whose goals are similar to or shared by Turkey.

1101 K Street, NW • Suite 310 • Washington, DC 20005 • Office: (202) 403-2150 • Fax: (202) 403-2048

3.     Personnel and Other Service Providers:

   (a)     Except as noted below, the Gephardt Group shall compose its own team to achieve the best possible results in providing the services described above. It will provide Turkey at the earliest possible date a list of personnel, including an indication of their areas of expertise and/or how they will be utilized. This list will be updated from time to time as required.

   (b)     The Gephardt Group will retain the services of Dickstein Shapiro LLP to serve as a subcontractor on this matter according to the following terms:

        i.     Term of Subcontract:   The subcontract shall commence on January 1, 2014 and expire December 31, 2014, subject to subsequent renewal upon the mutual assent of the parties.

        ii.    Fees for Subcontractor:  Dickstein Shapiro LLP shall be paid a monthly fee of $_____ for the term.   The fees of the subcontractor shall be borne by Turkey and provided for in the fees remitted to the Gephardt Group (clause 4 below).   The Gephardt Group is responsible for disbursing the fees to Dickstein Shapiro LLP on a regular basis.

        iii.   It is understood that Dickstein Shapiro LLP shall have the same obligations as the Gephardt Group in this Agreement and that the Gephardt Group and Dickstein Shapiro LLP have pledged to work together amicably.

   (c)     The Gephardt Group will retain the services of Brian Forni to serve as a subcontractor on this matter according to the following terms:

        i.     Term of Subcontract:   The subcontract shall commence on January 1, 2014 and expire December 31, 2014, subject to subsequent renewal upon the mutual assent of the parties.

        ii.    Fees for Subcontractor:  Brian Forni shall be paid a monthly fee of $_____ for the term.  The fees of the subcontractor shall be borne by Turkey and provided for in the fees remitted to the Gephardt Group (clause 4 below).   The Gephardt Group is responsible for disbursing the fees to Brian Forni on a regular basis.

        iii.   It is understood that Brian Forni shall have the same obligations as the Gephardt Group in this Agreement and that the Gephardt Group and Brian Forni have pledged to work together amicably.

   (d)     The Gephardt Group will retain the services of Lydia Borland to serve as a subcontractor on this matter according to the following terms:

     i. Term of Subcontract: The subcontract shall commence on January 1, 2014 and expire December 31, 2014, subject to subsequent renewal upon the mutual assent of the parties.

     ii. Fees for Subcontractor: Lydia Borland shall be paid a monthly fee of $_____ for the term. The fees of the subcontractor shall be borne by Turkey and provided for in the fees remitted to the Gephardt Group (clause 4 below). The Gephardt Group is responsible for disbursing the fees to Lydia Borland on a regular basis.

     iii. It is understood that Lydia Borland shall have the same obligations as the Gephardt Group in this Agreement and that the Gephardt Group and Lydia Borland have pledged to work together amicably.

(e) The Gephardt Group may retain the services of additional subcontractors and consultants as deemed necessary to assist the firm. Such additional subcontractors and consultants may be retained and terminated at the Gephardt Group's discretion. The Gephardt Group shall be solely responsible for compensating any such additional subcontractors and consultants.

(f) Should for any reason Turkey request that the Gephardt Group discontinue the services of any subcontractor named in this Agreement, the Gephardt Group shall immediately terminate the relevant subcontract, applying the same terms described in Item 6 below.

(g) The Gephardt Group agrees to share information and work amicably with Turkey's other service providers as identified by the Turkish Embassy.

4. Fees: Turkey agrees to pay the Gephardt Group a total of $_____ in US dollars for the services described in this Agreement to be performed by the Gephardt Group, the subcontractors listed above, and any additional subcontractors that it may retain. A monthly payment shall be due at the beginning of each month or on any other schedule agreed to by the parties.

