*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 22, 2017

**BY ECF**
Honorable Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1650
New York, New York 10007

    Re:    <u>United States</u> v. <u>Reza Zarrab</u>,
              **S3 15 Cr. 867 (RMB)**

Dear Judge Berman:

      Pursuant to the Court's Order at the May 11, 2017 conference (the "May 11 Conference"), the Government writes to submit additional information concerning certain of the questions posed by the Court in its May 1, 2017 Order (the "May 1 Order"). A copy of the transcript of the May 11 Conference is attached hereto as Exhibit A for the convenience of the Court.

      *First*, at the May 11 Conference, the Court directed the parties to submit additional information, including legal authorities, concerning whether "Greenberg Traurig's representation of both Mr. Zarrab and the Republic of Turkey is an actual conflict" and further whether any conflict is waivable. (*See* May 11 Conference Tr. at 2-3). Based on the information available to the Government at this time, Greenberg Traurig's concurrent representation of Zarrab and the Republic of Turkey presents at the very least a potential conflict. *See United States* v. *Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998) ("a potential conflict exists if the interests of the defendants may place the attorney under inconsistent duties at some time in the future"). For example, Zarrab's interest and the Republic of Turkey's interest in a public trial (or in avoiding a public trial) may diverge at some point. If that were the case, then Mr. Giuliani would face "inconsistent duties" with respect to Zarrab and the Republic of Turkey, which could manifest themselves during Mr. Giuliani's efforts to negotiate a disposition of this matter. Without more information about the particular interests of the Republic of Turkey in this prosecution, however, the Government cannot assess at this time whether Zarrab's interests are so divergent as to create an actual conflict. *See United States* v. *Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material fact or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client" (internal quotation marks and citations omitted)). Regardless, whether the conflict is viewed as potential or actual, it triggers the Court's obligation to conduct an inquiry and

determine the appropriate course forward. *Id.* at 119-20. In this case, because the information available to the Government does not suggest that any difference between Zarrab's interests and the Republic of Turkey's interests is such that "no rational defendant" would wish to continue to retain Mr. Giuliani, the Government believes that the conflict can be waived through a thorough allocation of the defendant by the Court. *See United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994) (unwaivable conflicts limited to situations where "no rational defendant would knowingly and intelligently desire the conflicted attorney's representation").

With respect to the Court's related question regarding the presence of conflict-free counsel at negotiations with the Executive Branch or the Republic of Turkey, the Government respectfully submits that, while the defendant is constitutionally entitled to conflict-free counsel at every significant proceeding, the law favors affording a defendant their choice of counsel, with few exceptions, such as where an unwaivable conflict exists. The Court and the Government are obligated to ensure only that the defendant is aware of the potential or actual conflict, as well as aware of his right to conflict-free counsel, and nevertheless waives that right to conflict-free counsel. Accordingly, the Court need only evaluate whether the defendant understands the potential conflict, and knowingly and intentionally waives that conflict. The Government submits that Zarrab should be questioned about, and should explicitly waive any challenge based on, the possibility that he will not be represented by conflict-free counsel at any negotiations with United States government officials outside of the United States Attorney's Office for the Southern District of New York ("USAO-SDNY"). Accordingly, the Government respectfully requests that the Court ask Zarrab the following additional questions at the next *Curcio* hearing:

- Do you understand that if and when Mr. Giuliani negotiates with U.S. government officials about your case, he also may be influenced by his firm's, Greenberg Traurig's, representation of the Republic of Turkey?

- In particular, do you understand that if that occurs, then the only lawyer representing you during those negotiations may have inconsistent obligations to you and the Republic of Turkey?

- Do you further understand that during those negotiations, that lawyer, Mr. Giuliani, may not be able to negotiate in a manner that harms or is to the detriment of the Republic of Turkey?

- Indeed, do you understand that Mr. Giuliani may be required or may decide to place the interests of the Government of Turkey before your interests in this matter?

