**EXHIBIT B**

Received by NSD/FARA Registration Unit   08/12/2014   4:50:09 PM



July 28, 2014

Robert Mangas, Esquire
Greenberg Traurig, LLP
2101 L Street, N.W.
Suite 1000
Washington, DC 20037

Dear Rob:

Gephardt Group Government Affairs, LLC ("Gephardt Government Affairs") has been engaged by the Government of the Republic of Turkey ("Turkey") to provide, as an independent contractor, lobbying and government relations services to Turkey, in accordance with the provisions of an agreement between Turkey and Gephardt Government Affairs ("Services Agreement."). An unexecuted copy of the Services Agreement, from which certain provisions relating to payments have been deleted, is attached as Appendix 1. The provisions of the Services Agreement are incorporated herein and made a part hereof.

With this agreement Gephardt Government Affairs is engaging Greenberg Traurig, LLP ("Greenberg") to provide, as a subcontractor to Gephardt Government Affairs, certain of the services that are to be provided by Gephardt Government Affairs to Turkey in accordance with the provisions of the Services Agreement. The services to be provided by Greenberg consist of the services identified and described in Appendix 2 and such other services as Gephardt Government Affairs and you may agree from time to time.

The term of Greenberg's engagement as a subcontractor is August 1, 2014 until December 31, 2014. The engagement may be terminated by Gephardt Government Affairs or by you at any time by notice delivered to the other 14 days in advance of the effective date of termination.

As compensation for the services rendered by Greenberg each month in the period of your engagement, Gephardt Government Affairs will pay you a monthly fee in the amount of $ 26,194.00. The amount of the monthly fee payable to you in or for the month in which the termination of the engagement occurs will be prorated on the basis of the number of days in that month prior to the effective date of termination.

Gephardt Government Affairs and Turkey, in accordance with the provisions of the Services Agreement, have agreed the amounts due as fees for services performed by Gephardt Government Affairs and by you as a subcontractor to Gephardt Government Affairs will be paid to Gephardt Government Affairs by Turkey in quarterly installments. The monthly fees due Greenberg as compensation for the services rendered in each month or portion thereof in each quarter in the period of your engagement will be paid to you by Gephardt Government Affairs not more than ten days after the receipt by Gephardt Government Affairs from Turkey of the

Received by NSD/FARA Registration Unit   08/12/2014   4:50:09 PM

Received by NSD/FARA Registration Unit 08/12/2014 4:50:09 PM

quarterly installment of the amount due as fees for services rendered by Gephardt Government Affairs and by you in that quarter.

Unless and except as Gephardt Government Affairs and Greenberg otherwise agree, all costs and expenses incurred by you in the performance of the services to be provided by you in the period of your engagement will be borne and paid by you.

The relationship between Gephardt Government Affairs and you will be that of independent contractor and not that of partners, joint venturers, principal and agent or otherwise. Without the prior consent of the other, neither will be authorized to bind or obligate the other or, except as provided herein and in the Services Agreement, to act for or on behalf of the other.

Greenberg has represented to Gephardt Government Affairs that Greenberg's engagement by Gephardt Government Affairs, and the performance of the services to be rendered by Greenberg as a subcontractor, do not and will not constitute a default or breach of the provisions of any agreement or contract between Greenberg and any other person or a violation of any fiduciary or other obligation or duty of Greenberg to any other person.

Greenberg agrees to comply with and to be bound by all of the provisions of the Services Agreement that are applicable to Greenberg as a subcontractor to Gephardt Government Affairs.

All notices, consents, and other communications by, to and between Gephardt Government Affairs and Greenberg hereunder will be in writing and will be deemed to have been given or delivered and received when personally delivered, or when delivered, and receipt confirmed, by a nationally recognized overnight courier service, when mailed by certified mail, postage prepaid and return receipt requested, or when transmitted, and receipt confirmed, by facsimile or electronic mail to Gephardt Government Affairs at 1101 K Street, N.W., Suite 310, Washington, D.C. 20005, Facsimile Number (202) 403-2048 or Email Address: tomodonnell@gephardtdc.com, Attention: Thomas J. O'Donnell, Managing Partner and to Greenberg c/o Robert Mangas, Esquire, Greenberg Traurig, LLP, 2101 L Street, Suite 1000, Washington DC 20037, or Email Address: MangasR@gtlaw.com or to either at such other address, facsimile number or email address as may be specified by notice to the other.

