UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                          Government,

        - against -

REZA ZARRAB,

                         Defendant.
------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/1/17

15 Cr 867 (RMB)

**DECISION AND ORDER**

Having reviewed the (comprehensive) record herein including, without limitation, the Government submissions, dated March 27, 2017, March 31, 2017, April 18, 2017, April 28, 2017, May 22, 2017; the Defense submissions, dated March 27, 2017, March 30, 2017, March 31, 2017, April 14, 2017, April 18, 2017, April 27, 2017, May 22, 2017; Rudolph Giuliani's affidavits, dated April 14, 2017, May 4, 2017, and May 22, 2017; Michael B. Mukasey's affidavits, dated April 13, 2017, May 3, 3017, and May 19, 2017; Laurence Levy's affidavit, dated April 14, 2017; Robert Mangas' affidavit, dated April 14, 2017; Registration Statements filed by Greenberg Traurig LLP with the United States Department of Justice (for 2014-2016); the Court's earlier <u>Curcio</u> Decision and Order, dated February 15, 2017; and having conducted numerous conferences and hearings and heard oral argument by all counsel on April 4, 2017, April 13, 2017, April 24, 2017, May 2, 2017, May 11, 2017, and May 25, 2017, the Court finds as follows:

1- Mr. Mukasey appears to have a potential conflict of interest as a result of his firm's (Debevoise & Plimpton LLP) representation of eight "victim banks" (i.e., Deutsche Bank, Bank of America, JP Morgan Chase, Citibank, HSBC, Standard Chartered, UBS and Wells Fargo);

2- Mr. Giuliani appears to have potential conflicts of interest as a result of his

firm's (Greenberg Traurig LLP) representation of the same eight victim banks and also as a result of Greenberg Traurig's serving as an "agent" of the Republic of Turkey;

3- These potential conflicts have been thoroughly reviewed by Mr. Zarrab with the able assistance of court appointed independent CJA counsel, James DeVita. They have also been thoroughly reviewed by Mr. Zarrab with his able principal ("conflict free") trial counsel, Benjamin Brafman.[1] Mr. Zarrab has stated unequivocally that he knowingly and voluntarily waives his right to conflict-free representation by Messrs. Giuliani and Mukasey. See, Transcript of proceedings held on May 25, 2017 at 21:15-18 (Court: "And are you also knowingly and voluntarily waiving your right to conflict-free representation from those firms [Greenberg Traurig LLP and Debevoise & Plimpton LLP]?" Mr. Zarrab: "Yes." and at 21:9-14 (Court: "And do you understand that by choosing to continue with both Greenberg Traurig and Debevoise & Plimpton as two of the law firms representing you, you are waiving your right to be represented solely by attorneys who have no conflict of interest?" Mr. Zarrab: "Yes." ); and at 20:5-12 (Court: "And after considering all that we've discussed today and that we discussed on May 2nd about the ways in which Greenberg Traurig's representation of, first of all, the banks alleged to be victims in your case may adversely affect your defense, do you believe that it is in your best interest to

---

[1] In resolving potential conflicts of interest of Kirkland & Ellis attorneys who also represented the eight victim banks, the Court in its Decision and Order, dated February 15, 2017, referred to the remarks of New York University School of Law Professor Stephen Gillers who contends: "Mr. Zarrab is not giving anything up. His situation is identical to what it would be if the Brafman firm were representing him without the assistance of the Kirkland lawyers. His informed consent confers a benefit (as we must assume he sees it). It enables him to get the particular expertise of the Kirkland lawyers to assist in his defense." (Professor Gillers letter, dated December 13, 2016 at 5.)

continue with Greenberg Traurig as one of the law firms representing you?" Mr. Zarrab: "Definitely, yes.".); and at 20:25, 21:1-6 (Court: "After considering all that I have said to you today and that we discussed on May 2nd about the ways in which Debevoise & Plimpton's representation of the banks alleged to be victims in your case may adversely affect your defense, do you believe that it is in your best interest to continue with Debevoise & Plimpton as one of the law firms representing you?" Mr. Zarrab: "Yes."); and at 20:15-21 (Court: "And after considering all that I have discussed with you today and that we discussed on May 2nd about the ways in which Greenberg Traurig's representation of the government of Turkey may adversely affect your defense, do you believe that it is in your best interest to continue with Greenberg Traurig as one of the law firms representing you?" Mr. Zarrab: "Definitely, yes."); at 17:3-7, 14-15 (Mr. Zarrab: Your Honor, I understand that the Greenberg firm represents the government of the Turkish Republic. In theory, the interests of the government of the Turkish Republic and my interests could be different in connection with this case" . . . "I do waive all my rights according to this subject.").

4- As to the victim banks, the Court finds, with respect to Debevoise & Plimpton and Greenberg Traurig and Messrs. Giuliani and Mukasey that, in the circumstances presented here, this is a waivable potential conflict. See Decision and Order, dated February 15, 2017.

