UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>REZA ZARRAB, et al.,<br><br>                Defendants. | S4 15-cr-00867 (RMB)<br><br>**REDACTED VERSION<br>(UNREDACTED VERSION<br>TO BE FILED UNDER SEAL)**<br><br>**DECLARATION OF CATHY A.<br>FLEMING, ESQ. IN SUPPORT OF<br>DEFENDANT MEHMET HAKAN<br>ATILLA'S MOTION FOR LEAVE<br>TO TAKE RULE 15 FOREIGN<br>DEPOSITIONS OR, IN THE<br>ALTERNATIVE, LIVE STREAMED<br>VIDEO TESTIMONY DURING<br>TRIAL FROM DEFENSE<br>WITNESSES FROM TURKEY** |

Cathy Fleming hereby declares the following under penalty of perjury:

1.  I am a member of the firm of Fleming Ruvoldt PLLC, which, together with Herrick, Feinstein LLP, serves as counsel for defendant Mehmet Hakan Atilla ("Mr. Atilla") in the above matter. I am submitting this Declaration in support of Mr. Atilla's Motion for Leave to Take Rule 15 Foreign Depositions, in which he is seeking an Order authorizing the taking of videotaped depositions in Turkey (probably Istanbul), of ███████████████████████████████████ ████████████████, all of whom possess relevant, exculpatory information relating to Mr. Atilla and are unable and unwilling to appear in person at a trial in the United States.  In the alternative, as discussed in Court on November 6, 2017, defendant

seeks to take testimony of defense witnesses in Turkey who are unwilling to come to the United States via live remote video during the defense case at trial.

2. We sought and received permission of the Court on November 6, 2017, with the consent of the Government, to file the portions of this application relating to witness identities and summaries of their anticipated testimony under seal (with the other portions being redacted for the public filing).

3. This Declaration is based upon my personal knowledge, examination of available records, the prior proceedings hereto, and investigation by myself and others.

## PROCEDURAL BACKGROUND

4. On or about September 6, 2017, a federal grand jury sitting in the Southern District of New York returned a six-count superseding indictment ("Indictment S4" or "S4") against Mr. Atilla and eight co-defendants, all but one of whom reside outside the United States and have not yet been brought before this Court. The one exception among the co-defendants, Reza Zarrab, has been in continuous United States custody on S4 or prior charges related thereto since March 2016. Included among the absent defendants is Mehmet Zafer Caglayan, a former Turkish Minister of the Economy. Another absent defendant is Suleyman Aslan, the former General Manager and chief executive officer, of Halkbank.

5. This Court has set a November 27, 2017 trial date in this matter with jury selection on November 20, 2017. It appears that only Mr. Atilla will be at trial; co-defendant Zarrab has entered a plea of not guilty but has not otherwise actively defended against Indictment S4.

6.  The charges in Indictment S4 relate generally to allegations that, between 2010 and 2015, "money service businesses and front companies in Iran, Turkey, the United Arab Emirates, and elsewhere were used to violate and evade prohibitions against Iran's access to the U.S. financial system and restrictions on the use of proceeds of Iranian oil and gas sales and on the supply of gold to the Government of Iran and Iranian entities and persons." (S4 ¶ 1).  Indictment S4 charges each defendant with conspiracy to defraud the United States (Count 1,  U.S.C.§ 371); conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") (Count 2,  50 U.S.C. §1705); bank fraud (Count 3, 18 U.S.C. §§ 1344 and 2); conspiracy to commit bank fraud (Count 4, 18 U.S.C. §1349); money laundering (Count 5, 18 U.S.C. §§  1956(a)(2)(A) and 2); and conspiracy to commit money laundering (Count 6, 18 U.S.C. §1956(h)).

7.  Indictment S4 denominates Mr. Atilla as "the Deputy General Manager of International Banking at Turkish Bank-1." (¶ 25). S4 identifies that entity as "a Turkish Bank majority-owned by the Government of Turkey" that "knowingly facilitated the scheme, participated in the design of fraudulent transactions intended to deceive U.S. regulators and foreign banks, and lied to U.S. regulators about Turkish Bank-1's involvement." (¶ 3). "Turkish Bank-1" is Turkiye Halk Bankasi A.S., or Halkbank.

8.  The charges against Mr. Atilla are ostensibly based on a series of transactions involving Halkbank and a number of companies controlled by co-defendant Zarrab. The transactions allegedly involved Euro or Turkish Lira-denominated sales of gold and/or food between Turkish and Iranian entities involving the banking facilities of Halkbank. It appears to be the government's theory that the transactions themselves

3

were somehow disguised to make them appear to be legitimate business transactions that did not run afoul of U.S. sanctions against Iran. In various submissions, the Government has described Mr. Atilla as being a principal "architect" of a "scheme to transfer Iranian oil proceeds out of Halkbank to front companies in Dubai by disguising the transfers as being part of fake food sales to Iran." (Doc. 322 at 6). The Government also describes Mr. Atilla as a "sanctions expert." *Id.*

9.  Mr. Atilla will vigorously defend against these charges at trial. Among other things, he will contest the notion that he was aware of any purported schemes to evade U.S. sanctions against Iran. He will also contest that he was aware of the alleged intent of others to use the services of American financial institutions, which we contend is an essential element for a conviction under the IEEPA, bank fraud, conspiracy and money laundering statutes.

