**Proposed *Curcio* Examination of Defendant Mehmet Hakan Atilla**
*United States v. Mehmet Hakan Atilla*, S4 15 Cr. 867 (RMB)

A.   **General Introductory Questions**

    1.   Do you understand what this proceeding is all about? [*See* Transcript of Jan. 5, 2017, Reza Zarrab *Curcio* hearing ("*Curcio* Tr."), regarding his representation by Kirkland & Ellis, LLP, page 5, lines 15-16][1]

    2.   The purpose of my asking these questions is to complete the written record. You should be aware that I have not yet determined whether McDermott Will & Emery LLP ("McDermott") should continue to represent you as counsel in this case. Do you understand that? (*Curcio* Tr., 5:18-22)

B.   **Introductory Questions to Establish Competence**

    1.   Age (*Curcio* Tr., 5: 24-25)
    2.   Education (*Curcio* Tr., 6:2-3)
    3.   Current medications (*Curcio* Tr., 6: 7-8)
    4.   Alcohol, drugs, medications within past 24 hours (*Curcio* Tr., 6: 18-19)
    5.   Is there anything, including language differences, interfering with your ability to understand what is happening here today? (*Curcio* Tr., 6: 22-27)

C.   **Questions Regarding Payment of Mehmet Hakan Atilla's Legal Fees and Expenses by His Employer Halkbank**[2]

    1.   You are aware that your employer Turkiye Halk Bankasi S.A. ("Halkbank") is paying for your legal fees and expenses in this matter, correct?
    2.   You are aware that Halkbank is paying your legal fees and expenses for your attorneys at McDermott, correct?
    3.   The fact that Halkbank is paying your McDermott legal fees and expenses was set forth in your November 14, 2017 retainer agreement with McDermott, and both you and Halkbank signed the retainer agreement, correct?
    4.   You are further aware that Halkbank is majority owned by the Republic of Turkey, and that Permanent Delegation to the European Union of the Republic of Turkey is a McDermott client, correct?
    5.   Do you understand that, because of this fee arrangement, as well as the Republic of Turkey's majority ownership of Halkbank, your McDermott attorneys may not

---

[1] Sections A, B, D, E, F and G are derived from the government's submission on May 1, 2017, which contained a "version of the defendant's submission with the modifications proposed by the Government." (ECF No, 235, 235-1). There are citations to a January 5, 2017 hearing in the government's prior submission which we have included herein, but McDermott has not seen a copy of this transcript.

[2] Section C is derived from proposed questions submitted by the Defendant related to Halk Bank on June 8, 2017. (ECF No. 262).

      wish to take positions in this case before trial, during trial, at sentencing, or on appeal, that are critical of Halkbank, even if criticizing the bank might help your defense?

6. Do you understand that your retainer agreement with McDermott also provides you are McDermott's only client in this matter, and that therefore McDermott is not representing either Halkbank or the Permanent Delegation to the European Union of the Republic of Turkey in this matter?

7. Do you understand that, since you are McDermott' only client in this matter, McDermott owes you a duty of undivided loyalty?

8. Do you recognize that your interest in a public trial of the charges in this case may be different from the interests of Halkbank?

9. Have you consulted with your independent counsel, Joshua Dratel, concerning the issue of Halkbank's payment of your McDermott legal fees and expenses, and McDermott client the Permanent Delegation to the European Union of the Republic of Turkey's majority ownership of Halkbank?

10. Do you understand that, if Halkbank ceases to pay your legal fees and expenses, and you are unable to do so yourself, McDermott may seek to withdraw as your attorneys in this case?

11. After considering what I have said today about Halkbank's payment of McDermott's legal fees and expenses, and Halkbank's majority ownership by the Republic of Turkey and the fact that McDermott represents the Permanent Delegation of the European Union of the Republic of Turkey, and the ways in which this could adversely affect your defense, do you believe that it is in your best interest to continue with McDermott representing you? Is that your wish?

