

Boston  Brussels  Chicago  Dallas  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

November 27, 2017

**VIA HAND DELIVERY**

The Honorable Richard M. Berman
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 17B
New York, New York 10007

           Re:    <u>United States v. Zarrab, et al.</u>, No. S4 13-cr-867 (RMB)

Dear Judge Berman:

      We represent the defendant Mehmet Hakan Atilla in the above-referenced matter and we write to object vigorously to GX 8001 (attached as Exhibit 1), which is an exhibit that the government's proposed expert, Mark Dubowitz, apparently intends to display to the jury.  As the Court has recognized, this is not a terrorism case and there are no legal or factual allegations of terrorism against Mr.Atilla.  Accordingly, we write to object to proposed government exhibit ("GX") 8001, which is a slide deck that contains repeated references to "terrorism," "jihad", taking "66 U.S. citizens hostage", emblems of a fist holding an automatic weapon and other blatant efforts to falsely present to the jury that Mr. Atilla has some connection with terrorism.  GX 8001 is highly prejudicial and should not be allowed to be presented to the jury.

      On August 16, 2017, the government provided the defense notice that it would be calling Mr. Dubowitz as an expert witness and four bullet points outlining his anticipated testimony.  That proposed testimony was the subject of pretrial motion practice, in which the Court ruled as follows:

> Mark Dubowitz and Jonathan Schanzer may testify as to the general purpose(s) of the sanctions regime, the role of certain sanctioned entities and individuals in the Iranian government and economy and, specifically, entities and individuals who will be discussed by fact witnesses in connection with the offense conduct in this case. They may also testify as to the orders and regulations under which those individuals were designated, and the economic

        relationship between Iran and Turkey during the time period charged in the Indictment.

ECF No. 357, at 3-4.

Now that the government has finally produced GX 8001, it is clear that the government intends to go far beyond the Court's ruling and present to the jury a summary slide deck that contains a number of highly prejudicial terrorism-related references and illustrations which have nothing to do with Mr. Atilla. While we recognize the general nature of Mr. Dubowitz' testimony has been ruled admissible, given this proposed slide deck, we are compelled to object to this exhibit and related testimony. Perhaps the most prejudicial aspects of the slide deck is that it contains (1) eleven references to the words "terror" or "terrorism"; (2) fourteen references to "nuclear weapons" or "weapons of mass destruction"; (3) three different uses of the word "jihad"; (4) an emblem with a fist carrying an automatic weapon; (5) pictures and descriptions of a number of Middle-Eastern sanctioned persons that have absolutely no connection to Mr. Atilla; and (6) references to several violent acts of terrorism and the taking of 66 American hostages in the U.S. Embassy in Iran in 1979. GX 8001. None of this has any connection with Mr. Atilla whatsoever. Mr. Atilla is a bank employee - not a member of a terrorist organization. Nor is he charged with any terror-related crime. These repeated references to terrorism and violence serve only to improperly poison the jury and violate Mr. Atilla's constitutional right to a fair trial. *See United States v. Elfgheeh*, 515 F.3d 100, 127 (2d Cir. 2008)("There can be little doubt that . . . evidence linking a defendant to terrorism in a trial in which he is not charged with terrorism is likely to cause undue prejudice").

In *United States v Al-Moayad*, a case in which the defendant was actually charged with terrorism crimes (conspiracy to provide material support to terrorist organizations), the trial conviction was reversed because the Court allowed a witness "to testify at length about [a] suicide bombing" even though "the defendants were not charged with planning or carrying out the [] bombing." 545 F.3d 139, 160 (2d Cir. 2008). The defendant argued that the testimony about the bombing and Al-Qaeda training camps was irrelevant, prejudicial and highly inflammatory and the Circuit "agree[d] that the district court should have excluded the challenged testimony under Rule 403, and that its failure to do so deprived the defendants of a fair trial." *Id.* at 159. In this case, the terrorism evidence is even more inappropriate than in *Al-Moayad*, because Mr. Atilla is not charged with any act of terrorism, nor are there even any factual allegations linking him to terrorism or the support of terrorism in any way.

