**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 6, 2017

**BY ECF**

Honorable Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1650
New York, New York 10007

      Re:    **United States v. Mehmet Hakan Atilla,**
              **S4 15 Cr. 867 (RMB)**

Dear Judge Berman:

      The Government writes in anticipation of the testimony of several upcoming witnesses. In connection with the Government's motion *in limine* to preclude certain cross-examination of former Department of the Treasury officials who will be called as fact witnesses in this case, the Court noted that it would "curtail any cross examination that goes well beyond direct testimony." The Government wishes to provide the Court with additional information regarding one such potential area, and reassert our view that the former Department of Treasury officials testifying as fact witnesses should not be permitted to be cross-examined on the prior policies or practices of that Department, other than what was communicated specifically to the defendant during their meetings with him.

      As the Court is aware, one of the Government's theories of criminality is that the defendant participated in a conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") alleged in Count Two of the Superseding Indictment by, among other things, designing transactions to "avoid" the imposition of sanctions (known as "secondary sanctions") on his employer, Turkiye Halk Bankasi ("Halk Bank"), that could have been imposed based on the bank's facilitation of, among other things, sanctionable transactions in gold for the benefit of the Government of Iran or sanctionable transactions in Iranian oil proceeds.[1] According to the Office of Foreign Assets Control ("OFAC"), the unique circumstances of this case—involving willful attempts to mislead OFAC officials and the conscious design of a transactional scheme for the express purpose of avoiding the imposition of secondary sanctions (*e.g.*, being prohibited by the Secretary of the Treasury from accessing U.S.-based correspondent or payable-through accounts)—have not previously been confronted. As such, OFAC has not previously evaluated

---

[1] The Government also alleges that, as part of the charged scheme, the defendant conspired to permit sanctioned entities to conduct U.S. dollar transactions through U.S.-based correspondent bank accounts.

the applicability of the avoidance prohibitions in the secondary sanctions to the kind of conduct described in the Superseding Indictment. OFAC has told the Government that it has historically taken the position that the prohibitions contemplated by the secondary sanctions—including implementing enforcement actions, levying fines, or taking other punitive measures for violating the prohibitions—attach only after a foreign financial institution has been sanctioned by the Secretary of the Treasury.

OFAC's historical practice, however, does not conflict with the Court's interpretation of the criminal statute at issue here. As previously articulated in the Government's opposition to the defendant's motion to dismiss and the Government's proposed jury instructions, the plain language of 50 U.S.C. § 1705(a) and the applicable regulations clearly authorizes criminal penalties for willfully conspiring to engage in transactions for the purpose of avoiding the prohibitions imposed under the secondary sanctions. The Court has already denied the defendant's motion to dismiss. Moreover, the Department of the Treasury has noted that it defers to the Department of Justice—represented in this case by the United States Attorney's Office for the Southern District of New York—with respect to criminal prosecutions.

Nor is OFAC's historical practice relevant to any element of the offense alleged in Count Two of the Indictment.[2] As the Government has previously noted, it intends to call as fact witnesses the actual officials who communicated OFAC's enforcement priorities to the defendant personally, and, "absent Defendant's own testimony or other direct evidence that he believed his conduct to be lawful, there is no basis on which the jury could properly infer anything about Defendant's state of mind from the opinion of [a] third party expert witness who likely has never communicated with the Defendant." *United States* v. *Banki*, No. S1 10 CR. 08 (JFK), 2010 WL 1875690, at *2 (S.D.N.Y. May 10, 2010).

---

[2] Obviously, as to the other non-IEEPA counts of conspiracy to defraud the United States, bank fraud, conspiracy to commit bank fraud, money laundering, and conspiracy to commit money laundering, OFAC's practice is of even less relevance. We also note that OFAC's practice relating to these secondary sanctions does not relate to, or affect in any way, the other theory of criminal liability under Count Two, established by the evidence in this case, that the defendant and his co-conspirators agreed to cause the exportation of services from the United States for the benefit of the Government of Iran, to wit, the exportation of U.S. dollars from correspondent banking accounts in the United States to fulfill Iranian payment orders.

For the foregoing reasons, we reaffirm our view that the Court should limit cross-examination of fact witnesses that seek to elicit legal opinions or historical regulatory practices that were not discussed in meetings between the witnesses and the defendant.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney for the
Southern District of New York

By: _____/s/_____
Michael D. Lockard
Sidhardha Kamaraju
David W. Denton, Jr.
  Assistant United States Attorneys
Dean C. Sovolos
  Special Assistant United States Attorney
(212) 637-2193/6523/2744/2213

cc: All Counsel (by ECF)