UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

v. No. 15 Cr. 867 (RMB)

REZA ZARRAB, Sentence

Defendant.

------------------------------x

New York, N.Y.
July 14, 2026
11:00 a.m.

Before:

HON. RICHARD M. BERMAN,

District Judge

APPEARANCES

JAY CLAYTON
United States Attorney for the
Southern District of New York
MICHAEL LOCKARD
Assistant United States Attorney

ROBERT ANELLO
LUCAS CARTER
Attorneys for Defendant

Also Present:

Michelle Millan, USPO

THE COURT: So I thought I would just give a brief introduction. This is *United States v. Reza Zarrab.* It is one of three related cases under the docket 15 Cr. 876, and it involves -- they all involve several cases, a billion dollar scheme to evade U.S. trade sanctions against Iran. This case that we're dealing with today, the Zarrab case, involves a Turkish-Iranian gold trader and businessman, Reza Zarrab. He has acknowledged his participation and pled guilty on October 26, 2017. He pled to conspiracy to defraud the United States; conspiracy to violate the International Emergency Powers Act; attempt and conspiracy to commit bank fraud; bank fraud itself; money laundering; and conspiracy to commit an offense against the United States. Mr. Zarrab has cooperated with the Southern District of New York prosecutors following his arrest, and he is being sentenced today, which is the purpose of this proceeding. I might mention to you that a lot of the information that I'm relying on and mentioning to you was prepared by our probation department, which is our practice. And, in particular, in this case, Ms. Michelle Millan has done an outstanding job in preparing a presentence investigation report in this case.

So I said there were three cases. This today is one. A second is *United States v. Atilla.* It involved a man named Mehmet, M-E-H-M-E-T, Hakan, H-A-K-A-N, Atilla A-T-I-L-L-A, who was previously the deputy general manager of international

banking at Halkbank, which is a Turkish bank, but the majority owned by the Government of Turkey. Mr. Atilla was arrested in New York on March 27, 2017, while he was in the United States participating in a bond offering. He was arraigned on March 27, 2017 in New York City. I'm skipping over a lot of issues -- a lot of facts, rather, but just to get to the bigger picture. Mr. Atilla went to trial and was found guilty by a Southern District of New York jury on January 3, 2018. He, Mr. Atilla, was convicted of conspiracy to defraud the United States; conspiracy to violate the International Emergency Powers Act; attempt and conspiracy to commit bank fraud; bank fraud itself substantively; and money laundering. Mr. Atilla was sentenced to 32 months of imprisonment on May 16, 2018, and he was released from prison on or about July 19, 2019, and immediately returned to Turkey.

The third case was *United States v. Halkbank.* Halkbank was indicted on October 15, 2019, and was charged again with conspiracy to defraud the United States; conspiracy to violate the International Emergency Powers Act, attempt and conspiracy to commit bank fraud; bank fraud substantive; and money laundering. The prosecutors here in the Southern District of New York and Halkbank engaged in years of intensive federal court litigation, including in this court, the district court. It also involved the Second Circuit Court of Appeals, and also the United States Supreme Court. That litigation went

on until February 28, 2026, when the parties, that is to say the prosecutor and the bank, entered into a deferred prosecution agreement, also known as a DPA. A DPA is an agreement by the government not to pursue a criminal case as long as the defendant abides by an agreed set of conditions. The parties also moved at that time to dismiss the case entirely -- we're talking about *U.S. v. Halkbank* -- dismiss the case entirely before trial. The Halkbank DPA included a third-party independent expert, Ernst & Young in this case, review of the Halkbank anti-money laundering and compliance programs. Ernst & Young affirmed that Halkbank had adhered to the Office of Foreign Sanctions Control regulation. And the U.S. prosecutor stated that Halkbank had satisfied its obligations with the DPA.

The Court dismissed the Halkbank case on consent of the parties, and at their request, on June 18, 2026, following written and oral submissions and two public hearings concerning the DPA and the dismissal on March 11, 2026, and June 18, 2026, respectively. So that is just some background here.