5. Additional Costs and Expenses: Should the Gephardt Group incur extraordinary costs and expenses on Turkey's behalf that are not otherwise contemplated in the fees described above, Turkey shall reimburse these costs provided that Turkey gives explicit advance approval.

6. Termination:

(a) This Agreement shall terminate upon its natural expiration if not renewed.

(b) Either party may terminate this Agreement at any time prior to its natural expiration subject to fourteen (14) days advance written notice. In this

3

event, Turkey shall pay Gephardt Group its pro-rata share of earned fees apportioned on a daily basis through the end of the notice period.

(c)     Should this Agreement terminate prior to its natural expiration, any fees paid to the Gephardt Group by Turkey that exceed the pro-rata share of earned fees apportioned on a daily basis up to the date of termination shall be refunded by the Gephardt Group to Turkey.

7.     Monthly Reporting and Quarterly Performance Assessment:     The Gephardt Group shall provide monthly a written report to Turkey succinctly describing its work on Turkey's behalf. Such reports need not include calculations of the time spent by the individual members of the Gephardt Group team. Further, every three months, or as often as Turkey may desire, the Gephardt Group shall present to Turkey a written assessment of its performance during the preceding period. If, upon reviewing the assessment, Turkey is not satisfied with the Gephardt Group's performance, Turkey may, at its sole discretion, terminate this Agreement according to the terms stated herein.

8.     Privileged Information:     The Gephardt Group will use all permissible efforts to protect privileged communications or other confidential information developed by it or provided to it by Turkey during the term of this Agreement. This obligation shall survive the termination of this Agreement and any renewals for a period of not less than two years. Upon the termination of this Agreement and any renewals Turkey may request from the Gephardt Group the return of any documents or other information provided by Turkey.

9.     Registration and Disclosure: The Gephardt Group and any subcontractors it may employ shall separately and individually comply with any and all restrictions and requirements, including filing and other disclosure, of the Foreign Agents Registration Act, the Lobbying Disclosure Act, the Ethics Reform Act of 1989, the Foreign Corrupt Practices Act, the Honest Leadership and Open Government Act, and other applicable laws and regulations of the United States and the District of Columbia.

11.     Conflicts:     Turkey acknowledges Gephardt Group's breadth of practice, which give rise to the potential that it may represent clients in unrelated matters whose interests are contrary to Turkey's. Nonetheless, even the appearance of a conflict could render unproductive the relationship contemplated by this Agreement. Therefore, the Gephardt Group shall endeavor not only to avoid actual conflicts, but the appearance of conflicts as well. To that end, the Gephardt Group shall comply with all applicable provisions of the District of Columbia Bar Code of Professional Conduct. It shall also immediately assess whether it represents any clients whose interests are contrary to Turkey. If so, then it shall inform Turkey and then Turkey and the Gephardt Group shall work together to determine whether and how to resolve any apparent or actual conflict. Only on a case-by-case basis will Turkey acknowledge that a concurrent representation in an unrelated matter is appropriate. In order to assist in the process of identifying potential conflicts, the Gephardt Group shall consult with the Turkish Embassy's legal counsel in identifying those issues, which, if addressed in other client matters, may present a conflict.

4

12.   Choice of Law:     This Agreement shall be governed by, and construed in accordance with, the laws of the Republic of Turkey.  The Turkish Republic courts located in Ankara, Turkey shall be the venue for resolving any dispute related to the interpretation and application of this Agreement that cannot otherwise be settled amicably by the parties.

13.   Power to Bind:     Absent the express written consent of Turkey, neither the Gephardt Group nor its consultants and subcontractors have authority to bind Turkey in any manner whatsoever.