*Second*, at the May 11 Conference, the Court also asked for additional information regarding "who is Greenberg Traurig's client when Mr. Giuliani meets with Turkish officials or United States officials to discuss Mr. Zarrab's case, Turkey or Mr. Zarrab?" (*See id*. at 3). The Court also asked for further detail as to whether "such discussions [can] be privileged, or is any privilege waived." (*See id*.).

Mr. Giuliani's communications with Turkish officials or U.S government officials cannot be, based on the information available to the Government presently, privileged as either attorney-client communications or attorney work product. With respect to U.S. officials, they are, apparently, counter-parties in the negotiations with Mr. Giuliani, not his clients seeking legal advice, and thus, there cannot be any privilege covering their communications. *See generally United States* v. *Meija*, 655 F.3d 126, 132 (2d Cir. 2011) (attorney-client privilege requires, among other things, an attorney-client relationship and a request for legal advice). Similarly, the attorney work-product doctrine would not shield Mr. Giuliani's discussions with U.S. officials because those conversations are not in furtherance of formulating any litigation strategy – they are simply negotiations to try to secure a favorable disposition for Zarrab. *Cf. Bank of America N.A.* v. *Terra Nova Ins. Co.*, 212 F.R.D. 166, 172 (S.D.N.Y. 2002) ("When materials are disclosed to a governmental authority to forestall prosecution or to obtain lenient treatment, the purpose of such a disclosure is 'foreign to the objectives underlying the work-product doctrine.'") (quoting *Westinghouse Elec. Corp.* v. *Republic of Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991)).

For the same reasons, Mr. Giuliani's communications with Turkish officials concerning this matter are not privileged. As described to the Government and the Court, Greenberg Traurig's relationship with Turkey is not an attorney-client relationship. Rather, the relationship between Greenberg Traurig and the Republic of Turkey is a contractual one: Turkey has entered into a "Services Agreement" with the company, Gephardt Group Government Affairs LLC (the "Gephardt Group"), which has in turn sub-contracted out some of those duties to Greenberg Traurig through another contract (the "Gephardt-Greenberg Agreement"). Greenberg Traurig has agreed to be bound by the terms of the Services Agreement. (*See* Gephardt-Greenberg Agreement, attached hereto as Exhibit B). The Gephardt-Greenberg Agreement and its appendices set forth a number of services that the nation can expect to receive under the contract, which are intended to enhance Turkey's image and its interests. As a result, Greenberg Traurig is contractually bound not to take steps that would harm Turkey's image or interests. (*See* Exhibit B, Appendix 2). This relationship obliges Mr. Giuliani to, as noted above, protect Turkey's confidential information and to act in its best interest – an obligation that may result in "inconsistent duties" with his representation of Zarrab – but it is not an attorney-client relationship for the purpose of providing legal advice.

In the absence of an attorney-client relationship, there cannot be an attorney-client privilege. *See generally Meija*, 655 F.3d at 132. Moreover, although the defense contended at the May 11 Conference that conversations between Mr. Giuliani and Turkish officials could be shielded as attorney work-product, that doctrine has no application here. "The work-product doctrine . . . is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *See United States* v. *Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998). But in this case, the defense has expressly disclaimed any role for Mr. Giuliani in devising legal theories or strategies with respect to this action. Instead, the defense has repeatedly described Mr. Giuliani's role as seeking a "diplomatic" resolution between the United States and Turkey that would involve a disposition of this case. Turkey's assessment of its diplomatic relations with other nations, including the United States, presumably occurs regularly and regardless of the existence of any one litigation. *Cf. Wultz* v. *Bank of China, Ltd.*, 304 F.R.D. 384, 396-97 (S.D.N.Y. 2015) (no work product protection despite anticipated litigation for communications concerning illegal financial

transactions because bank would have conducted underlying investigation even had it not known of potential litigation); *Proctor & Gamble Co.* v. *Ultreo, Inc.*, 574 F. Supp. 2d 334, 338 (S.D.N.Y. 2008) (scientific studies not protected as attorney work-product despite anticipated litigation because studies would have been conducted regardless as part of party's business).