Neither Gephardt Government Affairs nor Greenberg may assign the agreements contained herein or any interest therein without the consent of the other.

This letter contains all of the agreements between Gephardt Government Affairs and Greenberg with respect to Greenberg's engagement as a subcontractor to Gephardt Government Affairs.

The invalidity or unenforceability of any provision of any of the agreements contained herein will not affect the validity or enforceability of any other provision.

These agreements will be performed in the District of Columbia and will be construed and enforced in accordance with the laws thereof than its rules with respect to conflicts of law.

The foregoing agreements and the rights and obligations of each of Gephardt Government Affairs and Greenberg thereunder will survive the termination of Greenberg's engagement as a

2

Received by NSD/FARA Registration Unit 08/12/2014 4:50:09 PM

subcontractor to the Gephardt Group and will be binding upon and inure to the benefit of each of Gephardt Government Affairs and Greenberg and its respective affiliates, successors and assigns.

Please acknowledge your approval and acceptance of the foregoing agreements by executing and returning to me one of the enclosed copies of this letter. This letter, when executed by you and returned to me, will constitute a binding agreement between Gephardt Government Affairs and Greenberg that will be enforceable in accordance with its terms and that cannot be modified or amended or terminated except by written instrument executed by Gephardt Government Affairs and Greenberg.

Very truly yours,

Thomas J. O'Donnell
Managing Partner
Gephardt Group Government Affairs, LLC

Robert Mangas hereby acknowledges his approval and acceptance of the foregoing agreements between Greenberg Traurig, LLP and Gephardt Group Government Affairs, LLC.

Date: 7/28/14

By: Robert Mangas
SHAREHOLDER       Title

3

Received by NSD/FARA Registration Unit   08/12/2014  4:50:09 PM

Received by NSD/FARA Registration Unit 08/12/2014 4:50:09 PM

Appendix 1

## SERVICES AGREEMENT

THIS AGREEMENT is made between the Government of the Republic of Turkey ("Turkey"), a foreign sovereign, and the Gephardt Group Government Affairs LLC, a Delaware Limited Liability Company ("Gephardt Group").

1. **Term:** This Agreement shall be for one year, commencing January 1, 2014 and expiring December 31, 2014. Its terms may be renewed for additional successive one-year periods upon the explicit written assent of both parties.

2. **Services:** The Gephardt Group agrees to provide lobbying and government relations services to Turkey, which shall consist of those services ordinarily and customarily provided in representing a foreign sovereign before the United States Congress and Executive Branch. These services shall include, but not be limited to:

   (a) Proposing and pursuing passage of legislation and other U.S. government action that promotes Turkey's interests and provides a positive image of Turks, Turkey and the United States-Turkey relationship,

   (b) Preserving and enlarging the Congressional Caucus on Turkey and Turkish Americans,

   (c) Educating members of Congress and the Administration on issues of importance to Turkey,

   (d) Promptly notifying Turkey of any action in Congress or the Executive Branch on issues of importance to Turkey,

   (e) Preparing brief analyses of developments in Congress and the Executive Branch on particular issues of concern to Turkey,

   (f) Identifying official gatherings and social events to which Embassy personnel ought, in the Gephardt Group's opinion, attend, including to the extent possible, obtaining the necessary invitations,

   (g) Identifying and/or arranging speaking engagements locally and nationally for Embassy personnel or their appointed or suggested proxies in fora that will improve Turkey's image and advance its causes on Capitol Hill. Such would be, if so directed by Turkey, coordinated with Turkey's existing public relations service provider[s], and

   (h) Maintaining and forging alliances with other interest groups whose goals are similar to or shared by Turkey.

1101 K Street NW • Suite 310 • Washington, DC 20005 • Office: (202) 403-2150 • Fax: (202) 403-2048

Received by NSD/FARA Registration Unit 08/12/2014 4:50:09 PM

Received by NSD/FARA Registration Unit   08/12/2014   4:50:09 PM

3. <u>Personnel and Other Service Providers:</u>

    (a) Except as noted below, the Gephardt Group shall compose its own team to achieve the best possible results in providing the services described above. It will provide Turkey at the earliest possible date a list of personnel, including an indication of their areas of expertise and/or how they will be utilized. This list will be updated from time to time as required.