5- Similarly, as to Greenberg Traurig's serving as an agent of Turkey, the Court finds that this is a waivable potential conflict. This conclusion is supported by the affidavit of Robert J. Mangas, dated April 14, 2017, who has advised the Court that he, and five other Greenberg Traurig attorneys have for years served as registered foreign agents

of the Republic of Turkey and that "[a]t no time have Rudolph W. Giuliani, Laurence Levy, or any other Greenberg Traurig employees, except the aforementioned individuals [five attorneys] been involved in the representation of the Republic of Turkey." (Mangas Affidavit, dated April 14, 2017.). It is also supported by the affidavit of Laurence Levy, dated April 14, 2017, who described the separation of functions and the "ethical wall" that was established at Greenberg Traurig. "Mr Giuliani and I worked through Counsel's office in Greenberg Traurig to prevent us from reviewing information about any work any lawyers or staff in Greenberg Traurig performed for any of the subject banks or on behalf of Turkey. We subsequently created an ethical wall to ensure complete separation of the representation of Mr. Zarrab from the representation of the subject banks and the representation of Turkey. Neither Mr. Giuliani, nor I have been provided any non-public information regarding any of the subject banks or regarding Turkey from anyone at Greenberg Traurig relating to Mr. Zarrab's pending case." (Levy Affidavit, dated April 14, 2017.)

6- The Court concludes that Mr. Zarrab, as noted above, has voluntarily and knowingly waived the above described potential conflicts. See United States v. Cain, 671 F.3d 271, 293 (2d Cir. 2012) ("Where the right to counsel of one's choice conflicts with the right to an attorney of undivided loyalty, the determination of which right is to take precedence must generally be left to the defendant, who may make a knowing and intelligent waiver of his right to a conflict-free lawyer if he desires to continue the representation.); see also United States v. Lussier, 71 F.3d 456, 461 (2d Cir. 1995); and Decision and Order, dated February 15, 2017.

7- The Court is making no finding as to any waiver of attorney client privilege or

attorney work product. See Government letter, dated May 22, 2017 at 3 ("Mr. Giuliani's communications with Turkish officials or U.S. government officials cannot be, based on the information available to the Government presently, privileged as either attorney-client communications or attorney work product;" see also Transcript of proceedings held on May 25, 2017 at 14:2-6 (Mr. Brafman: "And, your Honor, just for the record, the fact that I have consented to the questions proposed by the government does not imply in any way that I share their legal conclusions in the letter with respect to either attorney-client privilege or work product.").

    8- As to any potential conflicts of interest relating to representation of the United States, the Republic of Turkey, Iran and/or Halkbank, the Court relies upon the following representations, among others, of Mr. Mukasey and Mr. Giuliani: Mr. Mukasey: "In the past, the firm has represented the Fed in certain litigation, and - through a partner who has since retired and who acted as a monitor in a housing discrimination case. . ." (Mukasey Affidavit, dated May 3, 3017.); "Debevoise represents the Department of Energy in matters involving corporate finance rather than in matters involving litigation. There has been no representation by me or Debevoise of Turkey, Iran or Halkbank." (Mukasey Affidavit, dated May 19, 2017.).

    Mr. Giuliani: "Neither I, nor my firm, have represented Iran or Hal[k]bank, nor have we during the pendency of my representation of Mr. Zarrab . . . Mr. Zarrab is our client and our only client in this matter; neither Mr. Levy nor I represent the interests of Turkey or the United States . . . At all times that I ha[ve] had any substantive conversation with a representative of the United States government or the government of Turkey, Mr. Mukasey has fully participated, and that practice will continue as long as we continue to

represent Mr. Zarrab." "Neither I nor my firm has represented the Trump Administration. In particular I have not served on any Trump Administration Commission 'relating to the so-called Muslim Ban Executive Orders.' For clarity, I have not participated in writing any of the Executive Orders on that subject issued by the Trump Administration. With regard to cyber security, I am leading a group of experts from the private sector that will provide information regarding their experiences with cyber-attacks, vulnerabilities, and solutions identified by the private sector. This is a non-deliberative body charged with sharing information with the President and Administration officials in a direct and unfiltered manner regarding private sector experiences and expertise. It is not an official agency or commission of the government, it does not have any government funding or staffing." (Giuliani Affidavit, dated May 22, 2017.)

9- In reaching its conclusions, the Court has also taken into consideration the importance of maintaining the integrity of these proceedings as the case heads toward trial on October 30, 2017. See Wheat v. United States, 486 U.S. 153, 160 (1988) ("Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."); and United States v. Cunningham, 672 F.2d 1064, 1070 (2d Cir. 1982) ("In determining whether the right of the accused to counsel of his choosing should be honored in a particular case, we must balance the defendant's constitutional right against the need to preserve the highest ethical standards of professional responsibility.")

10- These conflict situations must continue to be closely monitored, principally by the Defense. Counsel are directed promptly to advise the Court of any change of circumstances which may result in actual conflict or which may exacerbate potential

-6-

conflict(s) of interest.  See Decision and Order, dated February 15, 2017 at 10 ("At the same time, these conflict matters must be closely monitored, principally by the Defense. Counsel are directed promptly to advise the Court of any change of circumstances which may result in actual or which may exacerbate potential conflict(s) of interest.").

Dated: New York, New York
       June 1, 2017

*Richard A. Berman*

**RICHARD M. BERMAN, U.S.D.J.**