10. Mr. Atilla seeks a Court order authorizing the videotaped depositions of the witnesses identified below, all of whom were, and in some cases still are, employees of Halkbank, and all of whom will, based on what we have been told by them in interviews, provide material, exculpatory testimony relevant to Mr. Atilla's defense either in depositions or through remote video live testimony at trial. As set forth in the brief summaries of their anticipated testimony, the witnesses provide evidence that disputes, contradicts, and disproves the Government's allegations. We also anticipate that the testimony will corroborate Mr. Atilla's testimony, should he choose to testify at trial. Finally, the witnesses also provide positive character testimony.

4

## INABILITY TO APPEAR IN THE UNITED STATES

11. The government has advised the Defense that, depending on the witness's identity, it would consider offering certain proffered Defense witnesses immunity from arrest, *i.e.,* "safe passage" if they were to travel to the United States to testify at trial. I have addressed that offer with each witness whom I have interviewed in Turkey and each witness identified below has stated to me that he or she will not travel to the United States even if guaranteed safe passage to permit him or her to testify at trial and even if all of his or her travel related expenses were paid in full. Despite a good faith attempt to ask the witnesses to come to the United States and testify live during the defense case, these four witnesses declined.

12. In addition, in early October 2017, Turkey and the United States each suspended the issuance of visas to the other's citizens at the present time, so obtaining a visa would be an additional, logistical hurdle, even if the witnesses were willing to appear in person. The press reported on November 7, 2017 that the United States and Turkey "partially" resumed issuing visas "on a limited basis" but the ability to get visas is still uncertain. Further, I have been advised that Turkish citizens have difficulties traveling without visas to many countries which could serve as a convenient third country for a deposition, and that visas for such countries can take months for a Turkish citizen to obtain.

## THE PROPOSED WITNESSES/DEPONENTS

███████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████







9







12



## General Information Concerning Witnesses

22. Each witness was advised by me that he or she would testify under oath. Each was instructed that it is the obligation of a witness testifying under oath to tell the truth and to tell the whole truth and each confirmed that he or she understood and would follow that instruction.

## Logistics

23. The Court had questions concerning logistics of foreign depositions. Our accompanying memorandum of law addresses the issues.

A.   Foreign Depositions

24. While Rule 15 foreign depositions are not common, they do take place. We would expect that the minutiae and details of logistics would be worked out between counsel, and approved by the Court. In general, however, we anticipate that:

     a)     the witnesses would testify from a video conference center or facility with sophisticated video capabilities in Istanbul, Turkey;

     b)     all counsel (for the Government and the Defense) would participate from one location in New York; both sides would question the witness (direct and cross, redirect and recross);

     c)     the deposition would be recorded and on video and the court reporter would be with counsel in New York;

     d)     a third party acceptable to the parties (either a U.S. consulate employee or a lawyer from a New York law firm acceptable to the Government and the Court) would be physically with the witness in Turkey to administer the oath; to monitor the integrity of the proceeding and to handle exhibits for both the Defense and the Government;

     e)     all objections except as to form would be reserved and any disputed testimony would be provided to the Court for ruling before the (sanitized) testimony was played at trial.

Administration of the Oath

25.     The accompanying memorandum of law describes how an oath can be administered for foreign depositions:

     a)     The oath (or affirmation) can be administered by anyone authorized to administer an oath in the United States, Fed.R.Civ.P. 28(b).

     b)     It is my understanding that a United States consular officer is authorized to administer an oath and take a deposition, 22 U.S.C.A. §4221 (2004); *see also* 22 CFR §§92.49-92.71.

     c)     The Court can commission any person to obtain deposition testimony. *See United States v. Casamento*, 887 F.2d 1141, 1174-75 (2d Cir. 1989).

d)      Finally, of course, the Court could administer the oath to the witness at the beginning of the deposition if the Court chose to attend the beginning of the deposition.

Live Testimony

26. In the alternative, defendant seeks an order permitting live testimony from the four witnesses discussed above during the defense case via appropriate video feed or closed circuit television.  The Court and all the parties, as well as the jury, would hear and see the witnesses.

a)      The Court will administer the oath;

b)      a lawyer acceptable to both sides and/or the Court can be physically present in Turkey to handle exhibits, mute the proceedings when requested by the Court, and observe the integrity of the proceedings;

c)      We can arrange a video feed in the courtroom (with a second video feed as a backup in the event of a failure of the first video feed).