**D.**     **Potential Conflict of Interest Posed by McDermott's Representation of the Banks**

1. Are you satisfied with the services of your attorneys thus far in the case? (*Curcio* Tr., 7: 2-4)

2. Are you satisfied with the legal advice they have given you? (*Curcio* Tr., 7: 6-7)

3. Have your attorneys from McDermott informed you that their law firm currently represents, in matters unrelated to this case, ___ banks (the "Bank Clients") that the Government alleges are victims of the conspiracies charged in the Indictment against you in this case, and that those Bank Clients are ___? (*Curcio* Tr., 8: 17-25).

4. Have your McDermott attorneys informed you that even though they personally may not participate in the representations of the Bank Clients, they nevertheless have ethical obligations to the Bank Clients because they are clients of the law firm that your lawyers work for, namely McDermott? (*Curcio* Tr., 9: 18-22)

5. How long have you been aware of these issues? How much time have you spent discussing these issues with your McDermott attorneys?

6. Do you understand that the fact that your McDermott lawyers represent you and simultaneously represent the Bank Clients may lead them to have loyalties divided between yourself and the Bank Clients? (*Curcio* Tr., 10: 3-7)

7. Do you understand that, while your McDermott attorneys may have these divided loyalties, you nevertheless are entitled to have counsel who have no divided loyalties, who are loyal only to you? (*Curcio* Tr., 10: 9-12)
8. Do you understand that, because of these divided loyalties, your McDermott lawyers might have an incentive, in some instances, to put the interests of the Bank Clients before yours? (*Curcio* Tr., 10: 14-17)
9. Let me give you some examples of the ways in which the allegiance of your McDermott lawyers could adversely affect their representation of you in this case. This dual representation could affect the way that your McDermott lawyers consider and advise you (*Curcio*, Tr., 10: 19-25):
    a. Whether, and when, you should plead guilty (*Curcio* Tr., 11: 1-2);
    b. Whether you should seek to cooperate with the Government (*Curcio* Tr., 11: 4-5);
    c. What defenses you should raise (*Curcio* Tr., 11: 7-8);
    d. Whether you should proceed to trial, including any interest on the part of the Bank Clients to avoid a public trial; (Govt's. April 18, 2017 letter to Court at 2)
    e. Whether you should testify at trial (*Curcio* Tr., 11:10-11);
    f. Which, if any, Bank Client witnesses should be cross-examined, and what questions they should be asked (*Curcio* Tr., 11: 13-15);
    g. Which, if any, Bank Client witnesses should be subpoenaed and called to testify, and what other evidence, if any, concerning the Bank Clients should be offered on your behalf (*Curcio* Tr. 11: 17-19);
    h. What arguments to make on your behalf to the jury (*Curcio* Tr., 11: 21-23);
    i. What arguments to make to the Court, and what facts to bring to the Court's attention, before trial, during trial, or at your sentencing, if you are convicted. (*Curcio* Tr., 11: 25-12:3)
10. Let me expand on some of those examples and ask you some additional questions related to the ones we have just gone over. (*Curcio* Tr., 12: 5-7)
    a. Do you understand that your McDermott attorneys may not wish to take positions in this case before trial, during trial, at sentencing, or on appeal, that are critical of the Bank Clients, even if criticizing them might help your defense? (*Curcio* Tr., 12: 8-15)
    b. Are you aware that your attorneys at McDermott may have access to or may have learned confidential information from the Bank Clients they represent, but that they are absolutely prohibited from providing this information to the members of your defense team for use in your defense, even if the information could be useful in your defense, because of the attorney-client privilege that applies to the communications between the McDermott attorneys and their Bank Clients? (*Curcio* Tr., 12: 22-13:7)
    c. Do you understand that your attorneys from McDermott may be limited in making arguments about your level of involvement in the offense or the crimes which are alleged in this case to have occurred or of your role in those offenses or concerning your culpability? (*Curcio* Tr., 13: 9-13)