Perhaps realizing that the actual evidence against Mr. Atilla is not as strong as the government hoped it would be, it now seeks to invite the jury to convict based upon "fear and guilt by association" by presenting to the jury repeated references to terrorism and pictures of Middle Eastern persons who have been sanctioned in an attempt to implicitly tie those unrelated terrorist acts and those Middle Eastern-looking villains to Mr. Atilla, even though Mr. Atilla has no connection with them at all. *See United States v. Sedaghaty*, 728 F.3d 885, 917-918 (9th Cir. 2013)(cautioning against the use of terrorism references in cases where the government "does

not allege material support to terrorism" and noting that the Circuit is "confident that the district court will recognize the fine line separating necessary and probative evidence of willful falsity from evidence that would cast [defendant] in the role of a terrorist based on appeals to fear and guilt by association and thereby unduly prejudice the proceedings."). By way of example, GX 8001 repeatedly refers to evidence about "Iranian extremist storm[ing] [the] U.S. embassy in Tehran and tak[ing] 66 U.S. citizens hostage" in 1979. GX 8001, at 5. The Tehran embassy hostage taking has nothing to do with Mr. Atilla or the charges in this case – Mr. Atilla was nine years old in 1979. Similarly, pictures and references to "terror," "terrorism," "jihad," and sanctioned and un-sanctioned Middle Eastern people that have nothing to do with Mr. Atilla, or this case, should be excluded. GX 8001, at 3, 4, 8, 19, 29, 30.

While the Court has ruled that the term "economic jihad" as referenced in one letter by a co-defendant is admissible (with a corresponding limiting instruction), the government should not be allowed to repeat it over and over again, particularly not in conjunction with a picture of Iranian Supreme Leader Ali Khameni and a speech made on March 21, 2011 which are unrelated to Mr. Atilla. GX 8001, at 2. The government then repeats the word "jihad" three times in its not so subtle effort to brand Mr. Atilla as a terrorist. Though we vehemently object to this highly inflammatory term being used at all in Mr. Atilla's trial, we respectfully submit that if the Court does allow the government to reference the term "jihad," the Court should issue an instruction that the term "jihad" does not mean violent terroristic acts as the government is trying to suggest to the jury. Particularly in the context of the referenced speech, in which the references is to "economic jihad" the reference is much more benign and the jury should be so instructed. The jury should be instructed as follows:

> The literal meaning of Jihad is struggle or effort." *See* BBC, *Religions, Jihad*, http://www.bbc.co.uk/religion/religions/islam/beliefs/jihad_1.shtml. The word refers to "a range of activities all based on the Arabic meaning of the word 'exerted effort'" including 'exerting effort to change oneself.'" Brian Handwerk, *What Does "Jihad" Really Mean to Muslims?*, National Geographic News (Oct. 24, 2003). Jihad has "often been used to denote nonviolent and purely internal struggles, such as attempts at personal and spiritual movement, or social activism." Darryl Li, *Jihad in a World of Sovereigns: Law, Violence, and Islam in the Bosnia Crisis*, 41 LAW & SOC. INQUIRY 371 (Spring 2016).

GX 8001 also contains repeated references to numerous sanctions regimes which are not at issue in the trial at hand. This will lead to confusion amongst the jury about which sanctions are relevant, which sanctions are applicable and which sanctions the defendant has been charged with violating. Faced with an overwhelming and confusing number of references to numerous irrelevant sanctions, many of which have been repealed, the government simply invites the jury to throw up their hands and decide without reference to any actual evidence that the defendant must have violated some of these sanctions. The slide deck also references the United Nation's efforts to block Weapon of Mass Destruction proliferators, which has absolutely no applicability to this case.

Letter to The Honorable Richard M. Berman
November 27, 2017
Page 4

      The presentation also contains numerous subjective descriptions by Mr. Dubowitz that have nothing to do with his expert opinion and are outside the scope of any expert, including Iran's supposed "intransigence" to the international community, his opinion that Mahmoud Ahmadinejad was a "Hardline Iranian President" that was "re-elected" in a case of "wide-scale voter fraud" and vague and unsupported conclusory statements such as "[NIOC] was involved in the Iranian government's efforts to evade sanctions and engage in deceptive transactions."  GX 8001, at 11, 13.  GX 8001 also simply includes numerous conclusions reached by the Treasury Department, not by Mr. Dubowitz, which Mr. Dubowitz should not be allowed to testify about. GX 8001, at 9 ("Treasury noted that the IRGC was coordinating efforts to evade crude oil sanctions (especially EU sanctions) and that the 'IRGC's influence has grown within NIOC"), 12 ("Mahan ferries weapons, funds, and personnel to Syria and secretly transports Iranian officers to Iraq on behalf of the IRGC-QF, according to the U.S. Treasury."), 15 (Bank Saderat "'facilitates Iran's transfer of hundreds of millions of dollars to . . . terrorist organizations,' according to the U.S. Treasury."), 18 ("Treasury noted that Iranian financial institutions, including the central bank, engage in deceptive practices to evade sanctions and conduct illicit activities.").

      For the foregoing reasons, proposed GX 8001 should not be allowed to be presented to the jury.

      Respectfully submitted,

      /s/     Todd Harrison

      Todd Harrison

CC:     All parties