Now I am going to turn back to *U.S. v. Zarrab.* In sentencing a defendant following the Supreme Court decisions in *Gall,* G-A-L-L, *v. U.S.*, *Kimbrough,* K-I-M-B-R-O-U-G-H, v. *U.S.*, and *United States v. Booker,* and the Court also is guided by Second Circuit decisions in the *United States v. Crosby* and *United States v. Regalado,* R-E-G-A-L-A-D-O. The Court must,

and in this case I believe I have, considered the sentencing guidelines and all of the other relevant factors listed at 18 U.S.C. Section 3553(a), including but not limited to the following: The nature and the circumstances of the offense or offenses; and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide a just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with any needed education or vocational training, medical care, or other correctional treatment in the most effective manner. We also look at the kinds of sentences that are available, the kinds of sentence in the sentencing range established under the sentencing guidelines. We look at any policy statements that may have been issued by the United States Sentencing Commission; the need to avoid unwarranted sentence disparities among similarly situated defendants; and the need to, in some instances, provide for restitution.

The probation department here in the Southern District, which is as, I said before, outstanding, and the Court determined in this case that the offense level is 30. The Criminal history Category is I. The applicable but nonmandatory sentencing guidelines range is 97 to 121 months of incarceration. And the Court has considered the guidelines and all of the other factors found at 18 U.S.C. Section 3553(a) as

follows: Under the rubric and nature and circumstances of the offense or offenses this is the following:

By indictment December 15, 2015, Mr. Zarrab was charged as I mentioned with conspiracy to defraud the United States; conspiracy to violate the International Emergency Economic Powers Act, conspiracy to commit bank fraud; bank fraud substantive; conspiracy to commit money laundering; and money laundering; and conspiracy to commit an offense against the United States. Mr. Zarrab was arrested, as I mentioned, on March 19, 2016 at Miami International Airport in Florida while en route to visit Disney World with his then four-year-old daughter. Mr. Zarrab was detained and thereafter spent 22 days, approximately, in the Federal Detention Center in Miami, Florida.

On April 26, 2016, Mr. Zarrab was transferred to the Metropolitan Correctional Center in New York City. He was arraigned. He pled not guilty on April 27, 2016, and on June 16, 2016, the Court denied bail "after finding both that Mr. Zarrab would be a flight risk and that there were no conditions or combinations of conditions of release that would reasonably assure his appearance." That dates back to June 16, 2016. Eighteen months later, that is to say on or about October 26, 2017, Mr. Zarrab pled guilty pursuant to what is called a cooperation agreement with the United States dated October 20, 2017. Mr. Zarrab agreed to truthfully and

completely disclose all information concerning all matters about which the U.S. Government inquired of him. And it is my understanding clearly that he has met his agreement in that regard. The government agreed to inform the Court of the nature and the extent of Mr. Zarrab's cooperation and also to file a motion pursuant to Section 5K1.1 of the sentencing guidelines, a so-called 5K1.1 letter, and 18 U.S.C. Section 3553(e), requesting the Court to sentence the defendant, in this case Mr. Zarrab, in light of his cooperation. And that has happened. The government has submitted a 5K1.1 letter on behalf of the prosecutor and also Mr. Zarrab.

Mr. Zarrab acknowledged that he committed the charges set forth in the superseding information. Pursuant to the cooperation agreement, Mr. Zarrab testified among other things at the 2017 Southern District of New York trial of defendant, Mehmet Atilla, who I referred to a few minutes ago. Mr. Zarrab stated that he executed a money-laundering scheme to evade U.S. sanctions with Mr. Atilla and also Halkbank employees. I'm referring now to the trial transcript dated November 29, 2017.

On January 3, 2018, the Southern District of New York jury convicted Mr. Atilla, as noted before, of conspiracy to defraud the United States; conspiracy to violate the International Emergency Economic Powers Act; bank fraud; conspiracy to commit bank fraud; and conspiracy to commit money-laundering. And on May 16, 2018, Mr. Atilla was

sentenced to 32 months of incarceration with credit for the time he had already been served -- he had already served rather. The government did not seek and the Court did not impose -- this is with respect to Mr. Atilla -- restitution, forfeiture, or supervised release in Mr. Atilla's sentencing.

Returning back for the moment to Mr. Zarrab. Mr. Zarrab is, as I understand it, 42 years old. He was born on September 12, 1983 in Tehran, Iran. Mr. Zarrab reportedly completed the equivalent of the ninth or tenth grade of high school. He possesses skills in computer coding. Mr. Zarrab is married. He has a 15-year-old child from his previous marriage. Mr. Zarrab's previous marriage in 2010 was with a very well-known Turkish singer. Mr. Zarrab's father passed away two and one-half years ago from Alzheimer's disease and cancer, and his mother is a homemaker.