**FOR THE GOVERNMENT OF THE**
**REPUBLIC OF TURKEY**

By:   H.E. Namik Tan                                    Date
      Turkish Ambassador to the United States

**FOR GEPHARDT GROUP GOVERNMENT AFFAIRS LLC**

By:   Thomas O'Donnell                                  Date
      Managing Partner

5

<u>**Appendix 2 – Services to be Provided by Greenberg Traurig LLP**</u>
As a Subcontractor to
Gephardt Group Government Affairs ("GGA") in its
Representation of the Government of Turkey
July 28, 2014

For the duration of the contract period, the subcontractor agrees to perform the following services at the direction of and in coordination with the Embassy of Turkey ("Embassy") and GGA (Team Leader):

1. Participate in weekly strategic planning sessions with GGA, other subcontractors and the Embassy to develop and fine tune an advocacy plan for the Executive and Legislative Branches in support of the Government of Turkey.

2. Carry out assignments, as directed, to educate and reeducate elected and appointed policymakers and opinion leaders about the Republic of Turkey, its strong friendship and continued support of United States diplomatic, foreign policy and military efforts, and the important strategic bilateral relationship between the United States and Turkey.

3. Solicit additional membership participation in the Congressional Caucus on Turkey.

4. Gather information about legislative activities and oversight hearings in the House and Senate and report back regularly to the Embassy through Team Leader.

5. Identify legislators and opportunities for positive congressional activities in support of Turkey's strategic relationship.

6. Develop and utilize contacts at the State and Defense Departments, and the National Security Council to convey the seriousness of the genocide issue and the potential threat it poses to the U.S./Turkey relationship.

7. Propose and participate in events at the Embassy and other venues, as directed, in support of the advocacy plan.

8. Work with the Embassy's public relations team to identify opportunities for participation by the Ambassador and Embassy staff in conferences, speaking engagements, policy discussions, and other events to project Turkey's image and interests in Washington, DC.

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

UNITED STATES OF AMERICA,              :
                                       :
                    Government,        :
                                       :
                                       :
          -v-                          :    S3 15 Cr. 867 (RMB)
                                       :
REZA ZARRAB, *et al.*,                 :
                                       :
                    Defendants.        :

------------------------------------------------------------------- x

## <u>AFFIDAVIT OF MICHAEL B. MUKASEY</u>

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK  )

Michael B. Mukasey, being duly sworn, says:

    1.  I am a lawyer admitted to practice in the courts of the State of New York and several federal courts, including the U.S. District Court for the Southern District of New York, and am of counsel to Debevoise & Plimpton ("Debevoise") in that firm's New York office.

    2.  I make this affidavit in response to the Court's Decision & Order of April 5, 2017 (the "Decision"), directing Benjamin Brafman, Esq., defense counsel for Reza Zarrab in the captioned case, to provide <u>inter alia</u> four categories of information, three of which relate to Mr. Zarrab's engagement of me and my firm in this case. As reflected in the Decision, this information is sought in aid of a <u>Curcio</u> hearing to determine whether

there is any conflict between the representation of Mr. Zarrab for which I have been

engaged, and past or current representation of any of eight banks by my firm, Debevoise

& Plimpton, and if so whether any such conflict is waivable.

3. As is apparent from the information set forth in paragraph 4 below, there is no

conflict of interest whatever between me or Debevoise on the one hand, and Mr. Zarrab

on the other, growing out of representation by Debevoise of one or more of the subject

banks.

4. The four categories, as set forth in the Decision, and the corresponding facts,

insofar as they relate to me and to Debevoise, are as follows:

> a. *Description of the nature of the work and roles Messrs. Giuliani and*
> *Mukasey have been retained to perform and have performed for Mr. Zarrab,*
> *including copies of the retainer agreements.*

Debevoise and I have been retained to provide advice and to consult, although not

to appear in court, with respect to Mr. Zarrab's defense of the charges in this case. Those

services have focused principally although not exclusively on an effort to determine

whether this case can be resolved as part of some agreement between the United States

and Turkey that will promote the national security interests of the United States and

redound to the benefit of Mr. Zarrab. Attached as Exhibit A to this affidavit is a copy of

the retainer agreement between Debevoise and Mr. Zarrab. Those services have included,

and are anticipated to include further, meetings or conversations with senior officials of

the governments of the United States and Turkey. The meetings and conversations with