As the Court noted, however, Mr. Giuliani's simultaneous representation of the Republic of Turkey and Zarrab in these negotiations does potentially implicate privileges held by Zarrab. "[I]t is vital to a claim of privilege that the communications between client and attorney were made in confidence and have been maintained in confidence." *In re Horowitz*, 482 F.2d 72, 81–82 (2d Cir. 1973). A client's failure to maintain that confidence can lead to waiver of the privilege. *See Meija*, 655 F.3d at 132-33. While the Government is not privy to the discussions between Mr. Giuliani and any Turkish officials or any United States government officials outside of the USAO-SDNY, to the extent they involve the disclosure of material that arguably had been protected by the attorney-client privilege or the attorney work-product doctrine, Zarrab's disclosure of such information necessarily would waive the attorney-client privilege. With respect to the attorney work-product doctrine, the disclosure would similarly waive that privilege with respect to any disclosures to U.S. government officials, and would likely do so with respect to disclosures to Turkish officials as well. The defense cannot have it both ways – they cannot claim on the one hand that the Court should not monitor Mr. Giuliani's work in this matter because it is not work as an attorney on the matter before the Court, while on the other hand invoking protections designed to protect the development of legal strategy. In view of the foregoing, the Government respectfully submits that the Court should also ask the following questions at the next *Curcio* proceeding:

- Do you understand that if you authorize Mr. Giuliani or any of your other attorneys to disclose communications between you and your attorneys to any third party, including U.S. or Turkish government officials, that could lead to the waiver of your attorney-client and attorney work-product privileges?

- And do you also understand that if you do waive your attorney-client and attorney work-product privileges, then your communications with your lawyers could be disclosed to third parties, including the Government, which could seek to use them against you?

*Third*, at the May 11 Conference, the Court asked for further information from the parties as to whether "Messrs. Giuliani or Mukasey [may] participate in or take positions adverse to Mr. Zarrab in negotiations between the United States and Turkey." (*See* May 11 Conference Tr. at 3). The Court also noted that, in the *Curcio* questions proposed by the parties, Zarrab was asked whether he understood that Greenberg Traurig attorneys could not negotiate in a manner that was detrimental to Turkey. (*See id.* at 4).

As noted above, Zarrab is entitled to counsel that negotiates a disposition of this case with his best interest in mind. *See Kliti*, 156 F.3d at 154 ("The danger of a joint representation 'is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process.'") (quoting *Holloway* v. *Arkansas*, 435 U.S. 475, 490 (1978)). That said, this is not an absolute right, and it is one that

Zarrab himself is entitled to waive, so long as he does so with full knowledge of the potential impact of the potential conflict and how it could adversely impact his interests.

As the Court correctly noted at the May 11 Conference, at least one of Zarrab's attorneys, Mr. Giuliani, is employed by a law firm that has a contractual relationship with the Republic of Turkey, with whatever fiduciary duties may be inherent in that relationship. Thus, Mr. Giuliani must avoid breaching his law firm's contract with Turkey by acting in a manner that would harm Turkey's interests. Therefore, the record should be clear that Zarrab is aware of this potential limitation on one of two attorneys charged with negotiating a "diplomatic" solution on his behalf. Accordingly, the Government respectfully submits that the Court should also ask Zarrab at the next *Curcio* proceeding the following questions:

- Do you understand that Mr. Giuliani has a duty to negotiate a resolution of this case that is in your best interest?

- Do you understand that Mr. Giuliani's law firm, Greenberg Traurig, also has a duty to the Republic of Turkey during any negotiations on your behalf to refrain from acting a way that may harm Turkey's interests or image?

- Do you understand that, as a result, Mr. Giuliani may not be able to negotiate a resolution of your case in a manner that would contrary to Turkey's interest?

Respectfully submitted,

JOON H. KIM
Acting United States Attorney for the
Southern District of New York

By: _____/s/_____
Michael D. Lockard
Sidhardha Kamaraju
David W. Denton, Jr.
  Assistant United States Attorneys
Dean C. Sovolos
  Special Assistant United States Attorney
(212) 637-2193/6523/2744/2213

cc: All Counsel (by ECF)