    (b) The Gephardt Group will retain the services of Dickstein Shapiro LLP to serve as a subcontractor on this matter according to the following terms:

        i. Term of Subcontract: The subcontract shall commence on January 1, 2014 and expire December 31, 2014, subject to subsequent renewal upon the mutual assent of the parties.

        ii. Fees for Subcontractor: Dickstein Shapiro LLP shall be paid a monthly fee of $_____ for the term. The fees of the subcontractor shall be borne by Turkey and provided for in the fees remitted to the Gephardt Group (clause 4 below). The Gephardt Group is responsible for disbursing the fees to Dickstein Shapiro LLP on a regular basis.

        iii. It is understood that Dickstein Shapiro LLP shall have the same obligations as the Gephardt Group in this Agreement and that the Gephardt Group and Dickstein Shapiro LLP have pledged to work together amicably.

    (c) The Gephardt Group will retain the services of Brian Forni to serve as a subcontractor on this matter according to the following terms:

        i. Term of Subcontract: The subcontract shall commence on January 1, 2014 and expire December 31, 2014, subject to subsequent renewal upon the mutual assent of the parties.

        ii. Fees for Subcontractor: Brian Forni shall be paid a monthly fee of $_____ for the term. The fees of the subcontractor shall be borne by Turkey and provided for in the fees remitted to the Gephardt Group (clause 4 below). The Gephardt Group is responsible for disbursing the fees to Brian Forni on a regular basis.

        iii. It is understood that Brian Forni shall have the same obligations as the Gephardt Group in this Agreement and that the Gephardt Group and Brian Forni have pledged to work together amicably.

    (d) The Gephardt Group will retain the services of Lydia Borland to serve as a subcontractor on this matter according to the following terms:

2

Received by NSD/FARA Registration Unit   08/12/2014   4:50:09 PM

  i. Term of Subcontract: The subcontract shall commence on January 1, 2014 and expire December 31, 2014, subject to subsequent renewal upon the mutual assent of the parties.

  ii. Fees for Subcontractor: Lydia Borland shall be paid a monthly fee of $_____ for the term. The fees of the subcontractor shall be borne by Turkey and provided for in the fees remitted to the Gephardt Group (clause 4 below). The Gephardt Group is responsible for disbursing the fees to Lydia Borland on a regular basis.

  iii. It is understood that Lydia Borland shall have the same obligations as the Gephardt Group in this Agreement and that the Gephardt Group and Lydia Borland have pledged to work together amicably.

(e) The Gephardt Group may retain the services of additional subcontractors and consultants as deemed necessary to assist the firm. Such additional subcontractors and consultants may be retained and terminated at the Gephardt Group's discretion. The Gephardt Group shall be solely responsible for compensating any such additional subcontractors and consultants.

(f) Should for any reason Turkey request that the Gephardt Group discontinue he services of any subcontractor named in this Agreement, the Gephardt Group shall immediately terminate the relevant subcontract, applying the same terms described in Item 6 below.

(g) The Gephardt Group agrees to share information and work amicably with Turkey's other service providers as identified by the Turkish Embassy.

4. **Fees:** Turkey agrees to pay the Gephardt Group a total of $_____ in US dollars for the services described in this Agreement to be performed by the Gephardt Group, the subcontractors listed above, and any additional subcontractors that it may retain. A monthly payment shall be due at the beginning of each month or on any other schedule agreed to by the parties.

5. **Additional Costs and Expenses:** Should the Gephardt Group incur extraordinary costs and expenses on Turkey's behalf that are not otherwise contemplated in the fees described above, Turkey shall reimburse these costs provided that Turkey gives explicit advance approval.

6. **Termination:**

(a) This Agreement shall terminate upon its natural expiration if not renewed.

(b) Either party may terminate this Agreement at any time prior to its natural expiration subject to fourteen (14) days advance written notice. In this

3

Received by NSD/FARA Registration Unit   08/12/2014   4:50:09 PM

event, Turkey shall pay Gephardt Group its pro-rata share of earned fees apportioned on a daily basis through the end of the notice period.

(c) Should this Agreement terminate prior to its natural expiration, any fees paid to the Gephardt Group by Turkey that exceed the pro-rata share of earned fees apportioned on a daily basis up to the date of termination shall be refunded by the Gephardt Group to Turkey.

7. **Monthly Reporting and Quarterly Performance Assessment:** The Gephardt Group shall provide monthly a written report to Turkey succinctly describing its work on Turkey's behalf. Such reports need not include calculations of the time spent by the individual members of the Gephardt Group team. Further, every three months, or as often as Turkey may desire, the Gephardt Group shall present to Turkey a written assessment of its performance during the preceding period. If, upon reviewing the assessment, Turkey is not satisfied with the Gephardt Group's performance, Turkey may, at its sole discretion, terminate this Agreement according to the terms stated herein.