27. The logistics can be worked out between counsel, obviously subject to ultimate approval by the Court.

Presence of the Defendant

28. If deposition testimony is taken through video conference from New York it is likely that defendant can participate at least by telephone, which is of course, the preferred course for the defense counsel.  If, however, the logistics prove to be an issue, Mr. Atilla is willing to waive his presence at the Rule 15 depositions.  See attached waiver of Mr. Atilla (signed in my presence on October 27, 2017; Exhibit B).

29. If the testimony is taken live during trial, the defendant will, of course, be present in the courtroom and his presence, or waiver, is not an issue.

15

Lack of Enforcement Mechanism

30. The Government has indicated to the Defense that it will object to taking foreign testimony of Defense witnesses including on the ground that it has no mechanism available to it to ensure that these witnesses will testify truthfully.  Turkey and the United States do have an extradition treaty, but both countries have refused to extradite in several well-known cases.

31. Defense counsel are officers of the Court.  If we believe that the witness is going to commit perjury, we have an obligation not to proffer him or her as a witness.  Based on my and other's investigations and interviews, we have found the Deponents and their anticipated testimony to be credible.

32. As set forth in the accompanying memorandum of law, courts have permitted the lack of a viable enforcement mechanism to be used for impeachment, but not as a bar to the testimony.

33. The Defense has consistently told both the Court and the Government that it was investigating in Turkey and anticipated foreign testimony.  Unfortunately, it has been a very slow and arduous process, which we detailed in our letter dated November 5, 2017 (Doc. 329).  We contend that there is no prejudice to the Court or the Government for the Defense to take these depositions, or adduce this testimony, particularly since this is defense testimony at trial via video which would not ordinarily be adduced until after the Government rested.

34. The Defense sent summaries of anticipated defense witness testimony to the
Government on November 5, 2017 (Exhibit A hereto).  The following should be
noted:

    a)       The Superseding Indictment (S4) (Doc. 293) was returned on September 6,
2017, which is only two months ago;

    b)       The Government has provided its DRAFT **63** page exhibit list on the
evening of November 6, 2017 and apparently loaded those marked exhibits to a website last
night, November 6, 2017.

    c)       Defendants continue to receive Rule 16 discovery, including, on October 12,
2017, the contents of Mr. Atilla's electronic devices which were seized on March 27, 2017.
As recently as November 7, 2017, the Defense wrote to the Government requesting specific
Rule 16 discovery including items referenced in prior discovery but not produced;

    d)       No *Jencks* or *Giglio* materials have been provided by the Government to the
Defense;

    e)       There is a pending but undecided motion to dismiss for S4;

    f)       Both the Government and the Defense have filed motions *in limine*;
responses (to the extent they can be made at this time) were filed yesterday, November 6,
2017.

35. In contrast, the Defense has provided the Government with its proffer of defense
witness testimony.  That testimony is, we contend, material and necessary to
prevent a failure of justice and as set forth above, the Defense has shown that the
witnesses are unavailable.

36. We believe that the depositions can be scheduled and taken promptly and completed
before November 20, 2017.

17

## CONCLUSION

37. We respectfully request that the Court permit Rule 15 foreign depositions of the

    four witnesses described above.  In the alternative, defendant respectfully requests

    that the Court permit live streaming of testimony from Turkey of witness testimony

    during the defense case.

Counsel for the Government stated their opposition to the foreign depositions on the record in

court on November 6, 2017.


I declare under penalty of perjury that the foregoing is true and correct.


Dated:  November 7, 2017


CATHY A. FLEMING

# EXHIBIT A (REDACTED)

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | S4 15-cr-00867 (RMB) |
| v. | **DECLARATION OF DEFENDANT MEHMET HAKAN ATILLA IN SUPPORT OF HIS MOTION FOR LEAVE TO TAKE RULE 15 FOREIGN DISCOVERY** |
| REZA ZARRAB, et al. | |
| Defendants. | |

MEHMET HAKAN ATILLA declares that:

1.      I am a named Defendant in the above-captioned action, and I am fully familiar with the facts and circumstances set forth in my Motion for Leave to Take Rule 15 Foreign Discovery (the "Motion"), and the papers submitted in support thereof. I submit this ~~affidavit~~ _declaration_ in support of the Motion.

2.      I hereby waive my right to be physically present for any and all depositions in Turkey or any other country authorized by the Court in response to the Motion, as permitted by Rule 15(c)(l)(A), Federal Rules of Criminal Procedure. However, I request permission to be present by telephone or video conference for any depositions authorized by the Court, and to be able to communicate by telephone with my attorneys, as necessary, during the depositions.

I certify under penalty of perjury that the foregoing is true and correct.

_____
MEHMET HAKAN ATILLA

October 27, 2017

Cathy Fleming, witness