3

        d.      Are you comfortable that stand-by counsel representing you, and not your McDermott attorneys, if necessary, will decide whether or not to engage in the following activities on your behalf, and will actually engage in the activities if appropriate (*Curcio* Tr., 23: 11-16):
             i.     Use or advise on the use of court process to compel the production of documents from the Bank Clients, or to compel the attendance of witnesses who are employees or agents of the Bank Clients (*Curcio* Tr., 23: 5-8);
             ii.    Cross-examine witnesses who are employees of the Bank Clients should they testify at your trial (*Curcio* Tr., 12: 17-20); or
             iii.   Accuse the Bank Clients of knowing about, being complicit in, or otherwise not being a victim of the allegedly illegal transactions. (*Curcio* Tr., 22:21-23:3)
        e.      Do you understand each of the examples that I have given you? (*Curcio* Tr., 13: 22-14:1)

11. Tell me in your own words what your understanding is of the potential conflicts of interest related to the Bank Clients arising in this situation. (*Curcio* Tr., 14: 3-8)
12. Do you understand that the greatest danger to you is the inability to foresee all of the possible conflicts that might arise because of McDermott's simultaneous representation of the Bank Clients, in other unrelated matters, on the one hand, and the firm's representation of you, on the other? (*Curcio* Tr., 15:3-9)
13. Are you also aware that ____ of the ____ Bank Clients have issued written waivers of the dual representation? (*Curcio* Tr., 15: 11-12)
14. And you are aware that Citibank refused to enter into such a waiver. (*Curcio* Tr., 15: 15-16)

**E.**    **Potential Conflict of Interest Posed by McDermott's Representation of the Permanent Delegation to the European Union of the Republic of Turkey**

1. Have any of your attorneys from McDermott, including Mr. Harrison and Mr. Evans, informed you that their law firm also represents the Permanent Delegation to the European Union of the Republic of Turkey?
2. Have any of your attorneys from McDermott, including Mr. Harrison and Mr. Evans, informed you that even though they personally may not participate in the representations of the Permanent Delegation to the European Union of the Republic of Turkey, that they nevertheless have ethical obligations to the Permanent Delegation to the European Union of the Republic of Turkey because it is a client of the law firm that your lawyers also work for?
3. How long have you been aware of this issue? How much time have you spent discussing this issue with them?
4. Do you understand that the fact that your lawyers from McDermott represent you and simultaneously represent the Permanent Delegation to the European Union of the Republic of Turkey case may lead them to have loyalties divided between yourself and the Permanent Delegation to the European Union of the Republic of Turkey?

4

5. Do you understand that in some cases your lawyers from McDermott might have an incentive to put the interests of the Permanent Delegation to the European Union of the Republic of Turkey before yours?

6. Let me give you some examples of the ways in which the allegiance to the Permanent Delegation to the European Union of the Republic of Turkey of your lawyers from McDermott could adversely affect their representation of you in this case. This representation could affect the way that your lawyers consider and advise you:

    a. Whether, and when, you should plead guilty;
    b. Whether you should seek to cooperate with the Government;
    c. What defenses you should raise;
    d. Whether you should testify at trial;
    e. Which witnesses should be cross examined, and what questions they should be asked;
    f. Which witnesses should be called, and what other evidence to offer on your behalf;
    g. What arguments to make on your behalf to the jury;
    h. What arguments to make to the Court, and what facts to bring to the Court's attention, before trial, during trial, or at your sentencing.