Mr. Zarrab is currently unemployed. He's supported largely by a family. According to the probation department, Mr. Zarrab's current net worth is in negative. Mr. Zarrab was released on bail on or about January 29, 2018 after spending 22 months in detention. He has been under extensive pretrial services supervision, and his bail conditions have included home detention, financial bond, travel restricted to the Southern and Eastern Districts of New York, and supervision as directed by the pretrial services of probation.

The Court has subsequently modified Mr. Zarrab's bail

conditions, for example, by removing home confinement. Mr. Zarrab has maintained compliance with pretrial services' conditions without supervision for roughly a period of six to eight years. Moving to the sentence, which I know you're all anticipating. First is the question of incarceration. The probation department recommends time-served on all counts, meaning there would be no additional incarceration. Probation confirms that Mr. Zarrab was an important witness in the trial of Mr. Atilla and provided valuable information to the United States prosecutors regarding Halkbank, the Turkish owned bank that facilitated the scheme.

Defense counsel also requests a sentence of time served. Defense counsel points out that for approximately or an excess of eight years Mr. Zarrab has engaged in extraordinary and unprecedented cooperation. Defense counsel also states that Mr. Zarrab participated in frequent and lengthy meetings with the government and to prepare diligently for his testimony, including diagrams, timelines, and spreadsheets depicting payment systems that the government used as demonstratives in Mr. Atilla's trial. Defense counsel also submitted over a dozen supportive letters written on Mr. Zarrab's behalf, as well as a letter written by him on his own behalf. Mr. Zarrab's supporters describe him as supportive, caring, and deeply attentive to the people close to him.

Mr. Zarrab expresses remorse for his actions and he accepts full responsibility for the consequences of his actions, that those consequences have come about.

The government has submitted the so-called 5K1.1 letter in its sentencing -- or as its sentencing submission. In the 5K1.1 letter, the government points out that Mr. Zarrab's cooperation made him a valuable trial witness. Mr. Zarrab's testimony was invaluable in assisting the jury and the Court in understanding a complex scheme that repeatedly evolved and adapted to pressures from Treasury officials. Mr. Zarrab also authenticated and corroborated the wiretap, text message, and email evidence, and was able to explain to the jury the issues that were discussed. The government also reveals that another inmate approached Mr. Zarrab while incarcerated and warned that he had been paid to kill Mr. Zarrab for being a cooperator.

The government is not seeking a term of additional incarceration apart from the incarceration that he has already succeeded with. The government states that Mr. Zarrab has complied with the terms of his cooperation agreement, and he has clearly provided substantial assistance. The government moves the Court to sentence Mr. Zarrab with a sentence that is below the otherwise applicable guideline range. The Court, that is to say this Court, imposes or will impose in a few minutes a sentence of time served already on all counts in

light of Mr. Zarrab's valuable cooperation with the government and Mr. Zarrab's 22 months of incarceration already served. Mr. Zarrab's cooperation was the foundation of the government's case in the Atilla trial, and the government has stated that Mr. Zarrab would have been called upon should there have been a further trial.

Just as a note, there are a few what are called "redactions" in the defense sentencing submission and letters, but none -- and none in the government's submission. The Court directed the parties to make public as much information as possible while still preserving confidentiality of protectable information. Cite is In re *Celsius,* C-E-L-S-I-U-S, *Network,* Bankr. S.D.N.Y. 2022. In appropriate instances, protecting the safety of cooperating witnesses with, undoubtedly, warrant redactions. Cite is *United States v. Akhavan,* A-K-H-A-V-A-N, 532 F. Supp. 3d 181, Southern District case from 2021.

The defense submissions include some redactions, but these are, in my opinion, narrowly tailored to serve the following interests, such as: Safety of parties; protection of any ongoing or future investigations; and protection of personal information, for example, such as medical issues. Cite is *United States v. Amodeo*, Second Circuit at 1995, and *United States v. Pasqua,* P-A-S-Q-U-A, 2020 WL 7338082, Southern District case from 2020. So that is the incarceration aspect. Time served is obviously and appropriately being applied in

this case.