Turkish officials have included a meeting with the president of Turkey. Immediately

before that meeting and in preparation for it, Rudolph W. Giuliani and I were briefed by a State Department official. Both the Attorney General of the United States and, on information and belief, the United States Attorney for the Southern District of New York, have been apprised on a confidential basis and in general terms of those meetings and conversations. Although that confidentiality has been breached, senior U.S. officials have remained receptive to pursuing the possibility of an agreement as set forth above.

> b. *Description of the representations of "victim banks" by Greenberg Traurig and Debevoise & Plimpton (including by whom) and measures taken by these law firms to separate those representations from the representation of Mr. Zarrab.*

Based on a review of firm computer records, and conversations with certain of the partners involved in the representations in question, I have determined that Debevoise has represented each of the named banks at various times in the past, and at present does work for all except Wells Fargo. As to HSBC, although certain matters remain open, no time has been billed in 2016 or 2017. Several practice groups at the firm have performed a variety of corporate and litigation work for these clients. On the corporate side, this includes work by practice groups specializing in structured finance, investment management, capital markets, tax, trusts and estates, and mergers and acquisitions. With respect to litigation, Debevoise has been retained most often to represent a bank in connection with federal regulatory or other investigations, as well as state regulatory investigations and proceedings. Of all these numerous and varied matters, none involves any issue in this case, nor can the outcome of this case have any impact on any interest of any client of Debevoise. Of the eight banks, I have performed work for only one – JP

3

Morgan Chase – and that work ceased more than two years ago. I am the only partner at Debevoise who has done work on the representation of Mr. Zarrab, and the associate who has begun to work on this matter is not doing any work for any of these banks. In addition, when this matter was opened, Debevoise put in place an information screen such that only people working on the matter – lawyers and support personnel with functional roles – have access to the documents stored under the relevant matter number. Although it is obvious that there is no conflict, actual or potential, between Mr. Zarrab and any of these bank clients, neither I nor the associate working with me on this case will do any work for any of the subject banks while we continue to represent Mr. Zarrab, nor will any other Debevoise lawyer do work for any such bank while working on this case.

> c. *Description of the agency relationship (including when it began) between Greenberg Traurig and the Republic of Turkey, including any involvement by Mr. Giuliani in such work, and a copy of the agency and retainer agreements.*

This item is not relevant to me or to Debevoise.

> d. *The identity of any persons or parties paying Mr. Zarrab's legal fees and expenses, if other than Mr. Zarrab* (citation omitted).

There is no person or party other than Mr. Zarrab paying Mr. Zarrab's legal fees and expenses.

5. As noted in the response set forth at paragraph 4(a) above, senior officials in both the U.S. government and the Turkish government remain receptive to pursuing the possibility of an agreement that could promote the security of the United States and

resolve the issues in this case. Indeed, one of those officials stated that out of necessity he has grown used to functioning in an atmosphere that includes inaccurate and ill-intentioned leaks. That receptiveness is hardly surprising when one considers that none of the transactions in which Mr. Zarrab is alleged to have participated involved weapons or nuclear technology, or any other contraband, but rather involved consumer goods, and that Turkey is situated in a part of the world strategically critical to the United States. However, even the best intentioned officials can find their efforts compromised by leaked information and misinformation. The Court should treat most seriously any apparent effort to subvert an entirely lawful and not at all unprecedented attempt by Mr. Zarrab's lawyers to pursue a state-to-state resolution of this case.

Michael B. Mukasey

Sworn to before me this 13th day

of April, 2017

Notary Public

SUSAN BANGE AVRAM
NOTARY PUBLIC, State of New York
No. 30-4700514
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires July 31, 20 17