8. **Privileged Information:** The Gephardt Group will use all permissible efforts to protect privileged communications or other confidential information developed by it or provided to it by Turkey during the term of this Agreement. This obligation shall survive the termination of this Agreement and any renewals for a period of not less than two years. Upon the termination of this Agreement and any renewals Turkey may request from the Gephardt Group the return of any documents or other information provided by Turkey.

9. **Registration and Disclosure:** The Gephardt Group and any subcontractors it may employ shall separately and individually comply with any and all restrictions and requirements, including filing and other disclosure, of the Foreign Agents Registration Act, the Lobbying Disclosure Act, the Ethics Reform Act of 1989, the Foreign Corrupt Practices Act, the Honest Leadership and Open Government Act, and other applicable laws and regulations of the United States and the District of Columbia.

11. **Conflicts:** Turkey acknowledges Gephardt Group's breadth of practice, which give rise to the potential that it may represent clients in unrelated matters whose interests are contrary to Turkey's. Nonetheless, even the appearance of a conflict could render unproductive the relationship contemplated by this Agreement. Therefore, the Gephardt Group shall endeavor not only to avoid actual conflicts, but the appearance of conflicts as well. To that end, the Gephardt Group shall comply with all applicable provisions of the District of Columbia Bar Code of Professional Conduct. It shall also immediately assess whether it represents any clients whose interests are contrary to Turkey. If so, then it shall inform Turkey and then Turkey and the Gephardt Group shall work together to determine whether and how to resolve any apparent or actual conflict. Only on a case-by-case basis will Turkey acknowledge that a concurrent representation in an unrelated matter is appropriate. In order to assist in the process of identifying potential conflicts, the Gephardt Group shall consult with the Turkish Embassy's legal counsel in identifying those issues, which, if addressed in other client matters, may present a conflict.

4

Received by NSD/FARA Registration Unit   08/12/2014   4:50:09 PM

12. **Choice of Law:** This Agreement shall be governed by, and construed in accordance with, the laws of the Republic of Turkey. The Turkish Republic courts located in Ankara, Turkey shall be the venue for resolving any dispute related to the interpretation and application of this Agreement that cannot otherwise be settled amicably by the parties.

13. **Power to Bind:** Absent the express written consent of Turkey, neither the Gephardt Group nor its consultants and subcontractors have authority to bind Turkey in any manner whatsoever.

**FOR THE GOVERNMENT OF THE REPUBLIC OF TURKEY**

By: _____  Date: _____
H.E. Namik Tan
Turkish Ambassador to the United States

**FOR GEPHARDT GROUP GOVERNMENT AFFAIRS LLC**

By: _____  Date: _____
Thomas O'Donnell
Managing Partner

5

**Appendix 2 – Services to be Provided by Greenberg Traurig LLP**
As a Subcontractor to
Gephardt Group Government Affairs ("GGA") in its
Representation of the Government of Turkey
July 28, 2014

For the duration of the contract period, the subcontractor agrees to perform the following services at the direction of and in coordination with the Embassy of Turkey ("Embassy") and GGA (Team Leader):

1. Participate in weekly strategic planning sessions with GGA, other subcontractors and the Embassy to develop and fine tune an advocacy plan for the Executive and Legislative Branches in support of the Government of Turkey.

2. Carry out assignments, as directed, to educate and reeducate elected and appointed policymakers and opinion leaders about the Republic of Turkey, its strong friendship and continued support of United States diplomatic, foreign policy and military efforts, and the important strategic bilateral relationship between the United States and Turkey.

3. Solicit additional membership participation in the Congressional Caucus on Turkey.

4. Gather information about legislative activities and oversight hearings in the House and Senate and report back regularly to the Embassy through Team Leader.

5. Identify legislators and opportunities for positive congressional activities in support of Turkey's strategic relationship.

6. Develop and utilize contacts at the State and Defense Departments, and the National Security Council to convey the seriousness of the genocide issue and the potential threat it poses to the U.S./Turkey relationship.

7. Propose and participate in events at the Embassy and other venues, as directed, in support of the advocacy plan.

8. Work with the Embassy's public relations team to identify opportunities for participation by the Ambassador and Embassy staff in conferences, speaking engagements, policy discussions, and other events to project Turkey's image and interests in Washington, DC.