7. Let me expand on some of those examples.

    a. For example, do you understand that your interest in a public trial of the charges in this case may be different from the interest of the Permanent Delegation to the European Union of the Republic of Turkey, and that your attorneys from McDermott cannot advise you to proceed to trial in a manner that would be adverse to the interests of the Permanent Delegation to the European Union of the Republic of Turkey?
    b. Do you understand that your attorneys from McDermott may advise you not to take positions in this case before trial, during trial, or at sentencing that are critical of the Permanent Delegation to the European Union of the Republic of Turkey, even if criticizing it might help your defense?
    c. Do you understand that your attorneys from McDermott may advise you not to seek to admit evidence that they view as adverse to the interests of the Permanent Delegation to the European Union of the Republic of Turkey, even if admitting that evidence might help your defense?
    d. Do you understand that your attorneys from McDermott, including Mr. Harrison and Mr. Evans, cannot negotiate on your behalf in a manner that would be adverse to the interests of the Permanent Delegation to the European Union of the Republic of Turkey, including by using any confidential information they may have learned pursuant to their representation of the Permanent Delegation to the European Union of the Republic of Turkey?
    e. Do you understand that your attorneys from McDermott cannot counsel or advise you to accept a disposition of the case that harms or is adverse to

5

            the interests of the Permanent Delegation to the European Union of the Republic of Turkey?

      f.     Do you understand each of the examples that I have given you?

8.     Tell me in your own words what your understanding is of the potential conflict of interest related to the Permanent Delegation to the European Union of the Republic of Turkey arising in this situation.

9.     Do you understand that the greatest danger to you is in the inability to foresee all of the possible conflicts that might arise because of McDermott's simultaneous representation of the Permanent Delegation to the European Union of the Republic of Turkey, on the one hand, and the firm's representation of you, on the other?

**F.**     **The Right to Conflict-Free Representation**

1.     Do you understand that, in every criminal case, including this one, the defendant is entitled to assistance of counsel whose loyalty to him is undivided, who is not subject to any factor that might in any way intrude upon an attorney's loyalty to his interests? In other words, do you understand that you are entitled to attorneys who have only your interests in mind, and not the interests of any other client? (*Curcio* Tr., 14: 23-25; 15: 18-16:2)

2.     Have you received any inducements, promises or threats with regard to your choice of counsel in this case? (*Curcio* Tr. 16: 8-10)

3.     Are you the one who selected McDermott to represent you in this case? (*Curcio* Tr., 16: 12-13)

4.     Do you understand that you have a right to consult with an attorney free from any conflict of interest about this issue? (*Curcio* Tr., 16: 15-17)

5.     And for that purpose, that is, the right to consult with an attorney who is conflict free, the Court appointed Joshua Dratel, as your independent counsel, and has given you the opportunity to consult with him with respect to any aspect of the information that I have been discussing with you today, correct? (*Curcio* Tr., 16: 19-22)

6.     Have you consulted with Mr. Harrison about the potential conflict of interest that I have described to you today? Has Mr. Harrison fully advised you about the issue? Do you wish to receive additional time to consult with Mr. Harrison? (*Curcio* Tr., 16: 24-17:8)

7.     After considering all that I have said today about the ways in which McDermott's representation of the Bank Clients alleged to be victims in your case may adversely affect your defense, do you nevertheless believe that it is in your best interest to continue with McDermott as the law firm representing you? Is that your wish? (*Curcio* Tr., 17: 13-20)

8.     After considering all that I have said today about the ways in which McDermott's representation of the Permanent Delegation to the European Union of the Republic of Turkey may adversely affect your defense, do you believe that it is in your best interest to continue with McDermott as one of the law firms representing you? Is that your wish?

9. Do you understand that by choosing to continue with McDermott as the law firm representing you, you are waiving your right to be represented solely by attorneys who have no potential conflict of interest? (*Curcio* Tr., 17: 22-25)
10. Are you knowingly and voluntarily waiving your right to conflict-free representation? (*Curcio* Tr., 18: 2-4)
11. And, if, you are convicted in this case, do you waive any post-conviction argument, on appeal or otherwise, that, by virtue of McDermott's representation of the Bank Clients, you were denied effective assistance of counsel? (*Curcio* Tr., 18: 6-11)
12. 12. Do you waive any post-conviction argument, on appeal or otherwise, that by virtue of McDermott' representation of the Permanent Delegation to the European Union of the Republic of Turkey, you were denied effective assistance of counsel?

G. **Conclusion**

1. Is there anything that I have said that you wish to have explained further? (*Curcio* Tr., 18: 17-19)