Supervised release is the next factor. The probation department has recommended one year of supervised release, including a mental health treatment. The probation department states that supervision would monitor the defendant's actions in the community, facilitate rehabilitation, and detect and deter any new criminality. Defense counsel, on the other hand, points out that Mr. Zarrab has complied with his bail conditions for over eight years without issue and has proved to the community, the probation office, and the Court that he has learned his lesson, rehabilitated himself, and is an upstanding member of society. The Court agrees with that. Defense counsel also states that supervised release is unnecessary because Mr. Zarrab has already successfully integrated himself into community life. And the government, incidentally, is not seeking a term of supervised release. The Court sees no need to impose any additional term of supervised release or supervision in any fashion. As noted, Mr. Zarrab has been closely supervised by probation and the government on release for year. And Mr. Zarrab has been fully in compliance with his bail conditions. Moreover, Mr. Zarrab has no history of illicit substances. So no supervised release.

We move now to restitution. The probation department does not recommend restitution because "victims in this case are unascertainable." Moreover, the probation department

states correctly, in my judgment, that Mr. Zarrab is supported by relatives. And according to the probation department, Mr. Zarrab's current net worth is negative. Defense counsel argues that restitution is unwarranted here because there is no victim in this case for purposes of restitution. The Court agrees with that. Defense counsel states that the absence of identifiable victims precludes the Court from imposing restitution. This is a quote that's supporting that proposition, "there is no one particular person or group of persons that can be identified as victims," under 18 U.S.C. Section 3663A. "By its plain language, the Mandatory Victims Restitution Act requires restitution only where the offense has had an identifiable victim or victims." The cite is *U.S. v. Gourevitch,* G-O-U-R-E-V-I-T-C-H, 2014 WL 4724701, an Eastern District of New York case dated September 23, 2014. Defense counsel also states that in processing Mr. Zarrab's transactions, the banks involved earned money in the form of fees and suffered no pecuniary harm. The government does not seek restitution.

Similarly, the Court does not impose and will not impose here restitution because as the parties and the probation department point out, there is no one particular person or group of persons that can be identified as victims under 18 U.S.C. Section 3663A. In fact, no individual or group has submitted any written motion in this case seeking

restitution. And by its plain language, the Mandatory Victim Restitution Act requires restitution only, as I said before, where the offense had an identifiable victim or victims.

The Court also notes that during the *Halkbank* case, the Court received and docketed a letter dated June 15, 2026, from the law firm of Gibson Dunn, and the attorney is Robert Weigel, W-E-I-G-E-L, stating that they represent -- and this is a quote. This is from Mr. Weigel. He says, "there are 1,121 victims and surviving family members of terrorist attacks." That is the Gibson Dunn letter dated June 15, 2026. The Gibson Dunn letter stated also that its client holds federal judgments totaling over $10 billion against Iran. That is the Gibson Dunn letter dated June 15, 2026, page one. Mr. Weigel stated that Halkbank's conduct impaired their ability to collect on their judgments against Iran.

Mr. Weigel did not participate in the March 11, 2026 Halkbank hearing where the DPA was discussed, even though the Court provided non-parties with an opportunity to be heard. Mr. Weigel did not intervene and submit a motion demonstrating that his clients were victims. Gibson Dunn, on behalf of its client, previously filed suit. This is just to round out the picture. I'll start again. Gibson Dunn, rather, on behalf of its clients previously filed suit against Halkbank on March 27, 2020 in the Southern District of New York before the Honorable Denise Cote. The case before Judge Cote sought a turnover of

funds that allegedly belonged to Iranian state-owned enterprises and were fraudulently conveyed by Halkbank. The cite is *Owens v. Turkiye Halk Bankasi,* 2021 WL 638975, a Southern District case from 2021. Judge Cote dismissed the case on the grounds forum non conveniens because the vast majority of plaintiffs reside overseas rather than in the United States, and the Second Circuit Court of Appeals affirmed. *Owens v. Turkiye,* Second Circuit decision, May 2, 2023.

In fact, Gibson Dunn informed the government that they do not intend to seek restitution from Mr. Zarrab. The government has confirmed with Gibson Dunn and has been advised that its clients do not intend to assert crime victim rights with respect to Mr. Zarrab. Parenthetically, before I turn to the topic of forfeiture, Gibson Dunn's clients would not appear to qualify as victims vis-a-vis Mr. Zarrab under the Crime Victims Right Act or the Mandatory Victims Restitution Act. The cite is *In re Rendon,* R-E-N-D-O-N, Second Circuit decision from 2009. Restitution may be imposed only for losses arising from the specific conduct that is the basis of the offense of conviction. Cite is *U.S. v. Goodrich,* 12 F.4th 219, Second Circuit case from 2021.

Turning to forfeiture, the probation department advises that Mr. Zarrab has already met his forfeiture obligation, which is to say that he forfeited to the United

States Government a boat valued at $288,690 and currency, cash, valued at $88,102.59. On January 30, 2020, the parties submitted a consent preliminary order of forfeiture as to specific property. The specific property in the order refers to that boat that Mr. Zarrab agreed to voluntarily surrender to the government and the cash proceeds from the offenses in the amount of $88,102.59. And the Court entered the consent preliminary order of forfeiture in the total amount of $376,792.59 on or about February 6, 2020.

Defense counsel states that no forfeiture beyond those items, the boat and the cash, is warranted. And, by the way, the Court agrees, because among other things, Mr. Zarrab no longer has possession of any other proceeds of the offense conduct. Assets worth over $172,000,000 were seized as a consequence of Mr. Zarrab's plea and cooperation. Defense counsel also states that Mr. Zarrab and his family have lost at least $150,734,799 from maintenance and repair fees, lost rental opportunities, and lost value. Mr. Zarrab already has lost, as a result of his cooperation, more than his share of the proceeds from the crimes charged. That is from the defense submission at page 44. The government is not seeking any additional forfeiture beyond the $376,792.59. The government states that at the time of Mr. Zarrab's guilty plea, he agreed to forfeit all of his right, title, and interest in any proceeds obtained from the charged offenses and any property

involved in the money laundering offenses. The cite is the government's 5K1.1 letter at page 17. The Court imposes no additional forfeiture beyond Mr. Zarrab's boat valued at $288,690 and the $88,102.59 in cash, as the defense points out that any further forfeiture would impair Mr. Zarrab's livelihood and ability to rebuild. That is found at the defense submission at pages 43 and 44.

So we have two more brief topics. One is fine, and one is special assessment. Let's start with fine. The probation department has not recommend imposing a fine because after examining Mr. Zarrab's finances, probation concluded that Mr. Zarrab's financial position is negative. Mr. Zarrab is unable to remit a fine. He is unable to pay a fine because his current net worth is negative in a very substantial amount, and he is unemployed. Mr. Zarrab has suffered extraordinary financial losses. According to defense counsel, Mr. Zarrab has assets worth over $172,000,000 seized as a consequence of his plea and cooperation. That's found at page 44 of the defense submission. And the government is not seeking a fine. The Court similarly is not imposing a fine because Mr. Zarrab does not appear to be able to pay a fine. Cite is *U.S. v. Acevedo,* 2021 WL 5910594, a Southern District New York case from 2021.

And then, finally, special assessment. The probation department recommends that Mr. Zarrab must pay the United States a special assessment of $700. Defense counsel agrees

that the Court should impose a mandatory special assessment of $700. So this an amount that is mandatory by the statute. The government has not taken a position on the special assessment. The Court has, and the Court imposes a $700 special assessment of $100 per count, and it is mandatory pursuant to 18 U.S.C. Section 3013.

So I'm just going to take a pause for one minute, and then get to the formal pronouncing sentence, which I'm sure you know from what has been said so far what the sentence will be. There will be an opportunity in the next phase pronouncing sentence to hear from Mr. Zarrab, defense counsel, the government, and so forth, but if I can just take one or two minutes for absence. Thanks.

(Recess taken)

THE COURT: Thank you. Please be seated.

So this is the conclusion phase where I am pronouncing sentence that I'm imposing. This is the format that we typically use. First of all, I have received, as the parties have, the probation department's presentence investigation report, which as I said before, it's a very good job that was done, in my opinion, by probation, prepared on May 14, 2026, together with the addendum dated February 24, 2026, and the sentencing recommendation approved on June 18, 2026. I've also received the help of the defense sentencing submission date July 2, 2026, and the government's 5K1.1 letter dated July 6,

2026.

So the question for defendant and counsel first. Have Mr. Zarrab and Mr. Atilla had an opportunity to read and discuss the presentence investigation report as well as the addendum and the sentencing recommendation? And the question is, have each of you, in fact, read and discussed the presentence report?

MR. ANELLO: We have, Judge. Thank you.

THE COURT: Mr. Zarrab as well?

THE DEFENDANT: Yes, your Honor.

THE COURT: Thank you. Do either of you have any objections to the contents of the presentence report, Mr. Anello?

MR. ANELLO: Your Honor, we have made everything on the record, which your Honor has. We have no further comments, but we do also join you in thanking the pretrial officer for the very thorough work she did, and we have no other comments.

THE COURT: Thank you. Mr. Zarrab, the same?

THE DEFENDANT: The same, your Honor.

THE COURT: Thank you. Does defense counsel wish to be heard at this time? And then I'm going to ask Mr. Zarrab if he wishes to be heard as well.

MR. ANELLO: Your Honor, I have nothing too dramatic to add, but I want to thank the Court on behalf of the family members. Some of them traveled from Turkey. And friends --

many could not be hear, but I want to thank the Court for its thoughtful consideration, not only in the most recent time, but the ten years that you have operated on this case, and most, for, me about these last eight years, you have spent an awful lot of time learning things and handling things, and I think your wise advice during the eight years of bail has been very helpful.

THE COURT: It feels like 25 years.

MR. ANELLO: Felt like it. But, Judge, really, I do want to thank you for all the courtesy you've extended and all the attention you paid to the case. I have nothing further. I think Mr. Zarrab would just say a few words.

THE DEFENDANT: Thank you, your Honor, for allowing me the opportunity to speak. For the --

THE COURT: One second. Is there a microphone that -- yes.

THE DEFENDANT: I would like to thank you, your Honor, for your consideration. Not only for the case, but for the safety for me and my loved ones. I would like to thank the government and also federal agencies and law enforcement. They have put so much effort for the safety, protecting me and the loved ones. And thank you, your Honor.

THE COURT: You're very welcome. Thank you.

How about the government, did you want to have the opportunity to make a statement?

MR. LOCKARD: Your Honor, just a couple of small housekeeping matters. First, I wanted to put on the record, the government also has reviewed the PSR and has no objection. Second, with respect to our motion under Section 5K1.1 of the guideline, I think it is a technical matter. Our sentencing submission said that we would be making that motion at sentencing, and the government now formally makes that motion. I wanted to just very briefly clarify or ask some additional context to government's position on forfeiture, which the Court correctly noted, we are not seeking any additional forfeiture. And that is because, as the Court noted, while Mr. Zarrab made substantial proceeds from the offense, those proceeds are in Turkey and have been, along with additional property, seized, restrained, put into receivership, or trusteeship, or otherwise impaired in Turkey, and whatever right, title, or interest Mr. Zarrab, has, he cannot as a practical matter, exercise or forfeit those interests. So I just wanted to explain the government's position on that. Other than that, I have nothing further to add.

THE COURT: Thank you. Mr. Anello, I meant to ask. I know that there are relatives or friends here. Did you all resolve the interpretations? Did everybody understand?

MR. ANELLO: The English speaking folks talked to the Turkish speaking folks, and you may recognize some of them. But I think they all got it because they are all smiling. And,

Judge, the last thing that we would request is that bail be exonerated. And, obviously, Mr. Zarrab has a passport, which the government will return.

THE COURT: Yes. That application is granted.

MR. ANELLO: Thank you.

THE COURT: So then I hereby adopt the findings of fact in the final version of the presentence investigation report. It's dated June 18, 2026. So I intend to impose a sentence of time already served, which is some odd 22 months and ten days, thereabouts of incarceration. The guideline range is 97 to 121 months, and so that sentence is obviously a lower -- much lower than the sentencing guidelines, and that's as a result of all of the information we have discussed so far this morning.

Similarly, I do not intend to impose any term of supervised release. Mr. Zarrab has already been supervised for approximately, I think, eights years or so, thereabouts. Forfeiture I intend to -- which I have discussed already. The order of forfeiture is in the record. The boat is at $288,690, and that's consistent with the consent order of forfeiture dated February 6, 2020. Plus, the $88,102.59 in cash. And together that forfeiture amount comes to $376,792.59.

With respect to the special assessment, I intend to impose a $700 mandatory special assessment, $100 per count. It is mandatory pursuant to 18 U.S.C. Section 3013. With respect

to fine, I do not intend to impose a fine. And restitution, I do not intend to impose restitution for the discussion we had a little while ago today that there was no identifiable victims within the meaning of 18 U.S.C. 3663A. The statement of reasons, is as follows: Briefly, my reasons for the sentence are, the total offense level is 30, and I certainly intend to impose a sentence below the guideline range. The Criminal History Category is I. The guideline range is 97 to 121 months. And the time already served is 22 months and perhaps ten days beyond that.

I believe this sentence is appropriate given, among other things, the plea of Mr. Zarrab and his extensive help and cooperation with the U.S. prosecutors, including serving as a witness in the Atilla trial, which resulted, as I said before, in a conviction. And also I considered the seriousness of the offense or offenses, and the needs to show respect for the law, a just punishment, and adequate deterrence, which I think we have succeeded here. I've also considered the nature and circumstances of the offenses, the history and characteristics of Mr. Zarrab, and, importantly, Mr. Zarrab's substantial assistance with the government and his cooperation.

I've imposed the sentence in order to reflect the seriousness of the offenses; to promote respect for the law; to provide just punishment for the offenses; to afford adequate deterrence to criminal conduct; and to protect the public from

any further crimes.

I have, as noted, also considered the U.S.S.G 5K1.1(a) factors for the defendant's substantial assistance, which has been considerable; the nature and the extent of defendant's assistance, cooperation, and testimony in and out of court; the significance and usefulness of Mr. Zarrab's assistance to the government. Some of this is repetitious, but it is all accurate and true. The government's evaluation of Mr. Zarrab's significant assistance rendered; his truthfulness, completeness, and reliability; any danger and/or risk of injury to Mr. Zarrab resulting from his cooperation and government assistance; and the timeliness of his assistance.

So I would ask you, Mr. Zarrab, at this point to stand. I will actually state the sentence and then allow parties to comment again if they wish. Number one, the guidelines range, the offense level is 30; Criminal History Category is I. The guidelines range is 97 to 121 months on Counts One through Seven. Neither party has objected to probation's calculated guideline range nor probation's recommendation of time served. So time served is the incarceratory sentence.

After considering the Sentencing Reform Act of 1984, the sentencing guideline, and the factors at 18 U.S.C. Section 3553, it is the judgment of this Court that the defendant, Reza Zarrab, is hereby sentenced to time already served on all

counts and no additional incarceration. No terms of supervised release is imposed because of the defendants many, approximately, eight years of supervision to date. Forfeiture we have been over several times. Forfeiture of the boat valued at $288,690 is consistent with the consent order of forfeiture dated February 6, 2020, and the cash, $88,102.59, which has already been forfeited along with the boat. Together that amounts to $376,792.59. And then there are the $700 special assessment, $100 per count. The assessment is mandatory under U.S.C. Section 3013.

I'm not imposing a fine. I'm not imposing restitution. No restitution is imposed because there is no victim within the statutory definition of "victim." And no victim has presented any motion for restitution.

Does either counsel know of any legal reason why the sentence should not be imposed as so stated? Starting with the government.

MR. LOCKARD: No, your Honor.

THE COURT: How about defense?

MR. ANELLO: No, your Honor.

THE COURT: I hereby order then that the sentence be imposed as so stated. Mr. Zarrab, I wish to advise you that you have the right to appeal this sentence. If you are unable to pay the cost of an appeal, you have the right to apply for leave to appeal in forma pauperis. If you request, the clerk

of court will prepare and file the notice of appeal on your behalf immediately.

Do you understand those rights?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are there any open counts that need to be resolved by the government, Mr. Lockard?

MR. LOCKARD: There are, your Honor. At this time the government moves to dismiss all remaining open counts.

THE COURT: I grant that application. And defense counsel, first and government next. Do you wish to add anything to today's proceeding?

MR. ANELLO: No, your Honor. Your order on the exoneration of bail I assume is in the record?

THE COURT: It is, yes.

MR. ANELLO: Again, I do just want to thank the Court for all its time and attention over this long haul.

THE COURT: You're welcome.

Mr. Lockard.

MR. LOCKARD: Nothing further from the government, your Honor.

THE COURT: Okay. I then thank you for your attention everybody, and we are adjourned. Thank you very much.

(Adjourned)